STEPHEN KENT ROSE
Attorney at Law
Post Office Box 2400
Sausalito, California 94966
California State Bar Number 77941
415.332.6000

Attorney for Plaintiff
San Francisco Aesthetics and Laser Medicine, Incorporated

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| San Francisco Aesthetics and Laser Medicine, Incorporated,<br>        Plaintiff,<br><br>vs.<br><br>The Presidio Trust,<br>        <u>Defendant.</u>/ | Civil Action No. 07 5170 EDL<br><br>DECLARATION OF JEANNIE TSAI, M.D., IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>Date:  18 December 2007<br>Time:  9:00 a.m.<br>Place:  Courtroom E, 15th Floor<br>Judge:  Elizabeth D. LaPort<br><br>Complaint Filed:  9 October 2007 |

  I, Jeannie Tsai, M.D., say that:

  1.  I am the president and sole stockholder of San Francisco Aesthetics and Laser Medicine, Incorporated;

  2.  I am licensed as a physician and surgeon by the State of California;

  3.  After 16 years of medical education and training, during which time I became a board certified emergency physician, completed a fellowship in minority health care policy at Harvard Medical

1  School, earned a Masters of Public Health degree from Harvard University, and operated a nonprofit free
2  clinic, I began the private practice of aesthetic dermatology and laser medicine at premises I lease from
3  defendant Presidio Trust at 5 Funston on the Presidio of San Francisco.  This is my first start-up business
4  as a physician in private practice;

6          4.      My lease began on 15 January 2006.  I negotiated my lease directly with employees of
7  defendant Presidio Trust but once my lease was in place I was told by Trust personnel that my lease
8  would be managed by Coldwell Banker Richard Ellis (hereafter CBRE), the private company hired by the
9  Presidio Trust to manage their commercial leases, and that I should address my concerns regarding my
10 lease to CBRE.  From the beginning I was treated poorly by CBRE real estate manager Danielle
11 McKinnney.

13         5.      Ms. McKinney initially told me in December of 2005 before I moved in that I could
14 publicize the location of my practice by placing portable "Windmaster" signs at the curb near my office,
15 as several other concerns in the Presidio did.  After I purchased the signs Ms. Mc Kinney changed her
16 mind and told me that the Presidio's sign policy did not allow the signs even though, to this day, the
17 YMCA, a Café, and several other establishments place similar signs at curbs near intersections throughout
18 the Presidio, including within 0.1 mile from my premises;

20         6.      Soon after I opened my office I hung a tasteful banner announcing my practice, "Presidio
21 Laser Medicine", on the front of my building.  Ms. McKinney ordered me to remove the banner, claiming
22 it violated Presidio Trust sign standards.  After I learned that the standards allowed banners announcing
23 events such as my grand opening for thirty days before and thirty days after the event, I confronted Ms.
24 McKinney about her order and she told me the banner would be allowed.  By then much of the sixty day
25 period had already passed;

27         7.      I pay the Presidio Trust approximately $4,500.00 per month in base rent, service fees, and
28 utilities.  After a gas leak caused by a corroded gas line forced the closure of my office and my

cancellation of patients for several days the Presidio Trust refused to credit my rent for the days I lost, or compensate me for the income I lost. The Trust offered only $254.00 toward my extra gas bill;

8. My lease includes a closet area adjacent to my waiting room where my patients used to be able to hang their clothing. The closet contains a locked electrical panel that controls the fire alarm and sprinkler system. After an incident in which a false fire alarm rang unabated for an extended period and a contractor hired by an adjoining business turned off the alarm, Ms. McKinney had Presidio Trust workers lock me out of my closet on the pretense that locking the closet was necessary to secure the already locked fire alarm electrical panel. I have examined the fire alarm control panels in at least six other comparable buildings leased by defendant Presidio Trust near my premises and each of the fire alarm control panels is readily accessible. None is locked in a closet or otherwise double locked like the panel in my building. I have no other closet where my patients can conveniently hang their things;

