Dr. Jeannie Tsai, MD
Presidio Laser Medicine
5B Funston
The Presidio
San Francisco, CA 94129
Tel: 415-885-2737

April 4, 2006

Danielle McKinney
Senior Real Estate Manager
CB Richard Ellis
Asset Services
103 Montgomery St
PO Box 29546
San Francisco, CA 94129

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To David Grubb
Street, Apt. No.; or PO Box No. 34 Graham St  POB 29052
City, State, ZIP+4 San Francisco  CA  94129

PS Form 3800, June 2002        See Reverse for Instructions

7005 1820 0004 1969 7966

BY FAX AND CERTIFIED MAIL

Dear Danielle,

As of April 3, 2006, I am in receipt of your attached 1 page letter dated March 30, 2006, which states "VIA FAX AND USPS", but was not faxed to me.

I will refer to this letter as "1st Notice of requirement for Water Backflow Device" though it also contains a response to my February 16, 2006 letter requesting clarification on the use of Windmaster signs specifically recommended to me by you.

## WATER BACKFLOW DEVICE
Your letter states: "Per applicable code…buildings that have medical office use shall have a backflow device installed"

Please provide me with this applicable code. I have not requested a backflow device, nor will my business be paying for this if it is not necessary. I have no medical equipment attached to the water supply or drainage, and question whether this requirement even applies to the type of business I operate.

The International Association of Plumbing and Mechanical Officials code I believe you are probably referring to addresses only water-cooled and water-circulating devices like a kidney dialysis machine, which I do not have.

The only biomedical waste I generate is syringes that are collected in a sharps container and disposed of by vendor. I neither create nor dispose of any biomedical waste that is disposed of on Presidio property, whether it be solid refuse or water drainage.

Exhibit 1

You have previously erroneously attempted to schedule a Health Department inspection, and I want to make certain such wasted effort is not duplicated.

**WINDMASTER SIGNS:**
Your letter states "After follow up with the Signage Department, it was determined that Funston Street is not considered a retail zone, therefore only standard Park signage is appropriate".

Danielle McKinney, you personally advised me that these Windmaster-produced signs were the only type of signs acceptable at my business immediately prior to my purchase of two of these signs. To date I have spent more than $600 on these signs and more on the printed inserts.

The Tenant Sign Standards I have obtained that were in effect at the time of my lease signing clearly do not prohibit these signs.

Furthermore, it is my understanding that the Signage Department is your contractor, and that they have absolutely no role in determining commerce zones within the Presidio.

Please send forward me any and all communications and correspondence from the Signage Department or any other source that purports to designate these zones relating to this discussion.

I would like to reach a written compromise with you on the use of these signs. I am willing to place these compliant Windmaster signs that you personally advised me were acceptable in discreet locations- one sign in the backyard of 5B Funston and one sign at the corner of Lincoln and Funston, as clearly allowed and provided for in the Tenant Sign Standards of November 2004.

**WATER AND GAS METERS:**
Your letter states, "The Trust has looked into your request to split the gas and water meters at 5 Funston".

This was not *my request*, rather the construction plan from the plumbing schematics of the original mechanicals drawings that provided for individual gas and water meters at 5 Funston at the time when my lease was signed.

Your contractors mistakenly installed a single meter at huge cost savings to them that was never refunded to taxpayers. It is your job to get your contractor to perform to his original contractual obligations and split the meter.

My gas bill alone was $215 last month ($2600 per year). I am certain you realize that is exorbitant and that the revised gas and water pricing scheme is probably a valid reason for me to renegotiate my lease, should I choose to.

REMAINING ITEMS ON ORIGINAL CONSTRUCTION:

Your letter states, "Unless there are remaining items based on your original construction that I am not aware of".

The following original construction items still exist:
1. Dryer vent not yet installed.
2. Paint bubbling 1cm away from chimney wall and flaking off onto floors.
3. Door edges not painted
4. Glass pane above rear entry still cracked.
5. Fire alarm problems in kitchen and back room.
6. Downstairs bathroom electrical outlets are non-functional.

I have been extremely dissatisfied in my dealings with CB Richard Ellis employees and feel I have been treated poorly.

In casual conversations with other business owners in the Presidio I have discovered patterns of dissatisfaction and the overall feeling that CBRE treats business owners in the Presidio poorly – that is, in a totalitarian manner completely unsupported by regulation and or documentation.

You would be wise to resolve these problems before Presidio business owners form an association to do so.

AS ALWAYS -  PLEASE DO NOT SEND ME EMAIL.


