# EXHIBIT   A
# PART 1

# THE PRESIDIO

## NET LEASE

by and between

## THE PRESIDIO TRUST

**and**

## SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC.

## BUILDING 5

Dec. 16 , 2005

# THE PRESIDIO
## SAN FRANCISCO, CALIFORNIA
## NET LEASE

### BASIC LEASE INFORMATION

**Date:** $\quad$ DEC. 16 ____, 2005

**Landlord:** THE PRESIDIO TRUST, a wholly owned corporation of the United States of America

**Tenant:** SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC., a California corporation

**Tenant's Address for Notices:** *Before Commencement Date:*

32 Lupine Avenue
San Francisco, California 94118
Attn: Dr. Jeannie Tsai

*After Commencement Date:*

The Presidio of San Francisco
Building 5, Suite B
San Francisco, CA 94129
Attn: Dr. Jeannie Tsai

**Landlord's Address for Notices:** The Presidio Trust
The Presidio of San Francisco
34 Graham Street
P.O. Box 29052
San Francisco, CA 94129-0052
Attn: Director of Real Estate
Attn: General Counsel

**Leased Premises:** A portion of Building 5, Suite B, as indicated on **Exhibit A**

**Premises Delivery Date:** The earlier of January 15, 2006 or the issuance of a Temporary Certificate of Occupancy

**Rentable Square Footage:** Approximately 1,903 rentable square feet

**Permitted Use:** Office and Medical Spa

W02-SF:5JS\61463460.5

| | |
|---|---|
| **Commencement Date:** | The earlier of January 15, 2006 or the issuance of a Certificate of Occupancy. |
| **Expiration Date:** | Two (2) years after the Commencement Date. |
| **Option Term:** | Two (2) separate options to extend the Term for one (1) year each. |
| **Rent Commencement Date:** | The earlier of the Commencement Date or the issuance of a Temporary Certificate of Occupancy |
| **SDC Commencement Date:** | The earlier of January 15, 2006 or the issuance of a Temporary Certificate of Occupancy |
| **Monthly Base Rent:** | $3,806 per month ($24 per rentable square foot per year); subject to annual CPI increases |
| **Parking Allotment:** | Three (3) non-exclusive spaces |
| **Monthly Service District Charge:** | One-twelfth of Tenant's Pro Rata Share of annual Service District Costs, estimated for fiscal 2005 at one-twelfth of $3.61 per year per rentable square foot of the Premises |
| **Tenant's SDC Pro Rata Share:** | .034% |
| **Tenant's Reimbursable Expense Pro Rata Share:** | 46.73% |
| **Security Deposit:** | $10,000 ($2,000 already held by the Landlord and $8,000 to be deposited upon full execution of the Lease.) |
| **Guarantor:** | Dr. Jeannie Tsai |

**EXHIBITS**:
Exhibit A  -  Description of Premises
Exhibit B  -  Work Letter
Exhibit C  -  Transportation Demand Management Plan
Exhibit D  -  Guaranty

W02-SF:5JS\61463460.5

Each reference to Basic Lease Information in the provisions of the Lease shall incorporate the applicable Basic Lease Information specified herein. In the event of any conflict between any Basic Lease Information and the Lease, the Lease shall control.

**LANDLORD:**

THE PRESIDIO TRUST,
a wholly-owned corporation of the
United States of America

By: _____

Name: Craig R. Middleton
Its: Executive Director
Date:

**TENANT:**

SAN FRANCISCO AESTHETICS AND LASER
MEDICINE, INC.,
a California corporation

By: _____

Name: Dr. Jeannie Tsai
Title: _____
Date: 11/7/05

W02-SF:5JS\61463460.5

# TABLE OF CONTENTS

Page

ARTICLE 1 Premises ................................................................................................ 1

ARTICLE 2 Term and Delivery of Premises ........................................................... 1

    **(A)**    **Term** ........................................................................................ 1

    **(B)**    **Delivery of Premises; Early Entry** ............................................. 1

ARTICLE 3 Rent and Deliverables at Lease Signing .............................................. 2

    **(A)**    **Base Rent; Annual Adjustment** ..................................... 2

    **(B)**    **Service District Charge** ................................................ 3

    **(C)**    **Rent and Other Charges** ............................................. 4

    **(D)**    **Net Lease** ...................................................................... 5

    **(E)**    **Deliverables at Lease Signing** ...................................... 5

ARTICLE 4 Condition of Premises ......................................................................... 5

    **(A)**    **Inspection** ..................................................................... 5

    **(B)**    **AS IS** ............................................................................ 5

    **(C)**    **Release and Waiver** ..................................................... 6

    **(D)**    **Unknown Claims** ......................................................... 6

    **(E)**    **Historic or Cultural Objects** ........................................ 7

ARTICLE 5 Use and Rules ...................................................................................... 7

    **(A)**    **Permitted Use** ............................................................... 7

    **(B)**    **Presidio Tenant Handbook; Laws and Regulations** ................. 7

    **(C)**    **Control of Presidio and the Premises** ........................... 8

    **(D)**    **Tenant's Compliance** ................................................... 8

    **(E)**    **Waste, Nuisance** .......................................................... 8

    **(F)**    **Ground Disturbance** .................................................... 9

W02-SF:5JS\61463460.5

ARTICLE 6 Compliance With Presidio Programs ............................................................................ 9

    (A)    **Presidio Sustainability Programs** .................................................. 9

    (B)    **Transportation Management Plan** ............................................... 9

    (C)    **Integrated Pest Management** ......................................................... 9

    (D)    **Presidio Interpretation/Outreach** ................................................. 9

    (E)    **Participation in Landlord Surveys** ............................................ 10

ARTICLE 7 Services and Utilities ................................................................................................. 10

    (A)    **Utilities and Other Costs** .............................................................. 10

    (B)    **District Services** ............................................................................ 10

    (C)    **Utility Services** ............................................................................ 10

ARTICLE 8 Tenant's Taxes ......................................................................................................... 11

ARTICLE 9 Insurance; Waiver of Subrogation and Claims ......................................................... 11

    (A)    **Insurance Requirements** ................................................................ 11

    (B)    **Delivery of Policies and Certificates; Increased Coverage** ......................................................................................... 13

    (C)    **Waiver of Subrogation** .................................................................. 13

ARTICLE 10 Maintenance and Repairs ....................................................................................... 13

    (A)    **Tenant's Maintenance and Repairs** ............................................ 13

    (B)    **No Setoff** ........................................................................................ 14

    (C)    **Other Repairs** ............................................................................... 14

ARTICLE 11 Alterations and Liens ............................................................................................. 15

    (A)    **Tenant Improvements** ................................................................... 15

    (B)    **Subsequent Alterations and Improvements** .............................. 15

    (C)    **No Liens** ......................................................................................... 16

ARTICLE 12 Rights Reserved By Landlord ................................................................................ 16

ARTICLE 13 Hazardous Materials ............................................................................................. 17

ARTICLE 14 Communications and Computer Lines ................................................................. 19

ARTICLE 15 Safety and Security Devices, Services and Programs ............................................ 21

ARTICLE 16 Casualty Damage or Destruction......................................................................... 21

ARTICLE 17 Condemnation ................................................................................................... 22

ARTICLE 18 Indemnification ................................................................................................. 23

      (A)    **Waiver** ...................................................................................... 23

      (B)    **Indemnification**........................................................................ 23

      (C)    **Costs**......................................................................................... 23

ARTICLE 19 Assignment and Subletting.................................................................................. 23

      (A)    **Transfers** .................................................................................. 23

      (B)    **Landlord's Consent**................................................................. 24

      (C)    **Transfer Premium**.................................................................. 25

      (D)    **Terms of Consent** ................................................................... 25

      (E)    **Certain Transfers** .................................................................. 25

ARTICLE 20 Return of Possession ......................................................................................... 26

ARTICLE 21 Holding Over..................................................................................................... 26

ARTICLE 22 Default by Tenant; Landlord's Remedies ............................................................. 27

      (A)    **Default**...................................................................................... 27

      (B)    **Remedies** ................................................................................. 28

      (C)    **Specific Performance and Collection of Rent**........................... 29

      (D)    **Certain Definitions** ................................................................. 29

      (E)    **Other Matters** ......................................................................... 29

ARTICLE 23 Default by Landlord; Tenant Remedies ............................................................... 30

ARTICLE 24 Attorneys' Fees and Jury Trial............................................................................ 30

ARTICLE 25 Arbitration ........................................................................................................ 30

Building 5
San Francisco Aesthetics and Laser Medicine

(A)    Binding Arbitration ...................................................................... 30

(B)    Duration .......................................................................................... 31

ARTICLE 26 No Waiver ............................................................................................ 32

ARTICLE 27 Conveyance by Landlord; Liability...................................................... 32

ARTICLE 28 Estoppel Certificates............................................................................. 33

ARTICLE 29 Real Estate Brokers ............................................................................. 33

ARTICLE 30 Security Deposit ................................................................................... 33

ARTICLE 31 Notices.................................................................................................. 34

ARTICLE 32 Parking.................................................................................................. 34

ARTICLE 33 Entire Agreement ................................................................................. 35

ARTICLE 34 Miscellaneous....................................................................................... 35

(A)    Binding .......................................................................................... 35

(B)    Recordation.................................................................................... 35

(C)    Survival .......................................................................................... 35

(D)    Quiet Enjoyment .......................................................................... 35

(E)    Light/Air Easements .................................................................... 35

(F)    Force Majeure .............................................................................. 35

(G)    Use of Name ................................................................................. 36

(H)    Signs............................................................................................... 36

(I)    Anti-Deficiency Act ...................................................................... 36

(J)    No Preferential Renewal and Relocation Assistance ............... 36

(K)    No Third Party Beneficiaries ...................................................... 36

(L)    Time of the Essence ...................................................................... 37

(M)    Applicable Law; Jurisdiction; Venue; Consent to
Magistrate ...................................................................................... 37

(N)    Termination Not Merger .............................................................. 37

(O)   No Partnership Or Joint Venture ............................................... 38

(P)   Approvals ................................................................................. 38

(Q)   Captions .................................................................................... 38

(R)   Severability .............................................................................. 38

(S)   Counterparts ............................................................................. 38

(T)   Release of Information .............................................................. 38

(U)   Landlord's Web Site ................................................................. 39

(V)   Confidentiality .......................................................................... 39

(W)   Keys ......................................................................................... 39

(X)   False Certifications ................................................................... 39

ARTICLE 35 Definitions ................................................................................ 40

ARTICLE 36 Option to Extend Term ............................................................ 42

ARTICLE 37 Guaranty of Tenant's Obligations ........................................... 43

**EXHIBITS**:
Exhibit A - Description of Premises
Exhibit B - Work Letter
Exhibit C - Transportation Demand Management Plan
Exhibit D - Guaranty

W02-SF:5JS\61463460.5

## NET LEASE

THIS NET LEASE ("Lease") is made as of ___Dec. 16___, 2005, between **THE PRESIDIO TRUST**, a wholly owned corporation of the United States of America ("Landlord"), and **SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC.**, a California corporation ("Tenant").

### ARTICLE 1
### Premises

Subject to the provisions herein contained, Landlord leases to Tenant and Tenant leases from Landlord that portion of Building 5 Funston Avenue (the "Building") shown on **Exhibit A** attached (the "Premises") in The Presidio of San Francisco, San Francisco, California (the "Presidio"). Tenant shall also have the nonexclusive right, in common with other tenants of the Building, to use the common areas, if any, for the benefit of the tenants of the Building (the "Common Area").