9. There have been several other points of disagreement between CBRE and me regarding the administration of my lease. On each occasion that CBRE, usually in the person of Ms. McKinney, took action that I believed violated my rights under my lease I protested, usually in a writing, to Ms. McKinney. On several occasions I attempted to enlist the support of my fellow tenants in pleading for fair treatment. See Exhibit 1 hereto which is a true and correct copy of a letter I wrote to Ms. McKinney complaining of mistreatment by her and CBRE;

10. The current term of my lease will expire on 15 January 2008. My lease contains two options for me to extend the term of my lease for one year each. Article 36 (C) of my lease provides that "Tenant shall exercise an option, if at all, by giving written notice of its exercise thereof (the Exercise Notice) to Landlord not more than two hundred seventy (270) days nor less than one hundred eighty (180) days prior to the expiration of the initial or first extended Term. Tenant's delivery of an Exercise Notice shall be deemed irrevocable." A true and correct of my lease entitled Lease Exhibit will be served and filed herewith.

11. Early in my relationship with the Presidio Trust Ms. McKinney advised me that any documentation that would affect my lease would be sent by either certified mail or fax between myself and Ms. Mc Kinney. Exhibit 2 attached hereto is a true and correct copy of an email I received from Ms. McKinney on or about 6 February 2006 stating this. I understood this email to mean that significant communications regarding my lease were to go through Ms. McKinney;

12. On or about 13 March 2007 at the end of a letter I wrote to Ms. McKinney about other matters, I inquired about the requirements for exercising the option to extend the term of my lease. A true and correct copy of this letter is attached hereto as Exhibit 3. In response, Ms. McKinney replied in a letter that although the period for exercising the option had not yet begun she had "*forwarded* the information to the Trust Leasing Department and someone will be in touch with you to discuss an extension and new market rates." Emphasis added. A true and correct copy of that letter is attached hereto as Exhibit 4;

13. On or about 10 April 2007 I received a letter from the Trust's real estate agent implying that my letter of 13 March 2007 to Ms. McKinney had constituted notice of my exercise of my option to extend the term of my lease, and inviting me to negotiate the new rent for the extended period. A true and correct copy of that letter is attached hereto as Exhibit 5. I wrote back to Ms. McKinney in order to clarify that I had only inquired about, but not yet exercised, my option to extend the term of my lease. In my closing paragraph discussing exercise of the option to extend the term of my lease I stated my understanding that my time to exercise my option was "between two hundred seventy days and one hundred eighty days prior to the expiration of the initial term (January 15, 2008) that spans the time period April 20 2007 to July 19 2007…." A true and correct copy of this letter is attached hereto as Exhibit 6. No one from either the Trust or CBRE ever communicated to me that they disagreed with my calculation of the dates for the exercise of my option;

14. In a letter dated 16 May 2007 Erin Magagna, nonresidential property manager for the Trust wrote to me, "*As stated in your letter*, you may trigger this option anytime between 270 days before your

lease expiration and but not less than 180 days prior to the Lease expiration." Italics added. A true and correct copy of this letter is attached hereto as Exhibit 7. I understood this to mean that the Trust concurred with my calculation of the period during which I could exercise the option. Ms. Magagna continued that if I chose to exercise my option I should "*forward* a letter to [her] attention prior to the end of the notice period. This will then be *forwarded* to our leasing department to commence lease negotiations." Italics added. I understood this language to mean that if and when I decided to exercise my option to extend the term of my lease I was expected to again submit my notice directly to Ms. McKinney of CBRE who would then *forward* my notice on to Ms. Magagna at the Trust as had happened with my letter of 13 March 2007;