Regards,



Dr. Jeannie Tsai, MD
Presidio Laser Medicine

C.C.
David H. Grubb, Chairman, Presidio Trust, 34 Graham Street; P.O. Box 29052; San Francisco CA 94129

Brett White, President & CEO, CB Richard Ellis, 100 N. Sepulveda Blvd., Suite 1050, El Segundo, CA  90245

Print | Close Window

Subject: **RE: Building 5 Banner**
  From: "McKinney, Danielle @ San Francisco" <Danielle.McKinney@cbre.com>
  Date: Mon, Feb 06, 2006 5:54 pm
    To: drtsai@presidiolaser.com
    Cc: "Magagna,Erin" <emagagna@presidiotrust.gov>, "Olender, Corey @ San Francisco" <Corey.Olender@cbre.com>, "Anderssel, Signe @ San Francisco" <Signe.Anderssel@cbre.com>

Dr. Tsai,

As pertains to communication, please note that any documentation that will affect your Lease, i.e. rent increases, clarification of lease responsibilities etc., will be either sent certified mail or via fax so we can keep a receipt in the event that something does not reach you in the future. All other Lease correspondence will continue to be either sent by standard mail, (rent statements, general correspondence) and tenant announcements will be sent via email as we do with all bulletin announcements for tenants in the park, (road closures, upcoming events that may affect you as a tenant, etc.).

As to the issue of the banner that you have hanging, I stand by the 30 day usage as outlined in the tenant policy that allows for 30 days after an event has happened i.e. a Grand Opening, Your building does not fall underneath the types of items that are allowed 30 days advance notice, as I detailed earlier that is for one time events, such as events concerts, outdoor festivals, etc., not grand openings and are coordinated on by an entirely different department within the Trust.

As to other banners that you may have seen hanging, please note that areas of the park are designated in different ways, some are deemed to be retail zones. You will note that the bank for example has a sign hanging on their building that would not be allowed in other areas of the park. Streets such as Gorgas, Mason, Halleck and Lincoln for example have different signage standards as they are considered retail and warehouse space and have specific clauses outlined. Funston Street on the other hand does not have any exception signage standards and therefore falls under standard signage policy. In addition some areas of the park are managed by the National Park Service whose standards and enforcement thereof I have no control over.

That being said, as there was some confusion for you at the beginning of this process, I will change the work order to have your banner removed from the 24th of February until March 1st. Please let me know if you would like to have the banner delivered back to you by the work order desk when it comes down, or if you would like us to dispose of it for you.

Thank you, Danielle

**From:** drtsai@presidiolaser.com [mailto:drtsai@presidiolaser.com]
**Sent:** Friday, January 27, 2006 6:27 AM
**To:** McKinney, Danielle @ San Francisco
**Cc:** Magagna,Erin; Olender, Corey @ San Francisco; pkaye@presidiotrust.gov; Anderssel, Signe @ San Francisco; KArrow@presidiotrust.gov
**Subject:** RE: Building 5 Banner

Danielle,

It is difficult for me to communicate through email as some of my emails get filtered and do not reach me. Regarding signage and banners, I have made multiple phone calls to both you and others in The Presidio, and unfortunately I do not have emails to prove those calls. On these occasions, I have encountered resistance to signage and only was

— Exhibit 2 —

Dr. Jeannie Tsai, M.D.
Presidio Laser Medicine
The Presidio
5 Funston Ave, Suite B
San Francisco, CA 94129

March 15, 2007

Danielle McKinney
CBRE
103 Montgomery Street
San Francisco, CA 94129

BY FAX AND USPS MAIL

Dear Ms. McKinney,

**Work Order Request:**
On January 19, 2007 I requested from you a copy of all the past and present work orders
relating to my rental, 5 Funston Ave, Suite B, and to date I have not received them.

I have also sent you an outstanding list of all work order items remaining since move in
including items that you have been notified about in writing previously including leaking
boilers (April 4, 2006), missing fire alarm pull stations, leaking fire sprinkler systems and
missing fire alarm sensors. What is the delay in getting these items taken care of?

**Over/Double Billing:**
As of 6:00 pm February 21, 2007, I am in receipt of the letter entitled Utilities Account
#10819 stating an overdue balance of $514.34, dating back to 8/15/06.  Nina Sessa of
your Accounting Department has confirmed to me in writing that this notice of unpaid
balance is incorrect and that I have a $0.00 balance due to the Presidio Trust, as of
2/22/07, and that I was never delinquent on any bills. Please immediately correct your
error to ensure that my account both reflects my timely payments and notates your error.

If any other persons or parties were informed of this erroneous six month overdue
balance, please correct this error in writing also and provide me with the names and
contact information of the parties who were incorrectly advised.

**Illegal Lock Out:**
At no time have I given permission for the illegal taking of my coat closet, which is a
lease violation and clear usurpation of the usable space (the closet) delineated in my
lease.

Reducing the rent by the respective square footage is not an acceptable alternative, but records of the closet dimensions are all on file with the Presidio Trust as part of the original drawings and calculations of rentable square footage.

As this is the only coat closet that has the ability to hang clothing in my rental, and as my patients must disrobe prior to procedures, this illegal usurpation severely inhibits the usefulness of the unit and obstructs conduction of my business, and prevents quiet enjoyment of the usable space delineated in my lease.

In our January 19, 2006 phone call, followed by a summary confirmatory letter, you stated that Fire Alarm panels in Multi-tenant Buildings are required by The Presidio Trust to be in locked rooms, inaccessible to all tenants. You stated this is the Trust's justification of locking my coat closet. I have obtained pictures of over 15 multi-tenant and single tenant buildings throughout the Presidio, obviously showing Fire Alarm Panels in unlocked open rooms or closets that are easily accessible to anyone, including the general public, walking through the buildings.