### ARTICLE 2
### Term and Delivery of Premises

#### (A)     Term

The term ("Term") of this Lease begins on the Commencement Date set forth in the Basic Lease Information ("Commencement Date"), and ends on the Expiration Date set forth in the Basic Lease Information ("Expiration Date"), unless extended or sooner terminated as provided herein.

#### (B)     Delivery of Premises; Early Entry

Landlord shall complete the work described in **Schedule 1** to **Exhibit B** as the "Base Building Work" and the "Building Standard Tenant Improvement Work Paid by Landlord" ("Building Standard Work") and deliver the Premises to Tenant on the Commencement Date specified in the Basic Lease Information. (The Base Building Work and the Building Standard Work are collectively referred to herein as "Landlord's Work".) Landlord's Work shall be completed in an acceptable workmanlike manner.

If Landlord shall, for any reason, fail to substantially complete the Landlord's Work and deliver the Premises to Tenant on or before the Commencement Date, then this Lease shall not be void or voidable. Landlord shall have no liability for such delayed delivery, but in such case the Commencement Date, and the Expiration Date shall be postponed on a day-for-day basis for each day after the Commencement Date set forth in the Basic Lease Information that Landlord delivers the Premises the Tenant. If the Commencement Date and Expiration Date are extended, Landlord and Tenant shall execute a Memorandum of Commencement and Expiration Date promptly upon request by Landlord. Notwithstanding the above, the Commencement Date shall not be postponed for Tenant Delay. For purposes hereof, "Tenant Delay" shall mean any delay in completion of the Landlord Work that results in whole or in part from (i) any additional time required to complete the Landlord's Work due to any upgrades from building standard requested by Tenant; (ii) any delay in the completion of the Landlord's Work caused by Tenant, its

contractors, employees or agents; (iii) failure to timely remit any required payment or deposit; or (iv) failure to timely submit plans or comply with any other deadline set forth in **Exhibit B**. Notwithstanding anything else contained herein to the contrary, absent Tenant Delay, Tenant shall not be liable for any Rent until substantial completion of Landlord's Work. In addition, if Landlord fails to substantially complete the Landlord's Work and deliver the Premises to Tenant by April 1, 2006, the following shall apply:

1.      The Lease shall be null and void.

2.      Tenant shall not be responsible for any base rent, service charges, etc., to Landlord.

3.      Landlord and Tenant shall not be obligated to perform under the terms of the Lease.

If Landlord permits Tenant to enter the Premises prior to the Commencement Date other than to occupy the same (e.g. to perform alterations, install cabling, move furniture, etc.), such entry shall be subject to all terms and provisions of this Lease other than the provisions requiring the payment of Base Rent and Service District Charges. If Tenant is permitted to occupy the Premises prior to the Commencement Date, the payment of Base Rent and Service District Charges shall commence upon such occupancy, and if such early occupancy is for less than all of the Premises, Base Rent and Service District Charges shall be prorated for the period of occupancy prior to the Commencement Date based on the rentable square feet occupied by Tenant.

### ARTICLE 3
### Rent and Deliverables at Lease Signing

#### (A)    Base Rent; Annual Adjustment

(i)      Tenant shall pay Landlord monthly Base Rent in the amount set forth in the Basic Lease Information, in advance, beginning on the Commencement Date and on or before the first day of each calendar month thereafter throughout the Term. Tenant shall pay Service District Charge and Base Rent for one full calendar month to Landlord upon Tenant's execution and delivery of the Lease. If the Commencement Date is other than the first day of a calendar month, Tenant shall pay the pro rata amount of Base Rent and Service District Charge for such partial month (based on a thirty (30) day month) within five (5) days after the Commencement Date. All prepaid Base Rent and Service District Charge shall be credited against Base Rent and Service District Charge as they come due. Tenant shall also deliver the Security Deposit (as provided in Article 30) to Landlord upon Tenant's execution and delivery of the Lease. Tenant shall pay a full month's rent on the first of each month, including the last month of the Term. If the Term ends other than on the last day of a calendar month, Tenant shall be charged for such final month on a pro-rated basis (based on a thirty (30) day month) and any overpayment of rent for the final month shall be applied first against obligations then owing by Tenant to Landlord and, to the extent such obligations (if any) have been discharged, refunded to Tenant at the end of the Term. If the Term is extended pursuant to Article 36 of this Lease, then

Base Rent during the Extended Term shall be determined in accordance with the valuation procedure contained in Article 36.

(ii)     The Base Rent shall be increased on each anniversary of the Commencement Date (each, an "Adjustment Date") by adding an amount (the "CPI Escalation Amount") equal to the product obtained by multiplying: (a) the Base Rent then in effect times (b) for the first Adjustment Date, the percentage increase in the CPI (defined below) from the Commencement Date through the first Adjustment Date, and thereafter, the percentage increase in the CPI from the immediately prior Adjustment Date to the current Adjustment Date. In no event shall the Base Rent in effect immediately prior to any Adjustment Date be decreased, or shall Tenant be entitled to any credit because of any decrease in the CPI.

(iii)     "CPI" shall mean the Consumer Price Index for All Urban Consumers, All Items for the San Francisco-Oakland-San Jose CMSA (Base year 1982-84 = 100) published by the United States Department of Labor, Bureau of Labor Statistics. If the Bureau of Labor Statistics substantially revises the manner in which the CPI is determined, an adjustment shall be made in the revised CPI which would produce results equivalent, as nearly as possible, to those which would be obtained hereunder if the CPI were not so revised. If the 1982-84 average shall no longer be used as an index of 100, such change shall constitute a substantial revision. If the CPI becomes unavailable to the public because publication is discontinued, or otherwise, Landlord shall substitute therefor a comparable index based upon changes in the cost of living or purchasing power of the consumer dollar published by a governmental agency, major bank, other financial institution, university or recognized financial publisher. If the CPI is available on a monthly (or alternating monthly) basis, the CPI for the months in which (or immediately preceding, as the case may be) the Commencement Date and Adjustment Date(s), respectively occur shall be used.

**(B)     Service District Charge**

Beginning on the Commencement Date, and thereafter on the first day of each month throughout the Term, Tenant shall pay to Landlord as additional rent the "Service District Charge," comprised of Tenant's Pro Rata Share of Service District Costs for each fiscal year. Tenant's "Pro Rata Share" is equal to the ratio of the number of rentable square feet of the Premises as set forth in the Basic Lease Information, to the total rentable square footage of the buildings in the portion of the Presidio administered by Landlord which, as of the date of this Lease, is estimated to be 5,546,172 rentable square feet. Tenant's initial Pro Rata Share of Service District Costs is set forth in the Basic Lease Information. If the rentable square feet of the Premises or of the buildings in the portion of the Presidio administered by Landlord is materially increased or decreased, then Tenant's Pro Rata Share shall be appropriately adjusted.

Service District Costs shall mean all costs and expenses paid or incurred by Landlord in connection with furnishing District Services as defined in Article 7. Such costs include without limitation costs of labor, materials and supplies and equipment, payroll costs, insurance costs, administrative overhead and maintenance, repair and replacement of buildings and other improvements and facilities used in providing District Services.

Prior to or at any time after commencement of each fiscal year during the Term, Landlord shall notify Tenant of Landlord's estimate of the amount of the Service District Charge for the current fiscal year. (For purposes hereof, "fiscal year" shall be Landlord's fiscal year, which is currently October 1 to September 30; Landlord reserves the right to change its fiscal year at any time and from time to time.) Tenant shall pay to Landlord on the first day of each calendar month during such fiscal year one-twelfth (1/12) of the amount of the estimated Service District Charge.

If at any time or times Landlord determines that the amount of the Service District Charge payable by Tenant for the then-current fiscal year will vary from its estimate by more than five percent (5%), Landlord may (but shall not be obligated to), by notice to Tenant, revise Landlord's estimate for such year, and subsequent payments by Tenant for such year shall be based on such revised estimate. Following the close of each fiscal year, Landlord shall deliver to Tenant a statement of the actual amount of the Service District Charge for the immediately preceding fiscal year, accompanied by a statement in reasonable detail including expense categories and amounts. Such statement shall be final and binding on Tenant. All amounts payable by Tenant as shown in said statement, less any amounts theretofore paid by Tenant on account of Landlord's earlier estimate of the Service District Charge for such fiscal year shall be paid by Tenant to Landlord within thirty (30) days after delivery of the statement. If Tenant has overpaid the actual Service District Charge for such fiscal year, then the amount of such overpayment shall be credited against the Service District Charge payment(s) next due.

Tenant acknowledges that the Service District Charge may be calculated differently for certain other tenants of the Presidio. Landlord reserves the right to modify from time to time this methodology for calculating the Service District Charge in its sole and absolute discretion, provided that such modification shall not increase Tenant's Pro Rata Share. Landlord shall provide Tenant with at least thirty (30) days written notice of any changes to Landlord's methodology for calculating the service District Charge.

### (C)    Rent and Other Charges

Base Rent, the Service District Charge, and any other amounts which Tenant is or becomes obligated to pay Landlord under this Lease or any related agreement are sometimes referred to collectively as "Rent" and all remedies applicable to the non-payment of Rent shall be applicable thereto. Rent shall be paid in the lawful currency of the United States of America, to Landlord, at Landlord's address for notice set forth in the Basic Lease Information to the attention of the Accounts Receivable Department, or at such other place as Landlord may designate. Rent shall be paid without any prior demand or notice and without deduction, set-off or counterclaim and without abatement, suspension, deferment or relief from any valuation or appraisement laws. Landlord and Tenant agree that it would be impossible or extremely impracticable to determine the actual amount of damages Landlord would sustain in the event Tenant fails to pay Rent or additional charges due within the times required. Therefore, Landlord and Tenant agree that if Tenant shall fail to pay any Rent or additional charges within five (5) calendar days after the due date, Tenant shall pay to Landlord, as liquidated damages to compensate Landlord for its administrative costs resulting from such failure, a late payment charge equal to ten percent (10%) of such unpaid amounts. In addition to such late charge, interest at the Default Rate shall accrue on any Rent not paid when due from the due date until

payment is received by Landlord. Acceptance by Landlord of late payment and related charges is not a consent or waiver by Landlord of rights or remedies. Landlord may apply payments received from Tenant to any obligations of Tenant then accrued, without regard to designation by Tenant.

### (D)    Net Lease

Payments of Rent shall be absolutely net to Landlord. Under no circumstances shall Landlord be expected or required to make any payment of any kind whatsoever with respect to the Premises or be under any obligation or liability except as expressly provided in this Lease.

### (E)    Deliverables at Lease Signing

At or before execution of this Lease, Tenant shall deliver to Landlord the following items:

(i)    Insurance certificates evidencing that Tenant has obtained the coverages required hereunder;

(ii)    Security Deposit, Guaranty and payment of first month's Rent;

(iii)    A copy of this Lease marked as the "Public Copy" and redacted to eliminate those provisions that Tenant believes to be exempt from disclosure under FOIA (as discussed in Paragraph 34(T));

(iv)    Evidence that Tenant is duly formed, validly existing and in good standing in the state of California; and

(v)    A resolution authorizing Tenant to execute this Lease and to take all necessary actions and make all necessary payments in connection with Tenant's performance of its obligations hereunder.

### ARTICLE 4
### Condition of Premises

### (A)    Inspection

Tenant has inspected the Premises, including the Systems and Equipment, or has had an opportunity to do so, and agrees to accept the same in its existing condition without any agreement, representations, understandings or obligations on the part of Landlord to perform any alterations, repairs or improvements except as expressly set forth in **Exhibit B**. By entry hereunder Tenant accepts the Premises as being in the condition in which Landlord is obligated to deliver the Premises.