15. Late the evening of 18 July 2007 I faxed a copy of my Notice of Exercise of Lease Option to Ms. McKinney. On the morning of 19 July 2007, I hand delivered another copy to her office. A true and correct copy of my Notice of Exercise of Lease Option is attached hereto as Exhibit 8. Three weeks later, on 9 August 2007, Ms McKinney wrote back that I was required to vacate my premises by 14 January 2008. She claimed that my option had expired prior to the "proper delivery" of my notice because "[d]elivery was made after July 18, 2007 which was the last day for delivery of the Exercise Notice," and because "[t]he Exercise Notice was not delivered to Landlord at 34 Graham Street as set forth as Landlord's Address for Notice in the Basic Lease Information." A true and correct copy of this letter is attached hereto as Exhibit 9. Although the address at Ms. McKinney's office, where I hand delivered my Notice, is 103 Montgomery Street, it is directly across a common parking lot from 34 Graham Street. Until I received Ms. McKinney's letter I had no idea I was supposed to deliver my Notice directly to the Trust's office at 34 Graham Street;

16. My attorney then sent a letter to Ms. McKinney at CBRE and to Erin Magagna at the Trust pointing out that Ms. McKinney had miscalculated the 180 day period for exercise of the option and that she and the Trust had either implicitly modified the Lease, or unconscionably misled me, as to whom and where my notice should have been delivered. Private counsel hired by the Trust, citing inapplicable California law, disagreed with my attorney, and claimed that I was required to return the premises to the

1  Trust on 14 January 2007.  True and correct copies of these letters are attached here to as Exhibits 10 and
2  11;

4     17.   Finally, on 26 September 2007 Adam Engelskirchen, the Trust's Director of Real Estate,
5  sent me a letter stating that the Trust intended to begin showing my premises to potential new tenants.  A
6  true and correct copy of this letter is attached here to as Exhibit 12;

8     18.   If I am denied the right to extend the term of my lease and forced to move my practice
9  away from the Presidio on 15 January 2008 I will suffer irreparable harm that can not be adequately
10  compensated with money damages;

12     19.   The Presidio of San Francisco is a special and unique location for my business.  Part
13  national park, part historical army base, the Presidio is like no other location anywhere.  The Presidio is
14  accessible to my patients residing in both Marin County and San Francisco.  I have even named my nearly
15  two year old practice Presidio Laser Medicine.  If I am forced out I will loose both this uniquely beautiful
16  and accessible setting for my practice and the goodwill attached to the name I have used for nearly two
17  years.

19     20.   If I am forced to leave the Presidio on 15 January 2008 I will suffer a large but incalculable
20  financial losses.  It will take several months to find a new location, negotiate a new lease, and build out
21  the new premises.  During that interval I will have no place to treat my established patients.  Many of my
22  patients are in the midst of multi-step medical procedures that should not be delayed.  Some of my
23  patients are likely to take their business elsewhere.  Although I will have some evidence of my financial
24  loss my business is relatively new and it will be difficult to establish the trajectory of my profits and
25  growing patient base.  My loss of goodwill caused by both a move from the Presidio and by being unable
26  to treat my patients for the months it will take to reestablish my practice somewhere new will be
27  incalculable.

21. In contrast to the incalculable and irreparable harm I will suffer if forced to move from the Presidio by 15 January 2008 The Presidio Trust will suffer no cognizable harm from my continued occupancy of the premises. The Trust has already indicated it intends to continue leasing my premises. I have always paid my rent, fees, and utilities on time, and I am happy to continue doing so.

22. I believe I will be able to prove that in attempting to prevent me from extending the term of my lease the Presidio Trust is unlawfully discriminating against me in retaliation for my assertion of my contractual rights under my lease and for exercising my first amendment right to petition the federal government, my landlord, for redress of grievances. Although it is my contention that I timely exercised and properly delivered my Notice of Exercise I have already, through investigation, gathered evidence that The Presidio Trust does not routinely strictly enforce the notice provisions of its tenant's options to extend the terms of their leases. Some evidence of the Presidio Trust's usual lax enforcement of option notice requirements is its acceptance of my early notice sent to Ms. McKinney as a valid exercise of my option. I expect that discovery will reveal more instances where the Trust did not strictly enforce option notice requirements. I expect that evidence of my disparate treatment will lead ultimately to the conclusion that defendant Presidio Trust does not want to extend the term of my lease because of my protected first amendment activities.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on 13 November 2007 at San Francisco, California.

_____

Jeannie Tsai, M.D.