**Once again I request that you please provide me in writing, any and all pre-existing policies regarding the mandatory locking of all fire alarm panels, and any policy that indicates why these fifteen other buildings I have documented are exempt.**

### Worker's Compensation Insurance:
I have contracted with an independent company, which supplies temporary secretarial and personal assistant services. I am among many of their clients; I am not the sole employer of this company. Worker's compensation insurance is not required because assistants provided are not employees of my company.

### Option to Extend
I am interested in exercising the option to extend the lease on this property. Please contact me regarding this matter and the requirements to extend.

Regards,

Dr/ Jeannie Tsai

Cc: Erin Magagna

**CBRE**
CB RICHARD ELLIS

March 23, 2007

The Presidio
103 Montgomery Street
PO Box 29546
San Francisco, CA 94129

415 561 2449 Tel
415-561-2443 Fax

www.cbre.com

Dr. Jeannie Tsai
San Francisco Aesthetics
5 Funston Avenue
San Francisco, CA 94129

### RE:    Building 5 Concerns

Dr. Tsai,

I am in receipt of two letters dated March 15th. Below I address issues that have not already been discussed.

Move-in Check list:

Chimney: A roofing technician was dispatched to your building 11/15/06 and a painter on 11/16/06. After this work was completed no further works orders were called in, but if this remains a problem, please contact the work order desk at 561-2442 to arrange to have the work scheduled. (Addressed in 1/8/07 letter)

Lock Strike Plate: The work order desk has not received a request from your offices to complete this work. (Addressed in 1/8/07 letter)

Utility Room: Leaks in the Basement area were addressed March 19th when they were brought to the attention of the work order desk. They also returned March 20th to verify that their work resolved this issue. If you see these leaks again, please contact the work order desk directly.

Fire Alarm Housing/Life Safety:    The alarm pull stations that you reference were not installed in the kitchen due to the placement of a refrigerator or in the upstairs bathroom due to your stated desire to use the shower; however the housings were left in place to be used in the future. Per your request, I have placed a work order to have blank face plates installed to cover the wiring.

Leaks in the Life Safety Piping:    A work order has been placed to review this item.

Electrical Outlet in 1st Floor Bathroom: A work order has been placed to review this issue, but until the electrician can determine what has caused this problem, I can not say whether this will be billable or not.

Misc. Painting: A work order has been placed to paint the bare drywall on the 1st floor, the bare drywall in the 2nd floor bathroom, the lighting fixture patch on your porch, as well as the strapping marks in your laundry room. They will also attempt to see if the window in the kitchen closet can be made operable.

As to the remaining items, other than the construction that was agreed to during your lease negotiation your space was accepted "as is" and items that you have outlined to my knowledge were not part of that original process. If you would like to have the Trust address the items that you have documented, we would be happy to arrange a cost estimate for you to have the work completed.

Exhibit 4

Utility Billing:

The billing that you reference was sent from the Trust Utility Department in error. Per a fax between yourself and Neena Sessa on January 22, 2007 this issue has been resolved. We have however asked her to send you written notification for your files.

Utility Closet:

The Trust has determined from building drawings that the closet in question totals 15.5 square feet and they are in the process of creating an amendment to your Lease to address the change in square footage. Upon execution by both parties CB Richard Ellis will adjust your account accordingly.

As to your interest in exercising options, per the terms of your Lease this notice period does not open until mid-April. I have however forwarded the information to the Trust Leasing Department and someone will be in touch with you to discuss an extension and new market rates.

Sincerely,

Danielle McKinney
Senior Real Estate Manager
CB Richard Ellis
The Presidio

Cc:     Erin Magagna – Trust Real Estate
        Elena Anaya – Trust Real Estate



April 10, 2007

VIA FACSIMILE (309) 285-3054
AND US POSTAL SERVICE MAIL

Dr. Jeannie Tsai
Presidio Laser Medicine
5B Funston Avenue
San Francisco, CA 94129

SUBJECT:     Exercising One Year Option to Extend Lease
5B Funston Avenue
Option Period – January 15, 2008 through January 14, 2009

Dear Dr. Tsai:

Please call me at your earliest convenience to discuss the fair market rent for the option period
per Article 36 of the lease between SF Aesthetics and Laser Medicine and the Presidio Trust
dated December 16, 2005. The 90-day period to reach a mutual agreement is effective as of
March 15, 2007, the date we received your letter.

I have yet to receive a response to the two voice messages (April 5th and April 9th) and one email
(April 6th) requesting a meeting.

Thank you for your attention to this request and I look forward to meeting with you soon.

Sincerely,

M Elena Anaya
Real Estate Agent


cc:     Adam Engelskirchen
Erin Magagna
Danielle McKinney, CBRE

Exhibit 5

Dr. Jeannie Tsai, M.D.
Presidio Laser Medicine
The Presidio
5 Funston Ave, Suite B
San Francisco, CA 94129


April 19, 2007

Danielle McKinney
CBRE
103 Montgomery Street
San Francisco, CA 94129


BY FAX AND USPS MAIL

Dear Danielle,

I have received a myriad of correspondence from you and M. Elena Anaya in the last
week regarding my informal March 15, 2007 letter querying the lease renewal process.