### (B)    AS IS

TENANT AGREES THAT THE PREMISES ARE BEING LEASED BY LANDLORD, AND ARE ACCEPTED BY TENANT, IN THEIR EXISTING STATE AND CONDITION,

"AS IS, WITH ALL FAULTS," EXCEPT THAT LANDLORD SHALL PERFORM CERTAIN WORK AS SET FORTH IN **EXHIBIT B**. TENANT ACKNOWLEDGES AND AGREES THAT NEITHER LANDLORD NOR ITS REPRESENTATIVES HAVE MADE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND, WITH RESPECT TO THE CONDITION OF THE PREMISES, THE SUITABILITY OR FITNESS OF THE PREMISES OR THE BUILDING OR ANY APPURTENANCES THERETO FOR THE DEVELOPMENT, USE OR OPERATION OF THE TENANT'S BUSINESS, THE COMPLIANCE OF THE PREMISES OR THE BUILDING WITH ANY LAWS, ANY MATTER AFFECTING THE USE, VALUE, OCCUPANCY OR ENJOYMENT OF THE PREMISES, OR, EXCEPT AS MAY BE SPECIFICALLY PROVIDED IN THIS LEASE, WITH RESPECT TO ANY OTHER MATTER PERTAINING TO THE PREMISES OR ANY APPURTENANCES THERETO. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, TENANT ACKNOWLEDGES THAT THE PREMISES MAY NOT COMPLY WITH BUILDING CODES THAT WOULD BE APPLICABLE IN THE CITY AND COUNTY OF SAN FRANCISCO AND THAT WORK, INCLUDING SEISMIC RETROFITTING, THAT MIGHT BE REQUIRED FOR COMPARABLE BUILDINGS IN MUNICIPALITIES SUCH AS THE CITY AND COUNTY OF SAN FRANCISCO MAY NOT HAVE BEEN PERFORMED AT THE PREMISES. TENANT HAS INSPECTED OR HAD AN OPPORTUNITY TO INSPECT THE PREMISES FOR CODE AND SAFETY MATTERS, AND HAS SATISFIED ITSELF THAT THE PREMISES ARE SUITABLE AND SAFE FOR ITS USE.

_____
TENANT (initial)

(C)    **Release and Waiver**

As part of its agreement to accept the Premises in its "As Is, With All Faults" condition, effective upon delivery, Tenant, on behalf of itself and its successors and assigns, is deemed to waive any right to recover from, and forever releases, acquits and discharges Landlord, its successors and assigns, of and from any and all claims, liability, damage or loss, whether direct or indirect, known or unknown, foreseen or unforeseen, that Tenant may now have or that may arise on account of or in any way be connected with (i) the physical, geotechnical or environmental condition of the Premises, including, without limitation, any Hazardous Materials in, on, under or above the Premises (including, but not limited to, soils and groundwater conditions), and (ii) any laws applicable thereto, including, without limitation, laws relating to Hazardous Materials. If Landlord shall have made available any reports or other documents concerning the Premises, including the physical condition, Tenant acknowledges such reports or other documentation have been provided as an accommodation to Tenant, without representation or warranty, express or implied, regarding their accuracy. Tenant hereby waives and agrees never to assert any claim against Landlord based in whole or in part on any inaccuracy or incompleteness of any such reports or documents.

(D)    **Unknown Claims**

In connection with the foregoing release, Tenant acknowledges that it is familiar with statutory and common law principles, which provide that a general release does not extend to

claims which the creditor does not know or expect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected the settlement with the debtor. Tenant agrees that the release contemplated by this Article includes unknown claims. Accordingly, Tenant hereby waives the benefits of any statute or common law principle contrary to the provisions and releases contained in this Article 4. Notwithstanding anything to the contrary in this Lease, the foregoing release shall survive any termination of this Lease.

TENANT (initial)

### (E)    Historic or Cultural Objects

If any historic or culturally significant objects, such as newspapers, dishes or toys, are found at the Premises or anywhere on the Presidio by Tenant or it invitees, agents or employees, such objects shall be surrendered immediately to Landlord and shall be the property of Landlord. Tenant shall not remove from the Premises without the prior written consent of Landlord any fixtures, including, without limitation, light fixtures, plumbing fixtures, door or window hardware, cabinets or any other built in furniture or millwork.

## ARTICLE 5
## Use and Rules

### (A)    Permitted Use

Tenant shall use the Premises for the purpose set forth in the Basic Lease Information (the "Permitted Use") and for no other purpose, in compliance with all applicable laws, and without disturbing or interfering with any other tenant, occupant, licensee or other user of the Presidio.

### (B)    Presidio Tenant Handbook; Laws and Regulations

Tenant has received and reviewed, and agrees to comply with, the Presidio Tenant Handbook ("Tenant Handbook"), as it may be amended from time to time. This Lease is subject to, and Tenant shall comply with, Title I of Public Law 104-333, which established Landlord, the Regulations set forth in 36 C.F.R. Parts 1001-1010, the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), the Secretary of the Interior Department Standards for the Treatment of Historic Properties found in 36 C.F.R. Part 68, the Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Properties, the Archeological Resources Act, all other applicable laws and regulations, the Guidelines for Rehabilitating Buildings at the Presidio of San Francisco, and the Presidio Rules for Non-Residential Buildings ("Presidio Rules"), as the same may be amended from time to time, and all liens, encumbrances, restrictions, rights and conditions of law or of record or otherwise actually known to Tenant or reasonably ascertainable by inspection or survey. Tenant shall ensure that Tenant's agents, contractors, subtenants, invitees and licensees comply with all of the above. In the event of any inconsistency between this Lease, on one hand, and the Tenant Handbook or the Presidio Rules, on the other hand, this Lease shall govern.

W02-SF:5JS\61463460.5

### (C)    Control of Presidio and the Premises

So long as access is not denied into the Premises, Landlord shall have the right at any time and from time to time to change, add to, subtract from or alter any part of the Presidio, including, without limitation, sidewalks, streets, driveways, streetscape or landscaped areas adjacent to the Premises, to dedicate portions of the Presidio for governmental purposes and to convey portions to others. Landlord shall not be subject to liability nor shall Tenant be entitled to compensation or diminution of Rent because of such changes. Landlord shall not be liable to Tenant for interference or inconvenience caused by any such action of Landlord. Tenant acknowledges that the Presidio is now and will be undergoing significant rehabilitation work, which may generate significant construction noise. Tenant agrees that such noise or construction disruption shall not give rise to any claim by Tenant against Landlord or any offset or defense against Tenant's obligation to pay Rent or otherwise perform under this Lease.

### (D)    Tenant's Compliance

Tenant shall conduct its business in a professional and reputable manner. Tenant shall furnish, install and maintain in the Premises all equipment and facilities properly necessary for Tenant's Permitted Use of the Premises. Tenant, at its sole cost and expense, shall comply with all applicable laws relating to, or affecting the condition, use or occupancy of, the Premises, and with requirements of Landlord's insurance underwriters, applicable fire rating bureaus or similar bodies, now or hereafter in effect pertaining to the Premises or Tenant's use or occupancy of the Premises or the acts or omissions of Tenant in the Premises, irrespective of whether such laws or requirements are foreseen, unforeseen, ordinary, extraordinary or substantial. Without limiting the foregoing, Tenant shall ensure that at all times the Premises comply with the Americans With Disabilities Act; provided, however, that the foregoing covenant shall not require Tenant to perform the specific items of work identified herein as Landlord's Work. Landlord makes no representation that Tenant's proposed Permitted Use of the Premises will comply with applicable laws. Notwithstanding anything else contained herein to the contrary, in the event that an action is filed against Tenant or Landlord pursuant to the Americans with Disabilities Act with respect to the Premises, and Landlord chooses not to perform remedial work to the Premises to correct any Americans with Disabilities Act violations, either Tenant or Landlord shall have the option, upon delivery of written notice to the other party within thirty (30) days after receipt of notice of such action, to terminate this Lease. Landlord's decision whether to perform any such remedial work shall be made in Landlord's sole discretion and Landlord shall have no liability to Tenant or any other party for the results of such decision. In the event of a lawsuit because of ADA issues, then each party shall bear their own legal fees and costs. Except as otherwise provided for in this Lease, including without limitation, Article 18, in the event that either party terminates this Lease as provided for in this paragraph, Tenant's financial obligations shall cease to accrue as of the date of such termination.

### (E)    Waste, Nuisance

Tenant shall not (i) cause, maintain, or allow any waste or nuisance in, on, under or about the Premises or the Presidio; (ii) permit on the Premises or the Presidio a substance or material which presents a fire, explosion or other hazard; (iii) conduct any sale or auction in or from the Premises or the Presidio, nor permit its lender or other creditor to hold such sale; (iv) permit

noise or odors in the Premises which are reasonably objected to by, and interfere with the comfort, safety or enjoyment of, Landlord, a tenant, an occupant or a licensee of the Presidio, or allow noise, vibrations or odors to carry outside the Premises; (v) do, omit or permit to be done or omitted anything which shall cause insurance premiums with respect to all or part of the Premises or the Presidio to be increased or insurance coverage to be increased or cancelled; (vi) receive, deliver or remove merchandise, supplies or equipment, or remove or store refuse, other than in areas approved in writing by Landlord; (vii) use the Premises or the Presidio or permit anything to be done in, on or about the Premises which will in any way conflict with any applicable laws now in force or which may be enacted or promulgated; or (viii) bring into the Premises or the Presidio any Hazardous Materials except in accordance with Article 13.

### (F)    Ground Disturbance

Tenant shall not disturb the site or ground outside the Building or anywhere on the Presidio without the express written consent of Landlord, which consent may be withheld, conditioned or delayed at Landlord's sole discretion.

## ARTICLE 6
## Compliance With Presidio Programs

### (A)    Presidio Sustainability Programs

Tenant shall comply with all sustainability policies and guidelines in the Tenant Handbook, as the same may be amended. Tenant shall also comply with The Presidio Recycling Policy, the Construction Waste Minimization Policy and The Presidio Energy and Water Conservation Policies, which emphasize retrofitting with conserving devices and implementing conservation practices. Tenant shall utilize The Presidio's Sustainable Design Guidelines for guidance on all new construction and the Tenant Improvements. Tenant shall participate in The Presidio Green Building rating program and report on sustainable practices and products utilized in the Premises as required by the Tenant Handbook or by Landlord.

### (B)    Transportation Management Plan

Tenant shall comply with the Transportation Management Plan attached hereto as **Exhibit C**. Tenant shall also comply with any Presidio-wide Transportation Plan, as the same may be amended.

### (C)    Integrated Pest Management

Tenant shall comply with the Presidio's Integrated Pest Management Policy, which emphasizes preventive measures and permits use of chemicals and pesticides only as specifically authorized in such program, as such program may be amended from time to time.

### (D)    Presidio Interpretation/Outreach

Tenant shall participate in Presidio interpretation and public outreach programs for the benefit of the public, whether in concert with the National Park Service or otherwise.

(E)    **Participation in Landlord Surveys**

Tenant shall participate and respond within reasonable time periods requested by Landlord to reasonable surveys and other reasonable information-gathering programs from time to time reasonably promulgated by Landlord, such as surveys regarding parking needs, transportation, housing, employment and other demographic or socioeconomic data.