As the Presidio Trust and CB Richard Ellis have produced contrary yet incorrect lease
interpretations, I thought it would be prudent to lay out the facts of the lease for everyone
involved.

## Article 36 C) Option To Extend Term
According to Article 36 C) of the lease "Option to Extend Term"
*"Tenant shall exercise an Option, if at all, by giving written notice of its exercise thereof*
*(the "Exercise Notice") to Landlord not more than two hundred seventy (270) days nor*
*less than one hundred eighty (180) days prior to the expiration of the initial or first*
*extended Term. "*

## Notice of Option to Extend has Not Yet Been Exercised
My March 15, 2007 letter to you stated:
> "I am interested in exercising the option to extend the lease on this property.
> Please contact me regarding this matter and the requirements to extend."

This informal letter was merely a query on the general lease renewal process, and was
clearly **not** an 'exercise of option to extend term' within the allowable notice period.

Danielle McKinney's, March 23, 2007 letter states:
> *"As to your interest in exercising options, per the terms of your Lease this notice*
> *period does not open until mid-April. I have however forwarded the information*
> *to The Trust Leasing Department and someone will be in touch with you to*
> *discuss an extension and new market rates."*

M. Elena Anaya's April 10, 2007 letter from states:
> *"The 90-day period to reach a mutual agreement is effective as of March 15, 2007, the date we received your letter*

> *I have yet to receive a response to the two voice messages (April 5th and April 9th) and one email (April 6th) requesting a meeting.*

Ms. Anaya is incorrect, the 90-day period to reach mutual agreement is neither in effect, nor counting as of March 15, 2007, and while I am aware the 90-day period is rarely if ever enforced, it is clearly not applicable in this instance.

M. Elena Anaya's April 18, 2007 letter from states:
> *"This letter will also acknowledge that you rescind your request to exercise your option to extend your lease as indicated in your letter of March 15, 2007.*

Contrary to Ms. Anaya's letter, the option to extend the lease is irrevocable once it has been exercised, should it have been exercised, but the fact remains that **I have neither exercised nor rescinded my option to extend term.**

The lease spells out a clearly defined timeframe of between two hundred seventy days and one hundred eighty days prior to the expiration of the initial term (January 15, 2008) that spans the time period April 20, 2007 to July 19, 2007 in which such activity is to occur and that time frame has not yet been reached.

I will contact you in writing in the future if I decide to exercise this option at any time during that timeframe.

### Unconditional Release of Liability Request for Illegal Taking of Front Coat Closet

I have received two letters from Danielle McKinney requesting that I sign an unconditional release of liability and amendment to the terms of the lease regarding CB Richard Ellis's illegal taking of the usable space of the front coat closet on January 19, 2007.

This action was at the least an illegal constructive eviction and probably an illegal partial actual eviction, and to this day the quiet enjoyment of my business rental has been severely diminished, as it is the only coat closet on the entire floor and every single patient that visits me is forced to disrobe and fold their clothes versus hanging them in a closet.

Your April 10, 2007 letter lists the stated purpose of the closet taking as "to enclose the life safety panel for Building 5 Funston", but in reality, life safety panel (fire alarm) has always been in a locked steel housing since move in and in the only emergency since your locking of this closet, on February 28, 2007 the Presidio Fire Department was completely unable to access the fire alarm and it rang unabated for nearly 48 hours straight.

You have previously stated multiple times that all multi-tenant buildings have locked fire alarm housings, but have ignored my repeated (March 1, 2007 and March 15, 2007) written requests for this information and completely failed to produce any supporting documentation.

Ms. McKinney's letters strongly indicate that the Presidio Trust intends to make my releasing the Presidio Trust from liability regarding their illegal taking of my front closet a pre-condition of any eventual lease renewal.

**If this is not the Presidio Trust's intention, please explicitly state so.** I strongly suspect you will attempt to ignore that statement in your response. Please do not.

The primary reason for having a lease document is to make obvious what property I am renting for what duration and amount. The usable space that I rent clearly includes/included the front coat closet and the Presidio Trust and CB Richard Ellis are obviously violating the lease.

I will not release the Presidio Trust from this taking of my lawfully rented property, and the entire value of the rental property has been severely reduced by the elimination of the coat closet.

I reserve any and all rights to act on this partial actual eviction at any time.

## Thank You for Fixing Leaking Boiler One Year After Written Notice

Finally, thank you for fixing the leaking boiler in the basement last month. I first notified you in writing of this problem on April 4, 2006, more than a year ago, and it was never inspected or repaired prior to this month. I continue to reserve all rights to submit my final claim for damages related to the leaking boiler at any time.

## As Always, Please Do Not Send Me Email

I am not a habitual email user and have advised the Trust in writing of this at least 10 times. Please do not send me email as I check it less than once every thirty days and am aware that the free email box I use is notorious for filtering out legitimate mail. Email sent to me will typically not be received, read, opened nor responded to by myself.