## ARTICLE 7
### Services and Utilities

(A)    **Utilities and Other Costs**

From and after the Commencement Date, Tenant shall pay for all gas, electricity, heat, cooling energy, telephone, janitorial service, water, waste disposal, refuse collection and other utility-type services furnished to Tenant or the Premises, together with all related installation or connection charges or deposits.  Tenant shall pay Tenant's Reimbursable Expense Pro Rata Share for the utilities provided to the Common Area and electricity for exterior Building Lighting. Landlord shall not be liable in damages, consequential or otherwise, nor shall there be any rent abatement, arising out of any interruption whatsoever in Utilities Services or District Services due to Force Majeure, or any interruption in services which occurs as a result of the making of alterations, repairs or improvements to the Premises or the Presidio or any part of it.

(B)    **District Services**

Landlord will provide or cause to be provided for the benefit of the Premises certain types of services that are typically provided by municipalities, together with certain other services in connection with administration of the Presidio.  Such services may include administration, repair, maintenance, landscaping and capital improvement (the cost of which will be amortized over their useful life) and replacement of roadways, sidewalks, storm water systems and other infrastructure and Presidio common areas, street, sidewalk and trail lighting, lighting, police patrol, fire-fighting, emergency medical and hazardous-materials responses, traffic control, open space and vegetation management, perimeter walls and gates, recreation, trails and Presidio wide sustainability, recycling, transportation demand management programs, the Preferred Rental Program, and other programs and services to facilitate or enhance the use and enjoyment of the Presidio (collectively, "District Services").  It shall be in Landlord's sole and absolute discretion to choose from time to time whether to supply all or any of such services itself or cause all or any of such services to be supplied by an independent provider, whether to expand such services, and whether the expense of particular service and any allocated administrative cost will be included in the Service District Charge.

(C)    **Utility Services**

Tenant shall make all arrangements for Utility Services and garbage and refuse collection services with Landlord or, at Landlord's option, such other providers as are specified by Landlord.

(i)    Utility Services and refuse collection services provided by Landlord shall be charged to Tenant at commercially reasonable rates established by Landlord from time to

time. As of the date of this Lease, Landlord is the provider of the following Utility Services and refuse collection services: water, sanitary sewer, electricity, telecommunications and refuse collection. As of the date of this Lease, Pacific Gas and Electric Company is the provider of natural gas. Tenant shall retain and contract directly with a provider of janitorial service for the Premises and shall coordinate with the other tenant(s) of the Building for provision of janitorial service to the Common Area. Landlord reserves the right to assume itself or to transfer to another utility provider the responsibility for providing any or all Utility Services and refuse collection services and any other provider shall have the authority to service and bill Tenant directly. Landlord will give Tenant thirty (30) days' notice of any transfer of Utility Services and/or refuse collection services and such notification shall constitute an amendment to this Lease, as if the parties duly executed such amendment.

(ii)    Landlord shall bill Tenant for each individual Utility Service and refuse collection service furnished by or at the direction of Landlord. The bill for Utility Services shall either be (a) the amount shown on an individual meter for the Premises plus Tenant's Reimbursable Expense Pro Rata Share of Common Area utilities or (b) if the Premises are not metered for a particular utility service, Tenant's Reimbursable Expense Pro Rata Share for the cost of such utility service for the Building.

(iii)    Tenant shall pay to Landlord monthly, or on such other schedule as may be established by Landlord from time to time, in arrears, within ten (10) Business Days after receipt of such bill from Landlord, all amounts due for Utility Services and refuse collection services. Failure by Tenant to pay Landlord for Utility Services and refuse collection services shall give Landlord, in addition to any other right or remedy of Landlord under applicable laws, including, but not limited to, its rights under Public Law 104-134, 31 U.S.C. § 3701, et seq. (Debt Collection Act of 1996), the right to discontinue, upon seven (7) days' prior written notice, any of the Utility Services (except telecommunications dialtone) and refuse collection services furnished by Landlord to the Premises and for which Tenant fails to pay as provided in this Article 7(C). Tenant shall directly pay any other provider for services rendered, including any impositions.

## ARTICLE 8
### Tenant's Taxes

Tenant shall pay prior to delinquency all taxes, assessments, license fees, charges or other governmental impositions, whether general or special, ordinary or extraordinary, assessed against or levied or imposed upon Tenant's leasehold interest, trade fixtures, furnishings, equipment, and other personal property and the business conducted by Tenant on or from the Premises. Tenant shall pay any rent tax or sales tax, service tax, transfer tax or value added tax, or any other applicable tax on the Rent or services herein or otherwise respecting this Lease. Landlord has made no representations or warranties to Tenant regarding exemption from taxation of any kind.

## ARTICLE 9
### Insurance; Waiver of Subrogation and Claims

### (A)    Insurance Requirements

Tenant shall maintain the following insurance coverage commencing prior to Tenant's first entry on the Premises and continuing throughout the Term. Tenant shall maintain "Commercial General Liability" insurance policies with coverage at least as broad as ISO form CG 00 01 10 93, insuring against claims for bodily injury (including death), property damage, personal injury and advertising liability occurring upon the Premises or operations incidental or necessary thereto located in or on the Premises, such insurance to afford protection in an amount not less than Three Million Dollars ($3,000,000) each occurrence covering bodily injury and broad form property damage including contractual liability (which includes coverage of the indemnity obligations of Tenant under this Lease) and products and completed operations coverage, except that such insurance in excess of One Million Dollars ($1,000,000) may be covered by a so called "umbrella" or "excess coverage" policy. Such policy or policies shall provide that the coverage limits are not depleted by payment of defense costs. Tenant shall maintain policies of business automobile liability insurance covering all owned, non owned or hired motor vehicles to be used in connection with Tenant's use and occupancy of the Premises with the limits specified above or such lesser liability limits as may be approved by Landlord. All liability insurance carried by Tenant hereunder shall name Landlord as an additional insured and any other party specified by Landlord. During the Term, Tenant shall also maintain workers' compensation insurance as required by statute endorsed to provide waiver of subrogation for the benefit of Landlord.

Landlord shall have the right, but not the obligation, to obtain property insurance covering the Building for damage or other loss caused by fire or other casualty or cause, the nature and extent of such coverage to be determined by Landlord, in its sole discretion. If Landlord elects to obtain such coverage, Tenant shall reimburse Landlord for Tenant's Reimbursable Expense Pro Rata Share of the premiums therefor within ten (10) days after billing from time to time by Landlord.

Tenant shall maintain property insurance covering all improvements, alterations, and additions installed in the Premises by or for Tenant and Tenant's personal property, equipment, fixtures and business records in the Premises for damage or other loss caused by fire or other casualty or cause including, but not limited to, vandalism and malicious mischief, theft, water damage of any type (including sprinkler leakage, bursting or stoppage of pipes), explosion, and floor (if the Building is in a flood zone), in an amount not less than the full replacement value thereof, which replacement value coverage shall include the amount necessary to restore the Premises to its condition existing prior to the damage, including, without limitation, restoration of historic elements, to the extent possible under then-applicable law (including, but not limited to any required code upgrades) with an agreed amount endorsement and the elimination of a co-insurance requirement, and at least twelve (12) months business interruption insurance. Landlord shall be a loss payee on such policy.

Insurance carried by Landlord, if any, shall be for the sole benefit of Landlord. All insurance carried by Tenant hereunder shall be primary insurance to, and non-contributing with, any other insurance that may be available to Landlord. Any insurance policies hereunder may be "blanket policies." All insurance required hereunder shall be provided by reputable insurers qualified in the State of California, that are rated Best A-:VIII or better (or a comparable successor rating).

(B)    **Delivery of Policies and Certificates; Increased Coverage**

Tenant shall provide Landlord with certificates evidencing coverage and copies of all policies of insurance required hereunder prior to Tenant's entry of the Premises, which shall state that such insurance coverage may not be changed or canceled without at least thirty (30) days' prior written notice to Landlord. Tenant shall provide renewal certificates to Landlord at least thirty (30) days prior to expiration of such policies, and, upon any change or substitution of insurance policy, Tenant shall promptly deliver to Landlord a copy of such policy. Following consultation with Tenant, Landlord may, at any time, but not more frequently than annually, upon not less than ninety (90) days' prior written notice, require Tenant to increase the insurance limits for all or any of its general liability policies if in the reasonable judgment of Landlord it is the general commercial practice in the San Francisco Bay Area to carry insurance for facilities similar to the Premises in amounts substantially greater than the amounts carried by Tenant with respect to risks comparable to those associated with use of the Premises, but in no event more than an additional $1,000,000 of the current amount per fiscal year. In such event, Tenant shall promptly deliver to Landlord a certificate and copy of the policy evidencing such new insurance amounts.

(C)    **Waiver of Subrogation**

Notwithstanding anything to the contrary contained herein, to the extent of insurance proceeds received with respect to the loss, Tenant and Landlord each waive any right of recovery against the other party for any loss or damage to the Premises, the contents of same or any operation therein, whether or not such loss is caused by the fault or negligence of such other party. Landlord and Tenant shall each obtain from their respective insurers under all policies of fire, theft, liability, property loss or damage, workers' compensation and other insurance maintained by either of them at any time during the Term insuring or covering the Premises or any portion thereof or operations therein, a waiver of all rights of subrogation which the insurer of one party might have against the other party, and Landlord and Tenant shall each indemnify the other against any loss or expense, including reasonable attorneys' fees, resulting from the failure to obtain such waiver. Each of Landlord and Tenant shall, upon request, deliver to the other written evidence of such waiver of subrogation.

### ARTICLE 10
### Maintenance and Repairs

(A)    **Tenant's Maintenance and Repairs**

Tenant shall, throughout the Term, maintain the Premises in good order, condition and repair. Except for the building exterior, roof, structural elements of the Building and the Building systems located outside the Premises, Tenant's maintenance and repair obligations shall include, without limitation: (i) the prompt performance of all necessary repairs and maintenance of the Premises; (ii) the replacement, as they become worn out or obsolete, of all fixtures, furnishings and equipment; (iii) housekeeping and routine and periodic work scheduled to mitigate wear and deterioration without altering the appearance of the Premises; (iv) the repair of broken or worn-out elements, parts or surfaces so as to keep the existing appearance of the Premises; (v) scheduled inspections and routine maintenance of all Systems and Equipment in

the Premises (Landlord shall be given written notice of, and shall have the right to be present at, any such inspection); and (vi) performance of all actions necessary to ensure that no nuisance or waste exist or are maintained on the Premises. Landlord shall have the right to inspect Tenant's maintenance records for the Premises at any time, and Tenant shall provide the Landlord a copy of such maintenance records upon request.

In the event that repairs, maintenance or replacements are required, Tenant shall promptly arrange for the same through Landlord for such charges as Landlord may from time to time establish, or through contractors that Landlord generally uses at the Presidio or has approved in writing. Any repairs, replacements, or maintenance shall be performed in an acceptable, workmanlike manner and such repairs, maintenance and replacements shall be of a quality and class equal to or better than the original work or item. Tenant shall be required to obtain permits required by the Tenant Handbook or otherwise in connection with repairs, and to pay applicable permit fees. If Tenant does not promptly make such arrangements and complete repairs, replacements, or maintenance in a manner and quality acceptable to Landlord, Landlord may, but need not, make such repairs, maintenance and replacements. Prior to undertaking such repairs, replacements or maintenance at Tenant's costs, Landlord shall give Tenant five (5) days written notice of Tenant's failure to perform the same. The costs paid or incurred by Landlord therefor shall be reimbursed by Tenant within ten (10) days after written request by Landlord, which reimbursement shall include interest on the costs paid or incurred by Landlord at the Default Rate from the date incurred by Landlord through the date paid by Tenant.