In order to alleviate any further confusion in this process and it has become obvious to me that any further communications on this matter should be only in writing.

Regards,

Dr. Jeannie Tsai

cc:
Elena Anaya, Real Estate Agent
Erin Magagna, Non Residential Property Manager
Jeff Deis, Chief Operating Officer, Presidio Trust
Adam Engelskirchen, Director of Real Estate
Michael Fassler, Assistant General Council, Presidio Trust



May 16, 2007

Dr. Jeannie Tsai, MD
Presidio Laser Medicine
5B Funston Avenue
San Francisco, CA  94129

**Re:    San Francisco Aesthetics Lease, Building 5B**

Dear Dr. Tsai,

This letter is in response to your April 19, 2007 letter, addressed to Danielle McKinney at CBRE.

**Option to Extend:**  We understand that you have not formally exercised your option to extend your Lease.  As stated in your letter, you may trigger this option anytime between 270 days before your lease expiration, but not less than 180 days prior to the Lease expiration.  The 90-day negotiation period will begin if and when you exercise your option, formally, in writing to the Trust.

If you choose to exercise your option, please forward a letter to my attention prior to the end of the notice period.  This will then be forwarded to our leasing department to commence lease negotiations.

**Unconditional Release of Liability Request:**  On January 8, 2007 the Trust sent a letter to you offering a base rent credit of $253.74 to settle your claim with reference to utility downtime in the Spring of 2006.  This offer had an expiration date of January 22, 2006 and was not effective unless a release form was signed and delivered by both the Trust and SF Aesthetics.  This is the only request from the Trust or CB for an unconditional release of liability.

**Life Safety Panel in Front Closet:**      CBRE sent you a letter dated April 10, 2007 stating that the downstairs closet in your leased space was locked to enclose the life safety panel for Building 5.  The letter explained that we intended to amend your total square footage and associated rent, provided that you countersign the letter.  As previously explained, this area was inadvertently keyed incorrectly during the final construction stages and should be accessible only to licensed life safety personnel.

As you know, this life safety panel, that is the sole panel for all of Building 5, was previously taken off line, subjecting the building and the occupants to unnecessary risks.  We cannot ensure that this will not happen again, unless the panel is fully secure and only accessible to the Trust and the Presidio Fire Department.  In order to fully secure this panel, the closet where it is located was locked under a separate key.

Exhibit 7

34 Graham Street, Post Office Box 29052, San Francisco, California 94129-0052
415/561-5300    Fax 561-5315    presidio@presidiotrust.gov

Thus, this action is not an illegal constructive eviction, nor it is a partial eviction.

However, as you know, the Trust is reviewing the possibility of enclosing the panel by building a structure around the panel that would leave part of the existing closet for your use. If this sub-enclosure does not work, the Trust will have no other option but to continue to have the closet locked and accessible to licensed personnel only.

Sincerely,

Erin Magagna
Non-Residential Property Manager
415-561-5372

cc:    A. Engelskirchen
       D. McKinney

Jeannie Tsai, MD
5 Funston Ave, Suite B
San Francisco, CA 94129

July 19, 2007

Danielle McKinney
CBRE
103 Montgomery Street
San Francisco, CA 94129

**NOTICE OF EXERCISE OF LEASE OPTION:**

I elect to exercise the option to extend the lease agreement as provided in Article 36 of our lease agreement, dated December 15, 2005, for an additional period of one year, commencing on January 15, 2008, and terminating on January 15, 2009.

I request that you send me a written reply acknowledging receipt of this renewal notice.

Sincerely,

Jeannie Tsai

Exhibit 8



The Presidio
103 Montgomery Street
PO Box 29546
San Francisco, CA 94129

415 561 2449 Tel
415-561-2443 Fax

www.cbre.com

August 9, 2007

Dr. Jeannie Tsai                                    VIA FACSIMILE (309) 285-3054
San Francisco Aesthetics                            AND US POSTAL SERVICE MAIL
5B Funston Avenue
San Francisco, CA 94129

SUBJECT:    One Year Option to Extend Lease
            5B Funston Avenue

Dear Dr. Tsai:

I am in receipt of your letter dated July 19, 2007 requesting to exercise an option to extend the
term of your lease for one year, per Article 36 of the Lease between San Francisco Aesthetics and
Laser Medicine, Inc. and the Presidio Trust dated December 16, 2005. The Lease expressly sets
out the parameters by which this Option may be exercised, and pursuant to these, your option
expired prior to the proper delivery of your notice for the following reasons:

-           Delivery was made after July 18, 2007 which was the last day for delivery of the
            Exercise Notice.

-           The Exercise Notice was not delivered to Landlord at 34 Graham Street as set forth
            as Landlord's Address for Notice in the Basic Lease Information.

Therefore the original terms of your Lease will remain in effect with an expiration date of January
14, 2008. I ask that you review Article 20 of your lease and please make arrangements to return
the premises on such date to Landlord in accordance with these terms.