### (B)    No Setoff

There shall be no allowance, abatement or offset of Rent or other charges, nor liability to Tenant for diminution of rental value or interference with Tenant's business and no claim by Tenant for eviction from the Premises by reason of inconvenience, annoyance or injury to Tenant arising from any repairs, alterations, replacements or improvements made to the Premises, the Presidio, or any portion thereof by Landlord, its agents, employees or contractors. To the extent Landlord may be expressly responsible for repairs under this Lease, Landlord shall not be liable to Tenant for failure to make repairs to the Premises, the Presidio or any portion thereof, unless Landlord has received from Tenant written notice of the need for such repairs and has failed to commence and diligently prosecute to completion such repairs within a reasonable time thereafter. In the performance of its obligations under this Paragraph, Landlord will make reasonable efforts to minimize any interference with Tenant's use of the Premises. In no event shall Tenant be entitled to make such repairs and deduct or offset the cost thereof against the Rent or other charges payable hereunder. Tenant waives all rights to make repairs at the expense of Landlord as provided by any present of future law, statute, or ordinance.

### (C)    Other Repairs

Landlord shall maintain in reasonable working order and condition the roof, the building exterior, structural elements of the building, and the building systems located outside of the Premises. Except for the building exterior, roof, structural elements of the Building and the Building systems located outside the Premises, Tenant shall reimburse Landlord for Tenant's Reimbursable Expense Pro Rata Share of the cost of such repair and maintenance within ten (10) days after billing by Landlord. The rates charged by Landlord for such work shall be Landlord's

regular rates for occupants of the Presidio. Landlord has no obligation and has made no promise to alter, remodel, improve, repair, decorate or paint the Premises or any part thereof except as may be specified above or in **Exhibit B**. Tenant shall provide prompt notice of defects in the Building to Landlord. In addition, with regard to any work required to be performed by Landlord hereunder, Landlord shall commence and pursue completion of such work within a reasonable amount of time based on the nature of repair.

## ARTICLE 11
### Alterations and Liens

### (A)    Tenant Improvements

The initial improvements to the Premises shall be performed in accordance with **Exhibit B**.

### (B)    Subsequent Alterations and Improvements

After completion of the improvements contemplated by **Exhibit B**, Tenant shall not make or suffer to be made any other alterations, additions or improvements to or of the Premises, or any part thereof, or attach any fixtures to the Premises, without first obtaining the written consent of Landlord, which consent may be given or reasonably withheld in Landlord's sole and absolute discretion. Any alterations, additions or improvements to the Premises, including, but not limited to, wall coverings, paneling, built-in cabinet work shall, on the expiration of the Term, become a part of the realty and belong to Landlord, and shall be surrendered with the Premises unless Landlord shall require removal thereof pursuant to Article 20. Moveable furniture and trade fixtures may be removed at the end of the Term, provided their removal will not cause material damage to the Premises. Any alterations, additions or improvements to the Premises shall be subject to and made in compliance with the Tenant Handbook. Without limiting the foregoing, Tenant shall submit detailed specifications and floor plans (if applicable) with respect to any requested alterations or improvements to Landlord for review, and necessary permits and pay any required permit fees. Landlord may request changes to such specifications or plans as a condition to giving its consent. Any work consented to by Landlord hereunder shall be done at Tenant's expense and shall be performed either by Landlord's contractors or employees or by contractors first approved in writing by Landlord, as Landlord may elect and if required by Landlord, shall be performed under Landlord's supervision. In cases where Landlord performs such work, Tenant shall pay Landlord an administrative fee in the amount of fifteen percent (15%) of the cost of the improvements to cover Landlord's overhead. Such fee shall be payable by Tenant at the time of issuance of the permit for the work (and shall be in addition to the standard Presidio permit fee(s) if applicable) or, if no permit is required, within ten (10) days after billing by Landlord. In addition, as a condition to its consent, Landlord shall be entitled to request adequate assurance that all contractors who will perform such work are duly licensed to perform the work, have in force workers' compensation, such other casualty, employee and public liability insurance as Landlord deems necessary to supplement the insurance coverage provided below, and comply with such other requirements as Landlord may impose. In the case of material alterations, additions or improvements, Landlord may require Tenant or its contractors to post adequate completion and performance bonds. Tenant shall obtain all required permits prior to commencing any work, and all work performed by Tenant shall be done in

compliance with any such permits and with all applicable laws and the Tenant Handbook. If the Tenant Improvements or other subsequent alterations or improvements differ materially as completed from the description of such work in the proposed plans delivered to Landlord in connection with its review of the proposed work, then, upon completion of such work, Tenant shall prepare and deliver to Landlord, at Tenant's cost, as-built plans for the completed work.

### (C)    No Liens

Tenant shall keep the Premises and the Presidio free from any liens arising out of any work performed, materials furnished or obligations incurred by Tenant. Landlord shall have right to post and keep posted on the Premises any notices that may be provided by law or which Landlord may deem proper for the protection of Landlord, the Premises, and the Presidio, from such liens. Tenant shall give Landlord notice at least twenty (20) days prior to commencement of any work on the Premises to afford Landlord the opportunity to post such notices.

**ARTICLE 12**
**Rights Reserved By Landlord**

Landlord reserves full rights to control the Premises and the Presidio (which rights may be exercised without subjecting Landlord to claims for constructive eviction, abatement of Rent, damages or other claims of any kind), including without limitation the rights set forth below. In the exercise of its rights under this Article 12, Landlord will make reasonable efforts to minimize any interference with Tenant's use of the Premises.

A.    To change the name or street address of the Premises or the Building; install and maintain signs on the exterior of the Building or the Premises; retain at all times, and use in appropriate instances, keys to all doors within and into the Premises; grant to any person the right to conduct any business or render any service at the Building or the Presidio, whether or not it is the same or similar to Tenant's Permitted Use; and have access for Landlord and other tenants of the Presidio to any mail chutes located on the Premises according to the rules of the United States Postal Service;

B.    To enter the Premises at reasonable hours for reasonable purposes, including, without limitation, to perform maintenance and repair, to exercise rights under this paragraph, to inspect the Premises, which inspection may include, without limitation, investigation and/or sampling and testing for Hazardous Materials; to show the Premises to insurers, tenants and brokers at reasonable hours; and, if Tenant shall abandon the Premises at any time, or shall vacate the same during the last six (6) months of the Term, to decorate, remodel, repair or alter the Premises;

C.    To limit or prevent access to the Premises, the Building or the Presidio, or otherwise take such action or preventive measures deemed necessary by Landlord for the safety of tenants or other occupants or licensees of the Building, the Presidio or the Premises or the protection of the Presidio, the Building or the Premises and other property located thereon or therein, in case of fire, structural deficiency, earthquake, invasion, insurrection, riot, civil disorder, public excitement or other dangerous condition, or threat thereof, or to enter the Premises to perform remediation of Hazardous Materials in accordance with Article 13;

D.    To decorate and to make alterations, additions and improvements, structural or otherwise, in or to the Building, the Presidio or any part thereof, and any adjacent building, structure, parking facility, land, street or alley (including, without limitation, changes and reductions in parking facilities, landscaped areas, driveways, roads and other public areas and the installation of signs, kiosks, planters, sculptures, displays, and other structures, facilities, amenities and features therein, and changes for the purpose of connection with or entrance into the Premises, the Building or the Presidio or use of the Presidio in conjunction with any adjoining or adjacent building or buildings, now existing or hereafter constructed). In connection with such matters, or with any other repairs, maintenance, improvements or alterations in or about the Premises, the Building or the Presidio, Landlord may erect scaffolding and other structures reasonably required, and during such operations may enter upon the Premises and take into and upon or through the Premises all materials required to make such repairs, maintenance, alterations or improvements, and may close public entry ways or other public areas.

E.    Landlord hereby reserves all subsurface mineral deposits, including oil and gas deposits, on or underlying the Premises, and reserves the right to explore, drill for and extract such subsurface minerals solely from one or more points of entry outside the Premises; provided that such right shall not be exercised so as to disturb or otherwise interfere with Tenant's leasehold estate, including subsurface and subjacent support of the Premises.

F.    Work orders initiated by Tenant shall be performed as described in the Tenant Handbook. In other non-emergency situations, Landlord shall provide twenty-four (24) hours notice to Tenant and shall access the Premises only during normal business hours.

### ARTICLE 13
### Hazardous Materials

A.    Tenant shall not transport, use, store, maintain, generate, manufacture, handle, dispose, release or discharge any "Hazardous Material" (as defined below) upon or about the Premises, the Building or the Presidio, nor permit Tenant's employees, agents, contractors, invitees, or other occupants of the Premises to engage in such activities upon or about the Premises, the Building, or the Presidio; provided, however, Tenant may use and temporarily store in the Premises substances customarily used and generated in medical offices only if: (i) such substances shall be used, stored and maintained only in such quantities as are reasonably necessary for such permitted use of the Premises, strictly in accordance with applicable law and the manufacturers' instructions, (ii) such substances shall not be disposed of, released or discharged at the Presidio, and shall be transported to and from the Premises in compliance with all applicable laws and as Landlord shall reasonably require, (iii) if any applicable law or Landlord's trash removal contractor requires that any such substances be disposed of separately from ordinary trash, Tenant shall make arrangements at Tenant's expense for such disposal directly with a qualified and licensed disposal company at a lawful disposal site (subject to scheduling and approval by Landlord), and shall ensure that disposal occurs frequently enough (in all events no less than once a week) to prevent unnecessary or unauthorized storage of such substances in the Premises, and (iv) any such substances shall be completely, properly and lawfully removed from the Presidio upon expiration or earlier termination of this Lease.

B.     Tenant shall promptly notify Landlord of: (i) any enforcement, cleanup or other regulatory action taken or threatened by any governmental or regulatory authority with respect to the presence of any Hazardous Material on the Premises or the migration thereof from or to other property, (ii) any demands or claims made or threatened by any party against Tenant or the Premises relating to any loss or injury resulting from any Hazardous Material on or from the Premises, and (iii) any matters where Tenant is required by applicable law to give a notice to any governmental or regulatory authority respecting any Hazardous Material on the Premises. Landlord shall have the right (but not the obligation) to join and participate, as a party, in any legal proceedings or actions affecting the Premises initiated in connection with any environmental, health or safety law. If Tenant stores or uses at the Premises Hazardous Materials other than substances of the type and in quantities customarily used and stored in offices, then at such times as Landlord may reasonably request, Tenant shall provide Landlord with a written list identifying any Hazardous Material then used, stored or maintained upon the Premises, the use and approximate quantity of each such material, a copy of any material safety data sheet ("MSDS") issued by the manufacturer thereof, written information concerning the removal, transportation and disposal of the same, and such other information as Landlord may reasonably require or as may be required by law. The term "Hazardous Material" for purposes hereof shall mean any chemical, substance, material or waste or component thereof which is now or hereafter listed, defined or regulated as a hazardous or toxic chemical, substance, material or waste or component thereof by any federal, state or local governing or regulatory body having jurisdiction, or which would trigger any employee or community "right-to-know" requirements adopted by any such body, or for which any such body has adopted any requirements for the preparation or distribution of an MSDS.

C.     If any Hazardous Material is released, discharged or disposed of by Tenant or any other occupant or guest of the Premises, or their employees, agents or contractors, on or about the Premises, the Building or the Presidio in violation of the foregoing provisions, Tenant shall immediately, properly and in compliance with applicable laws clean up and remove the Hazardous Material from the Premises, the Building and the Presidio and any other affected property and clean or replace any affected personal property (whether or not owned by Landlord, Tenant or any third party), at Tenant's expense. Such clean up and removal work shall be subject to Landlord's prior written approval and direction (except in emergencies), and shall include, without limitation, any testing, investigation, and the preparation and implementation of any remedial action plan required by any governmental body having jurisdiction or reasonably required by Landlord. If Tenant shall fail to comply with the provisions of this Article within five (5) days after written notice by Landlord, or such shorter time as may be required by applicable law or in order to minimize any hazard to persons or property, Landlord may (but shall not be obligated to) arrange for such compliance directly or as Tenant's agent through contractors or other parties selected by Landlord, at Tenant's expense (without limiting Landlord's other remedies under this Lease or applicable law).