Sincerely,

Danielle McKinney
Senior Real Estate Manager
CB Richard Ellis
The Presidio

Cc:    Jeff Deis – Chief Operating Officer
       Adam Engelskirchen – Director of Real Estate
       Michael Fassler – Associate Director of Real Estate
       Karen Cook – Trust General Counsel
       Erin Magagna – Non-Residential Property Manager
       Elena Anaya – Trust Real Estate

Exhibit 9

*Stephen Kent Rose*
*Attorney at Law*

POST OFFICE BOX 2400 · SAUSALITO, CALIFORNIA · 94966 · (415) 332-6000

20 August, 2007

Erin Magagna
Presidio Trust
34 Graham Street
POB 29052
San Francisco, CA 94129

Danielle McKinney
CBRE
103 Montgomery Street
San Francisco, CA 94129

Exhibit 10

Re:    Notice of Exercise of Option to Renew Lease of 5B Funston

Dear Ms. Magagna and Ms. Mc Kinney:

I represent San Francisco Aesthetics and Laser Medicine, Incorporated, and Jeannie Tsai, M.D. with respect to their lease of an office and medical spa at 5B Funston from the Presidio Trust. Late on the evening of 18 July 2007 my clients gave notice of the exercise of their option to renew their lease by faxing a NOTICE OF EXERCISE OF LEASE OPTION to Ms. McKinney at her office. On 19 July 2007 my clients again gave notice of the exercise of their option to renew by personally delivering their NOTICE OF EXERCISE OF LEASE OPTION to the drop box at Ms. McKinney's office.

Rather than commence negotiations regarding the new base rent for the extended term as required by Article 36(D) of the lease, the Presidio Trust, acting through its agents CBRE and Ms. McKinney, denied that my clients had properly exercised their option. Ms McKinney claimed that the Notice came a few hours later than 180 days before expiration of the original term, and claimed that it was improperly delivered to the wrong address.

I beg to differ. 19 July 2007 is exactly 180 days prior to 15 January 2008, the Expiration Date calculated by adding two years to the Commencement Date of 15 January 2006 as specified at page ii of the Basic Lease Information. If either of you thought this calculation incorrect you should have said so in response to my clients's letter of 19 April 2007, which both of you received, and in which they detailed their understanding that the time during which the option could be exercised "spans the time period April 20, 2007 to July 19, 2007".

As for Ms. McKinney's claim that the Notice was incorrectly delivered, early in the relationship between my clients, the Presidio Trust, and CBRE, Ms. McKinney established in written email that "any documentation that will affect your Lease" "will be either sent certified mail or via fax" to her . Further, in response to my clients's request for information from CBRE's Ms. McKinney regarding the "requirements to extend" their lease contained in their letter dated 15 March 2007, Elena Anaya of the

Presidio Trust, in a letter dated 10 April 2007, acknowledged that my clients's inquiry as faxed to Ms. McKinney was a valid exercise of their option to renew their lease. Had the Presidio Trust, CBRE, or Ms. McKinney believed the 15 March 2007 letter faxed to Ms. McKinney ineffective to exercise my clients's option to renew it was incumbent upon all of them, in the good faith performance of their obligations under the lease, to advise my clients of that, and not mislead them by treating the fax to Ms. McKinney as a valid exercise of the option. Similarly, when Ms. McKinney received my clients's Notice exercising the option on 19 July 2007 it was incumbent upon her to either deliver the Notice to the Trust or timely advise my clients of their mistake, if, in fact, it was incorrectly delivered. Ms McKinney's bad faith failure to do either and her later claim that the Notice was improperly delivered to the wrong address were manipulative and unconscionable.

Ms. McKinney's stealthy attempt to deprive my clients of their right to renew their lease is strong evidence of invidious discrimination and unlawful retaliation against my clients for their repeated assertion of their rights under their lease and their complaints regarding CBRE's and Ms McKinney's pattern of harassment and mismanagement. Our investigation of the Presidio Trust's usual practices with respect to tenants's exercise of their options to renew leases reveals that other tenants's exercises of their options to renew are not regularly held to the exacting standard to which Ms. McKinney and CBRE would hold my clients.

Within ten days of the date of this letter the Presidio Trust must commence good faith negotiations with my clients regarding the base rent for the extended term of their lease as required by their timely notice of the exercise of their option to renew on 18 July 2007. The 90 day period for negotiations specified in Article 36(D) of the lease will be deemed to commence when I receive acknowledgement from the Trust of its obligation to negotiate in good faith as demanded herein.

If the Trust fails to commence good faith negotiations within ten days of the date of this letter I will advise my clients to prosecute all of their legal claims against the Presidio Trust, CBRE, and Ms McKinney personally. Those proceedings will include Bivens claims for invidious discrimination and unconstitutional retaliation for the exercise of my clients's First Amendment rights of speech, assembly, and to petition the federal government for redress of grievances. I am certain that any judge or jury objectively considering these matters will find my clients's plight these past 20 months overwhelmingly compelling and will award them not only substantial compensatory damages but also attorney fees and costs.