D.     Notwithstanding anything to the contrary, Landlord shall not be obligated to request, review, approve, act upon or provide any information or precautions referred to in this Article and any failure by Landlord to do so shall not be deemed approval or authorization by Landlord of the actions of Tenant.

Landlord hereby notifies Tenant that the Building and the Premises may contain asbestos-containing materials ("ACMs") and lead-based paint materials in the flooring, drywall, and possibly other areas of the Building and the Premises. Tenant also acknowledges that there may be asbestos, lead-based paint or other Hazardous Materials in the soil or drip lines in the land under or adjacent to the Building. Landlord shall not be liable to Tenant or its employees, agents, contractors, customers, invitees or subtenants ("Tenant Parties") for any costs or injuries relating to such contamination or any other contamination caused by the Department of the Army, the Golden Gate Bridge and Highway District, the California Department of Transportation or any other Presidio permittee or occupant. Without limiting the foregoing, Tenant shall cause its contractors and any others performing work at the Premises to receive written notice of the possible presence of such Hazardous Materials. Tenant shall indemnify and hold harmless Landlord from and against any loss, cost, damage, liability, claim, demand or expense arising out of failure to so notify all such Tenant Parties. Tenant shall not engage in any activity that would disturb the ACMs or lead-based paint in the Premises or the Building. Without limiting the foregoing, if Tenant undertakes any alterations or other work in the Premises, Tenant shall, in addition to complying with the requirements of this Lease, undertake such work in a manner that will not disturb any ACMs or lead-based paint materials in the Premises or the Building. If ACMs or lead-based paint are likely to be disturbed in the course of any work proposed to be done by Tenant in the Premises, and Landlord consents to such work, then Tenant shall, at Tenant's expense, encapsulate or remove the ACMs in accordance with an asbestos-removal plan approved by Landlord and shall perform lead-based paint removal or abatement in accordance with a lead-based paint abatement plan approved by Landlord and, in each case, in accordance with all applicable laws, regulations and guidelines.

## ARTICLE 14
## Communications and Computer Lines

A.    Landlord shall provide Tenant with telephone service in accordance with this Article. Tenant may install, maintain, replace or use any communications or computer wires, cables and related devices (collectively, the "Lines") in the Premises, provided: (i) Tenant shall obtain Landlord's prior written consent which shall not be unreasonably withheld or delayed, use an experienced and qualified contractor approved in writing by Landlord, or, if required by Landlord, Landlord's contractors or employees, and comply with all of the other provisions of Articles 10 and 11, (ii) any such installation, maintenance, replacement or use shall comply with all applicable laws and good work practices, and shall not interfere with the use of any then existing Lines at the Building or the Presidio, (iii) an acceptable number of spare Lines and space for additional Lines shall be maintained for existing and future occupants of the Building, as determined in Landlord's reasonable opinion, (iv) if Tenant at any time uses any equipment that may create an electromagnetic field exceeding the normal insulation ratings of ordinary twisted pair riser cable or cause a radiation higher than normal background radiation, the Lines therefor (including riser cables) shall be appropriately insulated (at Tenant's sole cost and expense) to prevent such excessive electromagnetic fields or radiation, (v) as a condition to permitting the installation of new Lines, Landlord may require that Tenant remove existing Lines located in or serving the Premises, (vi) Tenant's rights shall be subject to the rights of any regulated telephone company or other utility, and (vii) Tenant shall pay all costs in connection therewith. Landlord reserves the right to require that Tenant remove any Lines located in or serving the Premises which (a) are installed in violation of these provisions, or (b) are at any time in violation of any

applicable laws or (c) represent a dangerous or potentially dangerous condition (whether such Lines were installed by Tenant or any other party), within three (3) days after written notice from Landlord. Notwithstanding the foregoing, Landlord reserves the right to perform any or all of the work described above at Tenant's expense. Tenant shall pay to Landlord the cost of any such work performed by Landlord, within thirty (30) calendar days after billing.

B.       Landlord may (but shall not have the obligation to): (i) install new Lines at the Premises or the Presidio, (ii) create additional space for Lines at the Building or the Presidio, and (iii) reasonably direct, monitor and/or supervise the installation, maintenance, replacement and removal of, the allocation and periodic re-allocation of available space (if any) for, and the allocation of excess capacity (if any) on, any Lines now or hereafter installed at the Premises or the Presidio by Landlord, Tenant or any other party (but Landlord shall have no right to monitor or control the information transmitted through such Lines). Such rights shall not be in limitation of other rights that may be available to Landlord by applicable law or otherwise.

C.       Landlord shall be the sole provider of local telephone services to the Premises. Tenant shall pay Landlord's fees and charges for telephone service provided by Landlord within thirty (30) calendar days of each billing, which fees and charges may include, without limitation, installation charges, fees for monthly service, and fees for repairs, inspection or servicing of the Lines. Notwithstanding the foregoing, Landlord reserves the right to transfer its right to provide telephone services to the Premises and the Building to another provider, in which event Tenant shall contract with and pay directly such provider for telephone services.

D.       Notwithstanding anything to the contrary contained in this Lease, Landlord reserves the right to require that Tenant remove any or all Lines installed by or for Tenant within or serving the Premises upon termination of this Lease, or at Landlord's option, reimburse Landlord for the cost of such removal, provided Landlord notifies Tenant prior to or within thirty (30) days following such termination. If Landlord elects to remove any or all of the Lines, Tenant shall reimburse Landlord for the cost of such removal within thirty (30) calendar days after billing. Any Lines not required to be removed pursuant to this Article shall, at Landlord's option, become the property of Landlord (without payment by Landlord). If Tenant fails to remove such Lines as required by Landlord, or violates any other provision of this Article, Landlord may, after ten (10) days' written notice to Tenant, remove such Lines or remedy such other violation, at Tenant's expense (without limiting Landlord's other remedies available under this Lease or applicable law). Tenant shall not, without the prior written consent of Landlord in each instance, grant to any third party a security interest or lien in or on the Lines, and any such security interest or lien granted without Landlord's written consent shall be null and void. Except to the extent arising from the gross negligence or willful misconduct of Landlord, its employees or agents, Landlord shall have no liability for damages arising from, and Landlord does not warrant that Tenant's use of any Lines will be free from, the following (collectively called "Line Problems"): (i) any eavesdropping or wire-tapping by unauthorized parties, (ii) any failure of any Lines to satisfy Tenant's requirements, or (iii) any shortages, failures, variations, interruptions, disconnections, loss or damage caused by the installation, maintenance, replacement, use or removal of Lines by or for other tenants or occupants of the Premises or the Presidio by any failure of the environmental conditions or the power supply for the Premises or the Presidio to conform to any requirements for the Lines or any associated equipment, or any other problems associated with any Lines by any other cause.

E.     Under no circumstances shall any Line Problems be deemed an actual or constructive eviction of Tenant, render Landlord liable to Tenant for abatement of Rent, or relieve Tenant from performance of Tenant's obligations under this Lease. In no event shall Landlord be liable for damages by reason of loss of profits, business interruption or other consequential damage arising from any Line Problems.

## ARTICLE 15
### Safety and Security Devices, Services and Programs

The parties acknowledge that safety and security devices, services and programs provided by Landlord, if any, while intended to deter crime and ensure safety, may not in given instances prevent theft or other criminal acts, or ensure safety of persons or property. Any security system installed by Tenant in the Premises must be compatible with any Presidio-wide security system and subject to Landlord's prior written approval, the Tenant Handbook, the Presidio Rehabilitation Standards and all other provisions of this Lease. The risk that any safety or security device, service or program may not be effective, or may malfunction or be circumvented by a criminal, is assumed by Tenant with respect to Tenant's property and interests, and Tenant shall obtain insurance coverage to the extent Tenant desires protection against such criminal acts and other losses, as further described in Article 9. Tenant agrees to cooperate in any reasonable safety or security program developed by Landlord or required by applicable law.

## ARTICLE 16
### Casualty Damage or Destruction

A.     In the event the Premises are damaged by fire, earthquake, act of God, the elements or other casualty, Landlord shall repair the same, subject to the provisions of this Article, if (i) in Landlord's reasonable opinion, such repairs can be made within a period of one hundred eighty (180) days after commencement of the repair work, (ii) insurance proceeds from property insurance for the Building are available to pay the total cost of the work, and (iii) the damage or destruction does not occur during the last twelve (12) months of the Term. If all of the foregoing conditions are satisfied, then this Lease shall remain in full force and effect; provided, however, that in such case, (1) Base Rent shall be paid initially from proceeds of the rental interruption or business interruption insurance required to be carried by Tenant hereunder (or from Tenant if such proceeds would have been payable but for Tenant's default in its obligations to maintain such insurance) arising out of or in connection with the damage or destruction and to the extent attributable to the Base Rent payable to Landlord under this Lease; and (2) so long as the damage or destruction is not caused by the fault or negligence of Tenant, its contractors, agents, employees or invitees, then to the extent that such insurance proceeds or other payments from Tenant described in clause (1) of this sentence do not cover Base Rent hereunder, then the amount of Base Rent for which insurance proceeds are not available will be temporarily abated proportionately with the degree to which Tenant's use of the Premises is impaired by the damage or destruction commencing from the date of the damage or destruction and continuing during the period required for the completion of restoration.

B.     As soon as is reasonably practicable following the occurrence of any damage, Landlord shall notify Tenant of the estimated time and cost required for the repair or restoration of the Premises. If, in Landlord's reasonable opinion, such repairs cannot be made within the

-21-

conditions described in Paragraph 16(A), then either Landlord or Tenant may elect by written notice to the other within thirty (30) days after Landlord's notice of estimated time and cost is given, to terminate this Lease effective as of the date of such damage or destruction. In the event that this Lease is terminated due to casualty, Landlord shall be entitled to the proceeds of the property insurance carried by Tenant other than the insurance covering Tenant's personal property. If neither party elects to so terminate this Lease, this Lease shall continue in full force and effect, but Base Rent shall be abated to the extent provided in Paragraph 16(A), and Landlord shall proceed diligently to repair such damage.

C.      A total destruction of the Building shall automatically terminate this Lease, and Tenant shall not be responsible for any base rent or service charge from and after the date on which Landlord determines that the Building has been totally destroyed.

D.      In no event shall Tenant be entitled to any compensation or damages from Landlord, specifically including, but not limited to, any compensation or damages for (i) loss of the use of the whole or any part of the Premises, (ii) damage to Tenant's personal property in or improvements to the Premises, or (iii) any inconvenience, annoyance or expense occasioned by such damage or repair (including moving expenses and the expense of establishing and maintaining any temporary facilities).

E.      Landlord, in repairing the Premises, shall not be required to repair any injury or damage to the personal property of Tenant, or to make any repairs to or replacement of any alterations, additions, improvements or fixtures installed on the Premises by or for Tenant. Tenant shall timely make such repairs and replacements.