Very truly yours,

Stephen Kent Rose

SKR/ab

cc: Craig Middleton

# STEIN & LUBIN LLP

——— ATTORNEYS ———————

TRANSAMERICA PYRAMID · 600 MONTGOMERY ST, 14TH FLR · SAN FRANCISCO, CA 94111
TEL: 415.981.0550 · FAX: 415.981.4343 · WEB: steinlubin.com

September 14, 2007

THEODORE A. GRIFFINGER, JR.
Direct Dial: (415) 955-5075
E-mail: tgriffinger@steinlubin.com

**FAX**
(415) 480-1343

Stephen Kent Rose, Esq.
P.O. Box 2400
Sausalito, CA 94966

### San Francisco Aesthetics and Laser Medicine, Inc.

Dear Mr. Rose:

This firm represents the Presidio Trust (the "Trust"). We write in response to your letter of August 20, 2007 concerning the purported exercise of an option to renew the lease dated December 16, 2005 (the "Lease") by and between the Trust and your client, San Francisco Aesthetics and Laser Medicine, Inc. ("Tenant"), for the premises located at The Presidio of San Francisco, Building 5, Suite B, San Francisco, California (the "Premises").

We respectfully disagree with your conclusion that Tenant exercised its option to renew in the time and manner required by the Lease. We set forth the factual and legal bases for our opinion below.

## A. The Notice Was Untimely

Article 36 of the Lease provides in pertinent part that:

(C) Tenant shall exercise an Option, if at all, by giving written notice of its exercise thereof (the "Exercise Notice") to Landlord *not more than two hundred seventy (270) days nor less than one hundred eighty (180) days prior to the expiration* of the initial or first extended Term.

Lease at Art. 36(C), p. 43 (emphasis added). As set forth in Article 2(A), the Term of the Lease "begins on the Commencement Date set forth in the Basic Lease Information ('Commencement Date') and ends on the Expiration Date set forth in the Basic Lease Information ('Expiration Date'), unless extended or sooner terminated as provided herein. Lease at Art. 2(A), p. 1.

Here, the Commencement Date for the Lease was January 15, 2006. The Expiration Date for the Lease is January 14, 2008. Under Article 36(C), for the Exercise Notice

75070030/355632v1

— Exhibit 11

Stephen Kent Rose, Esq.
September 14, 2007
Page 2

to be timely, it had to have been given "not less than one hundred eighty (180) days" prior to January 14, 2008 or, at the latest, by July 18, 2007.

As your letter acknowledges, the Exercise Notice was not given until July 19, 2007. Therefore, it was untimely pursuant to Article 36(C) of the Lease.

### 1.    Your Letter Misstates The Expiration Date

Your letter incorrectly states that the Expiration Date for the Term is January 15, 2008. As indicated above, however, the Expiration Date is January 14, 2008.

The Expiration Date is not only clear from the Lease, it was also clearly communicated to Tenant by letter dated August 28, 2006. We enclose a copy of a letter from CB Richard Ellis Senior Real Estate Manager Danielle McKinney to Tenant to this effect for your reference.

### 2.    Tenant's Mischaracterization of the Renewal Period Is Irrelevant

Your letter refers to Tenant's letter to Ms. McKinney of April 19, 2007. In Tenant's letter, Dr. Jeannie Tsai states that the renewal period "spans the time period April 20, 2007 to July 19, 2007[.]" As indicated above, Tenant's characterization of the renewal period is incorrect.

Your letter suggests that the Trust had an obligation to correct Tenant's erroneous characterization of the renewal period. We are not aware of any authority that might support this contention, however. Indeed, inasmuch as Dr. Tsai's April 19, 2007 letter was sent in order to communicate that she was not exercising the lease extension option, the Trust had no reason to take any further action related to the matter whatsoever.

Furthermore, there is no suggestion (nor could there be) that Tenant relied upon the Trust in failing to give the Exercise Notice within the required time frame. Obviously, any such reliance would have been unreasonable in view of Ms. McKinney's letter of August 28, 2006.

### B.    Delivery Of The Notice Was Improper

The Basic Lease Information is clear that notices to the Trust are to be addressed as follows:

> The Presidio Trust
> The Presidio of San Francisco
> 34 Graham Street
> P.O. Box 29052
> Attn:  Director of Real Estate
> Attn:  General Counsel

Stephen Kent Rose, Esq.
September 14, 2007
Page 3

Lease at p. i. Here, Tenant's untimely Exercise Notice was delivered to Ms. McKinney, and not to the Trust at the address above, as required by the Lease. Therefore, the Exercise Notice was not properly delivered.

Your letter refers to prior correspondence between the parties, and suggests that the Trust's letter of April 10, 2007 constitutes a waiver or modification of the notice provisions in the Lease. We disagree. There is nothing in the April 10, 2007 letter to suggest any such waiver or modification. Nor is there anything in the correspondence between the parties -- or California law -- to support your contention that it was "incumbent" upon the Trust to advise Tenant of the notice requirements spelled out in the Lease.