## ARTICLE 17
## Condemnation

If any material part or all of the Premises shall be taken by power of eminent domain or condemned by any competent authority for any public or quasi-public use or purpose, or if any adjacent property or street shall be so taken or condemned, or reconfigured or vacated by such authority in such manner as to require the use, reconstruction or remodeling of any part of the Premises, or if Landlord shall grant a deed or other instrument in lieu of such a taking by eminent domain or condemnation, Landlord shall have the option to terminate this Lease upon ninety (90) days' written notice, provided such notice is given no later than one hundred eighty (180) days after the date of such taking, condemnation, reconfiguration, vacation, deed or other instrument. Tenant shall have reciprocal termination rights if the whole or any material part of the Premises is permanently taken, or if access to the Premises is materially impaired as a result of such taking. Landlord shall be entitled to receive the entire award or payment in connection therewith, except that Tenant shall have the right to file any separate claim available to Tenant for any taking of Tenant's personal property and fixtures belonging to Tenant and removable by Tenant upon expiration of the Term, and for moving expenses, provided that such claim may be made independent of Landlord's claim and does not diminish or delay the award available to Landlord, and such claim is payable separately to Tenant. All Rent shall be apportioned as of the date of such termination, or the date of such taking, whichever shall first occur. If any part of the Premises is taken, and this Lease is not so terminated, the Rent shall be proportionately abated.

## ARTICLE 18
### Indemnification

### (A)    Waiver

Tenant, as a material part of the consideration for this Lease, waives any and all claims against Landlord for damages by reason of any death of or injury to any person or persons, including Tenant, its employees, agents, contractors, invitees or any other third persons, in or about the Premises or the Presidio, or any injury to property of any kind whatsoever and to whomsoever belonging, including, without limitation, property of Tenant, arising at any time and from any cause other than solely by reason of the gross negligence or willful misconduct of Landlord, its employees or agents, while in, upon, or in any way connected with the Premises or the Presidio.  For purposes of this provision, neither the United States Park Police nor the Presidio Fire Department shall be deemed to be agents of Landlord, and Landlord shall have absolutely no liability for any act or omission of the United States Park Police or the Presidio Fire Department, each of which are independent entities.  This provision shall not limit any rights or remedies of Tenant or any other party to pursue the United States Park Police or the Presidio Fire Department directly for any acts or omissions of or by such parties.

### (B)    Indemnification

Tenant shall defend, indemnify and hold harmless Landlord, its directors, officers, employees and agents from and against any and all claims, demands, liabilities, damages, judgments, orders, decrees, actions, proceedings, fines, penalties, losses, costs and expenses, including without limitation, court costs and attorneys' fees arising from or relating to any loss of life, damage or injury to person, property or business occurring in or from the Premises, or caused by or in connection with any violation of this Lease or use of the Premises or the Presidio by, or any other act or omission of, Tenant, any other occupant of the Premises, or any of their respective employees, agents, subtenants, contractors or guests.  Tenant specifically acknowledges that the foregoing indemnity applies to claims in connection with or arising out of the physical (including seismic) condition of the Premises, any work described in Article 11, the installation, maintenance, use or removal of any "Lines" located in or serving the Premises as described in Article 14, and Hazardous Materials Activities as described in Article 13, including any resulting diminution in the value of the Premises  (whether or not any of such matters shall have been approved by Landlord).

### (C)    Costs

Tenant's indemnity obligation shall include all costs and expenses incurred by Landlord from the first notice that any claim or demand is to be made or may be made.  The provisions of this Article 18 shall survive the termination of this Lease with respect to any event, circumstance, damage, injury or death occurring prior to such termination.

## ARTICLE 19
### Assignment and Subletting

### (A)    Transfers

Tenant shall not, without the prior written consent of Landlord, which may be withheld by Landlord in its sole and absolute discretion, pledge, encumber, hypothecate or permit any lien to attach to this Lease or any interest herein, by operation of law or otherwise. Tenant shall not, without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed, provided all of the conditions (which the parties hereby agree are reasonable) contained in this Article have been satisfied: (i) assign or transfer this Lease or any interest herein, by operation of law or otherwise, (ii) sublet the Premises or any part thereof, (iii) license the Premises or any part thereof, or (iv) permit the use of the Premises by any persons other than Tenant, its employees, volunteers, and members of the community to which Tenant provides services (all of the foregoing described as items (i)-(iv) are hereinafter sometimes referred to collectively as "Transfers" and any person to whom any Transfer is made or sought to be made is hereinafter sometimes referred to as a "Transferee"). If Tenant shall desire Landlord's consent to any Transfer, Tenant shall notify Landlord in writing, which notice shall include: (a) the proposed effective date (which shall not be less than fifteen (15) nor more than one hundred eighty (180) days after Tenant's notice), (b) the portion of the Premises to be Transferred (herein called the "Subject Space"), (c) the terms of the proposed Transfer and the consideration therefor, the name and address of the proposed Transferee, and a copy of all documentation pertaining to the proposed Transfer, (d) current financial statements of the proposed Transferee certified by an independent certified public accountant and certified by an officer, partner or owner thereof, and any other information to enable Landlord to determine the financial responsibility, character and reputation of the proposed Transferee, nature of such Transferee's business, and prior experience in owning and operating other businesses, (e) the proposed use of the Subject Space by the proposed Transferee, and (f) such other information as Landlord may require. Any Transfer made without complying with this Article shall, at Landlord's option, be null, void and of no effect (unless waived in writing by Landlord), and, at Landlord's election, shall also constitute a Default (as defined in Article 22) under this Lease. Whether or not Landlord shall consent to the Transfer and to the Transferee, Tenant shall pay (i) Landlord's reasonable expenses for review and processing such request (which fees shall not exceed $750.00), and (ii) any reasonable legal fees incurred by Landlord (which fees shall not exceed $750.00 for a proposed sublease) within thirty (30) days after written request by Landlord.

**(B)    Landlord's Consent**

Landlord shall not unreasonably withhold its consent to any proposed Transfer to the Transferee on the terms specified in Tenant's notice, provided that the following conditions are satisfied: (i) Transferee intends to use the Premises for purposes which are permitted under this Lease, (ii) If the sublease is for only part of the Premises, the size and configuration of and access to the Sublet Premises and the remaining premises are suitable for normal leasing purposes and reasonably acceptable to Landlord; (iii) Transferee is not a governmental agency or instrumentality, or a person with whom Landlord or any agent of Landlord is actively negotiating with as a potential tenant at the Presidio, (iv) Transferee has a reasonable financial condition in relation to the obligations to be assumed in connection with the Transfer, (iv) Tenant is not in Default hereunder either at the time Tenant requests consent to the proposed Transfer or on the effective date of the Transfer and (v) Tenant and Transferee execute documentation concerning the Transfer which is acceptable to Landlord, including an assignment and assumption in a form approved by Landlord, a Landlord's consent on Landlord's form, an acknowledgment by Transferee that Landlord may include Transferee's name, address, e-mail address and telephone

number in Landlord's Web site, and a Public Copy of the sublease or assignment instrument, all of which shall be delivered to Landlord prior to the Transfer.

### (C)    Transfer Premium

Tenant shall pay Landlord fifty percent (50%) of any Transfer Premium derived by Tenant from any Transfer. "Transfer Premium" shall mean all rent, additional rent or other consideration from such Transferee in excess of the sum of (i) the Rent payable by Tenant under this Lease (on a per rentable square foot basis, if less than all of the Premises is transferred), and (ii) any reasonable and customary brokerage commissions actually paid by Tenant to an unrelated third-party real estate broker in connection with the Transfer. If part of the consideration for such Transfer shall be payable other than in cash, payment to Landlord for such non-cash consideration shall be in such form as is reasonably satisfactory to Landlord. The Transfer Premium due Landlord hereunder shall be paid within ten (10) days after the date received by Tenant.

### (D)    Terms of Consent

If Landlord consents to a Transfer: (i) the terms and conditions of this Lease, including, among other things, Tenant's liability under this Lease with respect to the Subject Space, shall in no way be deemed to have been waived or modified, (ii) such consent shall not constitute consent to any further Transfer by either Tenant or a Transferee, (iii) no Transferee shall succeed to any rights provided in this Lease or any amendment hereto to extend the Term of this Lease, expand the Premises, or lease additional space, any such rights being deemed personal to Tenant, (iv) Tenant shall deliver to Landlord promptly after execution, an original executed copy of all documentation pertaining to the Transfer in form acceptable to Landlord, and (v) Tenant shall furnish, upon Landlord's request, a complete statement certified by an independent certified public accountant, or Tenant's chief financial officer, setting forth in detail the computation of any Transfer Premium Tenant has derived and shall derive from such Transfer. Landlord or its authorized representatives shall have the right at all reasonable times to audit the books, records and papers of Tenant relating to any Transfer and to make copies thereof. If the Transfer Premium respecting any Transfer shall be found understated, Tenant shall within thirty (30) days after demand pay the deficiency, and if understated by more than two percent (2%), Tenant shall pay Landlord's costs of such audit. Any sublease shall be subordinate and subject to the provisions of this Lease. If this Lease is terminated during the term of any sublease, Landlord shall have the right to: (aa) treat such sublease as canceled and repossess the Subject Space by any lawful means, or (bb) require that subtenant attorn to and recognize Landlord as its landlord under any such sublease. If Tenant shall default and fail to cure within the time permitted for cure under Article 22, Landlord is irrevocably authorized, as Tenant's agent and attorney-in-fact, to direct any Transferee to make all payments under or in connection with the Transfer directly to Landlord until such Default is cured.

### (E)    Certain Transfers

The term "Transfer" shall also include (i) if Tenant is a partnership or limited liability company, the withdrawal or change (voluntary, involuntary or by operation of law) of more than twenty-five percent (25%) of the interest of all the partners, or a transfer of more than twenty-

five percent (25%) of all partnership interests, or the dissolution of the partnership or company, or withdrawal or change (voluntary, involuntary or by operation of law) of a majority of general partners or managing members of such partnership or company, or (ii) if Tenant is a closely held corporation (i.e., whose stock is not publicly held and not traded through an exchange or over the counter), the dissolution, merger, consolidation or other reorganization of Tenant, or (aa) the sale or other transfer of more than an aggregate of twenty-five percent (25%) of the voting shares of Tenant (other than to immediate family members by reason of gift or death) or (bb) the sale, mortgage, hypothecation or pledge of more than an aggregate of twenty-five percent (25%) of Tenant's net assets.

### ARTICLE 20
### Return of Possession

At the expiration or earlier termination of this Lease or Tenant's right of possession, Tenant shall surrender possession of the Premises in good condition and repair, ordinary wear and tear and casualty excepted, broom clean, and shall surrender all keys, any key cards, and any parking stickers or cards, to Landlord, Tenant shall advise Landlord as to the combination of any locks or vaults remaining in the Premises, shall remove all trade fixtures and personal property of Tenant and shall repair any damage to the Premises caused by such removal. All obligations or rights of either party arising during or attributable to the period ending upon expiration or earlier termination of this Lease (including, without limitation, the indemnity obligations in Article 18 or the obligations of Tenant with respect to the removal of Hazardous Materials pursuant to Article 13), and all obligations or rights of either party hereunder expressly arising on or following such expiration or earlier termination (including without limitation the provisions of this Article 20), shall survive such expiration or earlier termination. All improvements, fixtures and other items in or upon the Premises (except trade fixtures and personal property belonging to Tenant), whether installed by Tenant or Landlord, shall be Landlord's property and shall remain upon the Premises, all without compensation, allowance or credit to Tenant. However, if prior to such termination or within thirty (30) days thereafter Landlord so directs by written notice, Tenant shall promptly remove items designated in such notice and restore the Premises to the condition in which it existed prior to the installation thereof. If Tenant fails to perform any repairs or restoration, or fails to remove any improvements, fixtures, or other items from the Premises as required, Landlord may do so, and Tenant shall pay Landlord the cost thereof upon demand. All property removed from the Premises by Landlord pursuant to any provisions of this Lease or any applicable law may be handled or stored by Landlord at Tenant's expense, and Landlord shall in no event be responsible for the value, preservation or safekeeping thereof. All property not removed from the Premises or retaken from storage by Tenant within thirty (30) days after expiration or earlier termination of this Lease or Tenant's right to possession shall, at Landlord's option, be conclusively deemed to have been conveyed by Tenant to Landlord as if by bill of sale without payment by Landlord. Unless prohibited by applicable law, Landlord shall have a lien against such property for the costs incurred in removing and storing the same.