* * *

The law governing the exercise of an option to renew a lease in California is clear: "When the lease contains specific provisions regarding the method of exercising the option, it must be exercised within the time, in the manner, and on the terms in strict compliance with the lease." *See generally* Miller & Starr, 7 California Real Estate: Landlord & Tenant ("Miller & Starr") at § 19:57, p. 110 (3rd Ed. 2001); *see also Bekins Moving & Storage Co. v. Prudential Ins. Co.* (1985) 176 Cal.App.3d 245, 250-251 (""In order to avail himself of the right to renew a lease as provided for by a lease option, a tenant must apprise the lessor in unequivocal terms of his unqualified intention to exercise his option within the time, in the manner and on the terms stated in the lease"); *Simons v. Young* (1979) 93 Cal.App.3d 170, 179 (same). Furthermore, the California courts are "strict in holding an optionee to exact compliance with the terms of the option" (*Bekins*, 176 Cal.App.3d at 250) and will not exercise their equitable jurisdiction where, as here, the tenant fails to exercise its right of renewal in the time and manner specified by the lease. *Id.*, at 252-253.

The leading treatise on California real estate law is also clear that: "when the tenant fails to exercise the option as required by the terms of the lease, the landlord is not required to grant an extension to the tenant regardless of the landlord's motives." Miller & Starr at § 19:37, p. 110 (*citing Bekins, supra,* 176 Cal.App.3d at 250-251 and *Witt v. Union Oil Co.* (1979) 99 Cal.App.3d 435, 438-439. Thus, your allegations concerning "invidious discrimination and unlawful retaliation" against Tenant are not only false, they are also irrelevant as a matter of law.

For all of these reasons, we respectfully reject the allegations set forth in your letter, and ask that you advise Tenant that the Lease will remain in effect until January 14, 2007, at which time the Premises are to be returned to Trust in accordance with the provisions of the Lease. Please let the undersigned know if you have any questions.

Very truly yours,

*Theodore A. Griffinger, Jr.*

Theodore A. Griffinger, Jr.

TAG/ccp
cc:    Karen Cook

750700030/355652v1



September 26, 2007

VIA FAX (309-285-3054) AND
U.S. POSTAL SERVICE

Dr. Jeannie Tsai
San Francisco Aesthetics
5 Funston Avenue
San Francisco, CA  94129

RE:   Touring of Premises
       5B Funston Avenue

Dear Dr. Tsai:

The Presidio Trust will begin showing your premises during reasonable hours to potential
tenants pursuant to Article 12.B. of your Net Lease dated December 16, 2005 between The
Presidio Trust and San Francisco Aesthetics and Laser Medicine, Inc. (the "Lease") which reads
as follows:

> "To enter the Premises at reasonable hours for reasonable purposes,
> including, without limitation, to perform maintenance and repair, to exercise
> rights under this paragraph, to inspect the Premises, which inspection may
> include, without limitation, investigation and/or sampling and testing for
> Hazardous Materials; **to show the Premises to insurers, tenants and
> brokers at reasonable hours**; and, if Tenant shall abandon the Premises at
> any time, or shall vacate the same during the last six (6) months of the Term,
> to decorate, remodel, repair or alter the Premises;"

Although not required by your Lease, as a courtesy, we will provide you with a phone call at
your office number (885-2737) with at least 48 hours notice providing the date and time of each
showing. We will use reasonable efforts so as not to disrupt your business and would appreciate
your full cooperation during this period.

Sincerely,

Adam G. Engelskirchen
Director of Real Estate

cc:    Michael Fassler
       Karen Cook
       Stephen Kent Rose, Esq.

— Exhibit 12

34 Graham Street   Post Office Box 29052   San Francisco, California   94129-0052
tel (415)561-5300  fax (415)561-5315  www.presidiotrust.gov

1

2                      CERTIFICATE OF PERSONAL SERVICE

3

4   I, Stephen Kent Rose, declare as follows:

    I am a citizen of the United States and am employed in the County of Marin, State of California; I am
5   over the age of eighteen years and not a party to this action; my business address is Post Office Box 2400,
    Sausalito, California 94966; on the date set forth below I served the within NOTICE OF MOTION AND
6   MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF LAW IN SUPPORT OF
    MOTION FOR PRELIMINARY INJUNCTION, DECLARATION OF JEANNIE TSAI, M.D., IN
7   SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION and LEASE EXHIBIT on the parties
    hereto by placing true copies thereof in an envelope addressed as follows:
8

    Karen Cook
9   The Presidio Trust
    34 Graham Street
10  San Francisco, Ca 94129

11  and by then sealing said envelope and hand delivering said envelope to Ms. Cook's office.  Karen Cook is
    the General Counsel of the Presidio Trust.  Ms. Cook's assistant advised me that Ms. Cook agreed to
12  accept service of these documents on behalf of The Presidio Trust.

13      I declare under penalty of perjury under the laws of the State of California that the foregoing is
    true and correct and that this declaration was executed on 13 November 2007 at Larkspur, California.
14

15                                           Declarant

16

17

18

19

20

21

22

23

24

25

26

27

28

    Certificate of Personal Service