### ARTICLE 21
### Holding Over

Unless Landlord has previously delivered the Month-to-Month Notice (defined below),Tenant shall pay Landlord one hundred fifty percent (150%) of the amount of Rent then

applicable, or the highest amount permitted by applicable law, whichever shall be less, for each month (and the full such monthly amount for any partial month) Tenant shall retain possession of the Premises or any part thereof after expiration or earlier termination of this Lease, together with all damages sustained by Landlord on account thereof. The foregoing shall not serve as permission for Tenant to hold-over, nor serve to extend the Term (although Tenant shall remain bound to comply with all provisions of this Lease until Tenant vacates the Premises). At any time before or after expiration or earlier termination of the Lease, Landlord may, but shall not be obligated to, serve written notice to Tenant, advising Tenant of the amount of Rent and other terms required should Tenant desire to enter a month-to-month tenancy (the "Month-to-Month Notice"). If Tenant shall hold over more than one (1) full calendar month after delivery of the Month-to-Month Notice, Tenant shall thereafter be deemed a month-to-month tenant on the terms and provisions of this Lease in effect, as modified by the Month-to-Month Notice (except that Tenant shall not be entitled to any option, renewal or expansion rights contained in this Lease or any amendments hereto).

## ARTICLE 22
### Default by Tenant; Landlord's Remedies

### (A)    Default

The occurrence of any one or more of the following events shall constitute a "Default" by Tenant: (i) failure by Tenant to make when due any payment of Rent within three (3) business days after Landlord notifies Tenant in writing that such payment has not been received; (ii) failure by Tenant to observe or perform any of the terms or conditions of this Lease (other than those resulting in Incurable Defaults [as defined below] and those for which another cure period is specified) within thirty (30) days after written notice by Landlord to Tenant; (iii) failure by Tenant to comply with the Rules, unless such failure is cured within five (5) days after notice; (iv) either (aa) making by Tenant or any guarantor of this Lease ("Guarantor") of any general assignment for the benefit of creditors, or (bb) filing by or against Tenant or any Guarantor of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within sixty (60) days), or (cc) appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located on the Premises or of Tenant's interest in this Lease, or (dd) attachment, execution or other judicial seizure of substantially all of Tenant's assets located on the Premises or of Tenant's interest in this Lease, or (ee) Tenant's or any Guarantor's convening of a meeting of its creditors or any class thereof for the purpose of effecting a moratorium upon or composition of its debts, or (ff) Tenant's or any Guarantor's insolvency or admission of an inability to pay its debts as they mature; (v) any material misrepresentation in this Lease, or material misrepresentation or omission in any financial statements or other materials provided by Tenant or any Guarantor in connection with negotiating or entering this Lease or in connection with any Transfer under Article 19; or (vi) failure by Tenant to cure within any applicable times permitted any default under any other lease which Tenant has for space at the Presidio (and any Default hereunder not cured within the times permitted for cure herein shall, at Landlord's election, constitute a default under any such other lease or leases). Each of the following shall constitute an "Incurable Default": (x) a Default under clauses (iv) or (v) of this paragraph; (y) an assignment in violation of this Lease; and (z) failure by Tenant to comply with the same term or condition of this Lease on two (2)

occasions during any twelve (12) month period. These notice and cure periods are in lieu of, and not in addition to, any notice and cure periods provided by law.

### (B)    Remedies

In the event of any Default by Tenant Landlord may, at any time thereafter, with or without notice or demand and without limiting any other right or remedy under this Lease or at law or equity (all of which remedies shall whenever possible be deemed to be cumulative and not exclusive) exercise any or all of the following remedies:

(i)    Terminate this Lease and promptly obtain a judgment for immediate possession of the Premises, notwithstanding any other remedies available to Landlord hereunder.

(ii)    Terminate this Lease and recover as damages the following: (aa) the worth at the time of award of the unpaid Rent which had been earned at the time of termination; (bb) the worth at the time of award of the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such Rent loss that the Tenant proves could have been reasonably avoided; (cc) the worth at the time of award of the amount by which the unpaid Rent for the balance of the term after the time of award exceeds the amount of such Rent loss that Tenant proves could be reasonably avoided; (dd) the Costs of Reletting (as defined in this Article); and (ee) any other amount necessary to compensate Landlord for all the detriment resulting from by Tenant's failure to perform its obligations under the Lease or which in the ordinary course of things would be likely to result therefrom. The worth at time of award of the amounts referred to in Articles 22(B)(ii) (aa) and 22(B)(ii) (bb) is computed by allowing interest at the Default Rate. The worth at the time of award of the amount referred to in Article 22(B)(ii) (cc) is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus 1 percent (1%). Efforts by Landlord to mitigate the damages caused by Tenant's breach of the Lease do not waive the Landlord's right to recover damages hereunder.

(iii)    Continue this Lease in effect even though Tenant has breached the Lease and abandoned the Premises and enforce all of Landlord's rights and remedies under this Lease, including, without limitation, the right to recover Rent as it becomes due for so long as Landlord does not terminate Tenant's right to possession. Acts of maintenance or preservation, efforts to relet the Premises, or the appointment of a receiver upon Landlord's initiative to protect its interest under this Lease shall not constitute a termination of Tenant's right to possession.

(iv)    Following Tenant's vacation or abandonment of the Premises or issuance of a court order, judgment or arbitrator's award giving Landlord the right to possession of the Premises, enter the Premises and remove all persons, whether or not claiming rights as tenants and all property, and store such property in a public warehouse or elsewhere at the cost and expense of and for the account of Tenant. In the event that Tenant shall not immediately pay the cost of storage of such property after the same has been stored for a period of thirty (30) days or more, Landlord may sell any or all such property at a public or private sale in such manner and at such times and places as Landlord may deem proper, without notice to or demand upon Tenant, and apply the proceeds pursuant to applicable law.

(v)    Have a receiver appointed for Tenant, upon application by Landlord: (aa) to take possession of the Premises; (bb) to apply any Rent collected from the Premises first to the costs of such receivership, then to all amounts (other than Rent) owing under this Lease, and then to Rent owing under this Lease; and (cc) to exercise all other rights and remedies granted to Landlord pursuant to Article 22(B)(iv) above.

### (C)    Specific Performance and Collection of Rent

Without prior demand or notice except as required by applicable law, Landlord shall at all times have the rights and remedies (which shall be cumulative and in addition to those rights and remedies in law, equity, or under any other provision of this Lease): (i) to seek any declaratory, injunctive or other equitable relief, and specifically enforce this Lease, or restrain or enjoin a violation or breach of any provision hereof, and (ii) to sue for and collect any unpaid Rent which has accrued as provided in Article 22(B) above.

### (D)    Certain Definitions

"Costs of Re-Letting" shall include, without limitation, all reasonable costs and expenses incurred by Landlord for any repairs, maintenance, changes, alterations and improvements to the Premises, brokerage commissions, advertising costs, attorneys' fees, any customary free rent periods or credits, tenant improvement allowances, take-over lease obligations and other customary, necessary or appropriate economic incentives required to enter leases with Replacement Tenants, and costs of collecting rent from Replacement Tenants. "Replacement Tenants" shall mean any persons to whom Landlord relets the Premises or any portion thereof pursuant to this Article 22.

### (E)    Other Matters

No re-entry or repossession, repairs, changes, alterations and additions, reletting, acceptance of keys from Tenant, or any other action or omission by Landlord shall be construed as an election by Landlord to terminate this Lease or Tenant's right to possession, or accept a surrender of the Premises, nor shall the same operate to release the Tenant in whole or in part from any of Tenant's obligations, unless express written notice of such intention is sent by Landlord or its agent to Tenant. To the fullest extent permitted by applicable law, all rent and other consideration paid by any Replacement Tenants shall be applied: first, to the costs of re-letting, second, to the payment of any Rent theretofore accrued, and the residue, if any, shall be held by Landlord and applied to the payment of other obligations of Tenant to Landlord as the same become due (with any remaining residue to be retained by Landlord). Landlord may apply payments received from Tenant to any obligations of Tenant then accrued, without regard to such obligations as may be designated by Tenant. Landlord shall be under no obligation to observe or perform any provision of this Lease on its part to be observed or performed which accrues after the date of any Default by Tenant unless and until the Default has been cured within the times permitted. The times for curing of Defaults by Tenant are of the essence of this Lease. Tenant irrevocably waives any right otherwise available under any law to redeem or reinstate this Lease.

## ARTICLE 23
## Default by Landlord; Tenant Remedies

If Landlord shall fail to perform any term or provision under this Lease required to be performed by Landlord, Landlord shall not be deemed to be in default hereunder nor subject to any claims for damages of any kind, unless such failure shall have continued for a period of thirty (30) days after Tenant delivers written notice thereof to Landlord; provided, however, if the nature of Landlord's failure is such that more than thirty (30) days are reasonably required in order to cure, Landlord shall not be in default if Landlord commences to cure such default within such thirty (30) day period, and thereafter reasonably proceeds to cure such default to completion. If Landlord shall fail to cure within the times permitted, Landlord shall be subject to such remedies as may be available to Tenant at law (subject to the other provisions of this Lease); provided, however, in recognition that Landlord must receive timely payments of Rent to operate the Presidio, Tenant shall have no right of self-help to perform repairs or any other obligation of Landlord, and shall have no right to withhold, set-off, or abate Rent, nor claim an actual or constructive eviction or disturbance of Tenant's use or possession of the Premises, unless, until and only to the extent that Tenant shall have obtained a valid judgment by a court of competent jurisdiction.

## ARTICLE 24
## Attorneys' Fees and Jury Trial

In the event of any litigation or arbitration between the parties, the prevailing party shall be entitled to obtain, as part of the judgment or award, all reasonable attorneys' fees, costs and expenses incurred in connection with such litigation or arbitration, except as may be limited by applicable law. In the interest of obtaining a speedier and less costly hearing of any dispute, the parties hereby each irrevocably waive the right to trial by jury.

## ARTICLE 25
## Arbitration

### (A)    Binding Arbitration

In the event of a dispute over Tenant's right to possession of the Premises, then upon notice by either party to the other party describing the dispute with reasonable particularity (an "Arbitration Notice"), and to the American Arbitration Association ("AAA"), San Francisco, California, the dispute shall be submitted to a single arbitrator who is independent and impartial for binding arbitration in San Francisco, California, in accordance with AAA's Commercial Arbitration Rules (Expedited Procedures) then in effect, as modified or supplemented in this Lease. The Expedited Procedures shall apply regardless of whether any claim or counterclaim exceeds $100,000.00. AAA shall choose the arbitrator, within five (5) calendar days after receipt of the Arbitration Notice, from local members of AAA's National Panel of Commercial Arbitrators. The arbitrator will notice a hearing and hold such hearing no more than ten (10) calendar days after his or her selection, and at the hearing each party will be accorded up to four (4) hours in which to present its case. The parties' goal is, and the arbitrator will be advised that his or her goal shall be to conduct and conclude the arbitration proceeding as expeditiously as possible. If any party or its counsel fails to appear at any hearing, the arbitrator shall be entitled