# EXHIBIT A
# PART 2

to reach a decision based on the evidence that has been presented by the party that did appear. The arbitrator shall render his or her decision within ten (10) calendar days after the hearing. The arbitrator's judgment, which may include the immediate eviction of Tenant, shall be final and binding on all parties, and judgment may be entered and enforced in the United States District Court for the Northern District of California, San Francisco Division. The arbitrators shall be required to follow the applicable laws of the United States. There will be no discovery concerning the dispute. The arbitrator is empowered solely to decide whether the Tenant is entitled to possession of the Premises under the terms of this Lease and applicable law ("Arbitration Matters"). The arbitrator is not empowered to award damages to either party, but the decision of the arbitrator as to the Arbitration Matters is intended to be final and binding and shall be treated in any subsequent judicial proceeding as though the parties had stipulated to the arbitrator's decision. Except solely with respect to the issue of possession, the foregoing limitation on the scope of the matters to be decided by the arbitrator is not intended to limit the relief, including damages that might otherwise be available to either party under this Lease or applicable law in a judicial proceeding.

NOTICE: BY SIGNING IN THE SPACE BELOW, LANDLORD AND TENANT EACH HEREBY AGREES TO HAVE ANY DISPUTE AS TO THE ARBITRATION MATTERS DECIDED BY BINDING NEUTRAL ARBITRATION. LANDLORD AND TENANT EACH WAIVES AND RELINQUISHES ANY RIGHTS IT MIGHT POSSESS TO HAVE THE DISPUTE AS TO THE ARBITRATION MATTERS LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW, LANDLORD AND TENANT EACH HEREBY WAIVES AND RELINQUISHES ITS JUDICIAL RIGHTS TO DISCOVERY AND APPEAL WITH RESPECT TO THE ARBITRATION MATTERS. LANDLORD AND TENANT EACH ACKNOWLEDGES THAT IF IT REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, IT MAY BE COMPELLED TO ARBITRATE BY LAW. THE AGREEMENT BY THE PARTIES TO THIS ARBITRATION PROVISION IS VOLUNTARY. LANDLORD AND TENANT HAVE READ AND UNDERSTAND THE ABOVE AND AGREE AS OF THE DATE FIRST WRITTEN ABOVE TO SUBMIT TO BINDING ARBITRATION UNDER THIS SECTION.

LANDLORD:

By: _____

Name: _Craig Middleton_

Title: _Executive Director_

Date: _12/16/06_

TENANT:

By: _____

Name: Dr. Jeannie Tsai

Title: _____

Date: _11/7/25_

**(B)    Duration**

The Federal District Court for the Northern District of California is currently considering the adoption of rules for the expedited processing of actions to evict Presidio tenants. Notwithstanding anything in this Lease to the contrary, the provisions of this Article shall be in full force and effect until such time as Landlord shall give notice to Tenant that said provisions are irrevocably terminated as of the date of such notice due to the adoption of such eviction rules ("Arbitration Termination Notice"). Such Arbitration Termination Notice shall not in any way affect the applicability of the provisions of this Article to any dispute for which Landlord or

Tenant has given an Arbitration Notice prior to Landlord's having given the Arbitration Termination Notice.

## ARTICLE 26
## No Waiver

No provision of this Lease shall be deemed waived by either party unless expressly waived in writing signed by the waiving party. No waiver shall be implied by delay or any other act or omission of either party. No waiver by either party of any provision of this Lease shall be deemed a waiver of such provision with respect to any subsequent matter relating to such provision, and Landlord's consent or approval respecting any action by Tenant shall not constitute a waiver of the requirement for obtaining Landlord's consent or approval respecting any subsequent action. Acceptance of Rent by Landlord shall not constitute a waiver of any breach by Tenant of any term or provision of this Lease. No acceptance of a lesser amount than the Rent herein stipulated shall be deemed a waiver of Landlord's right to receive the full amount due, nor shall any endorsement or statement on any check or payment or any letter accompanying such check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the full amount due. The acceptance of Rent or of the performance of any other term or provision from any person other than Tenant, including any Transferee shall not constitute a waiver of Landlord's right to approve any Transfer.

## ARTICLE 27
## Conveyance by Landlord; Liability

In case Landlord or any successor owner of the Presidio or the Premises shall convey or otherwise dispose of any portion thereof in which the Premises is located to another person (and nothing herein shall be construed to restrict or prevent such conveyance or disposition), such other person shall be and become landlord hereunder and shall be deemed to have fully assumed and be liable for all obligations of this Lease to be performed by Landlord which first arise on or after the date of conveyance, including the return of any Security Deposit. Tenant shall attorn to such other person, and Landlord or such successor owner shall, from and after the date of conveyance, be free of all liabilities and obligations hereunder not then incurred. The liability of Landlord to Tenant for any default by Landlord under this Lease or arising in connection herewith or with Landlord's operation, management, leasing, repair, renovation, alteration, or any other matter relating to the Presidio or the Premises, shall be limited in amount to the value of the Building. Tenant agrees to look solely to Landlord's interest in the Presidio and the proceeds thereof for the recovery of any judgment against Landlord, and Landlord shall not be personally liable for any such judgment or deficiency. The limitations of liability contained in this Article shall apply equally and inure to the benefit of Landlord's present and future partners, beneficiaries, officers, directors, trustees, agents and employees, and their respective partners, heirs, successors and assigns. Except pursuant to a separate guaranty (if any) executed in connection herewith, no present or future or partner of Landlord (if such party is a partnership), or trustee or beneficiary (if such party or any partner of such party is a trust) or any shareholder, member or officer (if such party is a corporation or limited liability company) shall have any liability for the performance of Landlord's obligations under this Lease.

## ARTICLE 28
## Estoppel Certificates

Tenant or Landlord, as the case may be, shall from time to time, within ten (10) days after written request from the other party, execute, acknowledge and deliver a statement in customary form (i) certifying that this Lease is unmodified and in full force and effect or, if modified, stating the nature of such modification and certifying that this Lease as so modified is in full force and effect (or, if this Lease is claimed not to be in force and effect, specifying the grounds therefor) and any dates to which the Rent has been paid in advance, and the amount of any Security Deposit, (ii) acknowledging that there are not, to the knowledge of the certifying party, any uncured defaults on the part of such other party hereunder (or specifying such defaults if any are claimed), and (iii) certifying such other matters as the requesting party may reasonably request, or as may be reasonably requested by such party's current or prospective mortgagees, insurance carriers, auditors, or prospective purchasers. Any such statement may be relied upon by any such third parties.

## ARTICLE 29
## Real Estate Brokers

Tenant represents that Tenant has not dealt with any party as broker, agent or finder in connection with this Lease. Tenant agrees to indemnify, defend and hold Landlord harmless from all claims, demands, damages, judgments, liabilities and expenses (including reasonable attorneys' fees) arising from any assertion by any broker, agent or finder based upon the acts of the Tenant for any commission or fee alleged to be due to any party in connection with this Lease.

## ARTICLE 30
## Security Deposit

Tenant shall deposit with Landlord, the amount specified in the Basic Lease Information ("Security Deposit"), upon Tenant's execution and submission of this Lease. Tenant shall deliver the Security Deposit to Landlord in cash. The Security Deposit shall serve as security for the prompt, full and faithful performance by Tenant of the terms and provisions of this Lease. In the event that Tenant is in Default hereunder and fails to cure within any applicable time permitted under this Lease, or in the event that Tenant owes any amounts to Landlord upon the expiration of this Lease, Landlord may apply the whole or any part of the Security Deposit for the payment of Tenant's obligations. The use or application of the Security Deposit or any portion thereof shall not prevent Landlord from exercising any other right or remedy provided hereunder or under any law and shall not be construed as liquidated damages. In the event the Security Deposit is reduced by such use or application, Tenant shall deposit with Landlord within ten (10) days after written notice, an amount sufficient to restore the full amount of the Security Deposit. Landlord shall not be required to keep the Security Deposit separate from Landlord's general funds or pay interest on the Security Deposit. Any remaining portion of the Security Deposit shall be returned to Tenant within sixty (60) days after Tenant has vacated the Premises in accordance with Article 20. If the Premises shall be expanded at any time, or the Term shall be extended at any increased rate of Rent, the Security Deposit shall be proportionally increased. Tenant hereby waives the provisions of California Civil Code Section 1950.7, and all other

provisions of law now in force or that become in force after the execution of this Lease, which provide that Landlord may claim from a security deposit only those sums reasonably necessary to remedy defaults in the payment of Rent, to repair damage caused by Tenant, or to clean the Premises or which preclude the application of the security deposit to damages accruing after the date for return of the deposit called for in California Civil Code Section 1950.7 or any other applicable law. Tenant hereby waives any right under California Civil Code Section 1950.7 or any other law to return of the Security Deposit before all sums owed by Tenant under the Lease, whenever accruing, are paid in full.

## ARTICLE 31
### Notices

Every notice or other communication to be given by either party to the other shall be in writing and shall not be effective for any purpose unless the same shall be served personally or by national air courier service, or United States certified mail, return receipt requested, postage prepaid, addressed, if to Tenant, at the address set forth in the Basic Lease Information, and if to Landlord, at the address set forth in the Basic Lease Information, or such other address or addresses as Landlord and Tenant may from time to time designate by notice given as above provided. Every notice or other communication hereunder shall be deemed to have been given as of the third business day following the date of such mailing (or as of any earlier date evidenced by a receipt from such national air courier service or United States Postal Service) or immediately if personally delivered. Notices not sent in accordance with the foregoing shall be of no force or effect until received by the foregoing parties at such addresses set forth in the Basic Lease Information.

## ARTICLE 32
### Parking

Landlord shall provide Tenant the non-exclusive use of three (3) parking spaces ("Parking Allotment") in the Presidio in a location reasonably close to the Premises to be designated by Landlord. Tenant shall cooperate with Landlord to provide parking for special park events. Tenant and its agents, employees, visitors and invitees shall park solely in the marked spaces. Landlord shall have the option to relocate Tenant's parking to another area on the Presidio within 1,500 feet of the Premises. Tenant acknowledges that such parking may in the future be provided pursuant to a parking management plan to be prepared by Landlord. Tenant acknowledges that at any time during the Term it may become subject to parking charges pursuant to such parking plan or otherwise. At Landlord's option, some or all of the parking charges may be billed to individual drivers instead of to Tenant. Tenant shall be responsible for allocating spaces among itself and its subtenants, if any. Parking spaces shall be used solely for the parking of standard-sized passenger vehicles (including passenger vans and sports utility vehicles) for periods during which Tenant or Tenant's invitees, agents and employees are present at the Premises. The spaces may not be occupied by buses, RVs, commercial-sized trucks, or similar vehicles that are not standard-sized passenger vehicles.

W02-SF:5JS\61463460.5

Building 5
San Francisco Aesthetics and Laser Medicine

## ARTICLE 33
### Entire Agreement

This Lease, together with the Addendum (if any) and **Exhibits A, B, C, and D** (collectively incorporated by reference and made a part of this Lease), contains all the terms and provisions between Landlord and Tenant with respect to the Lease. No prior or contemporaneous agreement or understanding pertaining to the same shall be of any force or effect. Neither this Lease, nor any Addendum, nor the Exhibits may be modified, except in writing signed by both parties.

## ARTICLE 34
### Miscellaneous

### (A)     Binding

Each of the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties, their respective heirs, executors, administrators, guardians, custodians, successors and assigns, subject to the provisions of Articles 19 and 20.

### (B)     Recordation

Neither this Lease nor any memorandum hereof shall be recorded.

### (C)     Survival

All obligations or rights of either party arising during or attributable to the period ending upon expiration or earlier termination of this Lease shall survive such expiration or earlier termination.

### (D)     Quiet Enjoyment

Landlord agrees that, if Tenant timely pays the Rent and performs the terms and provisions hereunder, and subject to all terms and provisions of this Lease, Tenant shall hold and enjoy the Premises during the Term, free of lawful claims by any Person acting by or through Landlord.

### (E)     Light/Air Easements

This Lease does not grant any legal rights to "light and air" outside the Premises nor any particular view or cityscape visible from the Premises.

### (F)     Force Majeure

Neither Landlord nor Tenant shall be chargeable with, liable for, or responsible to the other or to any other person for any delay in the performance of any act required hereunder (other than the payment of Rent) when such delay is caused by a Force Majeure occurrence and any delay due to said causes or any of them shall not be deemed a breach of or default in the performance of this Lease, it being specifically agreed that any time limit for such party's

performance contained in this Lease shall be extended for the same period of time and to the extent of delay resulting from causes set forth above.

### (G)    Use of Name

Tenant shall not and shall ensure that Tenant's agents, subtenants and licensees shall not use the names "Presidio Trust" or "Presidio of San Francisco," or the word "Presidio" in any combination with the word "Trust", including all variations thereof, in their "corporate name" or in the name of the entity under which they do business, or in any other way (other than in connection with Tenant's address), without Landlord's prior written consent, which may be withheld in Landlord's sole and absolute discretion. Tenant acknowledges that such names are proprietary to Landlord.

### (H)    Signs

No temporary or permanent sign, symbol or identifying marks shall be put upon the Premises, or in the halls, elevators, staircases, entrances, parking areas or upon doors or walls, without Landlord's prior written approval, which may be given or withheld in Landlord's sole and absolute discretion. Should such approval be granted, the signs or lettering shall conform in all respects to applicable laws, the Presidio Rules for Use and Occupancy, the Tenant Handbook and any other sign and/or lettering criteria established by Landlord. However, Tenant may place one interior sign in the Premises identifying Tenant's place of business, the size, design and location of which shall be subject to Landlord's prior, reasonable approval and so long as such sign does not impinge on the historic fabric of the Building and is not visible from the exterior of the Building. Pursuant to 36 C.F.R. 1002.52, no news racks, booths or facilities for the distribution of printed materials shall be located on the Premises without a proper permit from Landlord. Landlord shall provide exterior signage which shall indicate the Building number and Tenant's name (along with other tenants of the Building). Tenant shall reimburse Landlord for its prorata share (with other tenants of the Building) of all costs associated with such exterior signage.

### (I)    Anti-Deficiency Act

Nothing contained in this Lease shall be construed as binding Landlord to expend in any one fiscal year any sum in excess of appropriations made by Congress or administratively allocated for the purpose of this Lease for the fiscal year, or to involve Landlord in any contract or other obligation for the further expenditure of money in excess of such appropriations or allocations.

### (J)    No Preferential Renewal and Relocation Assistance

Except as expressly provided otherwise, this Lease provides no right of renewal, and Tenant hereby waives any preferential right of renewal of this Lease under 16 U.S.C. Section 20(d) or otherwise. No rights shall be acquired by virtue of this Lease entitling Tenant to claim benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-645.

### (K)    No Third Party Beneficiaries

W02-SF:5JS\61463460.5

Building 5
San Francisco Aesthetics and Laser Medicine

This Lease shall not, nor be deemed to, confer upon any person or entity, other than the Parties hereto, any right or interest, including without limitation any third-party beneficiary status or any right to enforce any provision of this Lease.

### (L)    Time of the Essence

Time is of the essence of this Lease and of each and every term, covenant, agreement, condition and provision of it. Unless work or Business Days are specified, references to "days" in this Lease refer to calendar days.

### (M)    Applicable Law; Jurisdiction; Venue; Consent to Magistrate

The applicable laws of the United States shall govern the validity, construction and effect of this Lease. Tenant consents to exclusive personal and subject matter jurisdiction in the United States District Court for the Northern District of California, San Francisco Division, and waives any claim that such court is not a convenient forum. Tenant shall not contest the sufficiency of any service of process on Tenant by Landlord that is accomplished pursuant to Article 31 and hereby waives any right to receive service in any other manner. With respect to any lawsuit that relates in any way to this Lease and in which Tenant and Landlord are adverse parties, Tenant voluntarily, knowingly, and irrevocably consents, in accordance with the provisions of 28 U.S.C. Section 636(c), to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of a final judgment, in accordance with the rules of the United States District Court for the Northern District of California, San Francisco Division, as the same may be amended from time to time, and Tenant voluntarily waives the right to proceed before a United States District Judge. Tenant shall execute such forms and other statements signifying such consent as may be required at any time by the United States District Court for the Northern District of California, San Francisco Division.

CONSENT IS HEREBY GRANTED BY TENANT IN ACCORDANCE WITH THE TERMS OF THIS ARTICLE 34(M):

> **SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC.,**
> a California corporation
>
> By:  _____
> Name: Dr. Jeannie Tsai
> Title:  _____
> Date:  _____11 / 7 / 05_____

### (N)    Termination Not Merger

The voluntary sale or other surrender of this Lease by Tenant to Landlord, or a mutual cancellation of it, or the termination of it by Landlord under any provision, shall not work a merger, but at Landlord's option shall either terminate any or all existing subleases or subtenancies hereunder or operate as an assignment to Landlord of any or all such subleases or subtenancies.

## (O)    No Partnership Or Joint Venture

Landlord is not for any purpose a partner or joint venturer of Tenant in the development or operation of the Premises or in any business conducted on the Premises. Landlord shall not under any circumstances be responsible or obligated for any losses or liabilities of Tenant.

## (P)    Approvals

Unless otherwise provided herein, all approvals and consents required of Landlord hereunder shall be subject to Landlord's sole and absolute discretion. If Tenant believes Landlord has unreasonably withheld or delayed giving approval or consent, where such approval or consent is expressly subject to Landlord's reasonable approval or consent, Tenant's sole and exclusive remedy shall be to request a court of competent jurisdiction to grant injunctive relief to compel Landlord to grant such approval or consent, or to pursue arbitration to the extent available under Article 25. Tenant expressly waives any and all rights it may have, now or in the future, to bring an action or make a claim for any other relief, including without limitation declaratory judgment, damages or other monetary relief including, but not limited to, punitive damages.

## (Q)    Captions

The captions of the Articles and Paragraphs of this Lease are for convenience of reference only and shall not be considered or referred to in resolving questions of interpretation.

## (R)    Severability

If any term or provision of this Lease shall be found invalid, void, illegal, or unenforceable with respect to any particular person by a court of competent jurisdiction, it shall not affect, impair or invalidate any other terms of provisions hereof, or its enforceability with respect to any other person, the parties hereto agreeing that they would have entered into the remaining portion of this Lease notwithstanding the omission of the portion or portions adjudged invalid, void, illegal, or unenforceable with respect to such person.

## (S)    Counterparts

This Lease may be executed in any number of counterparts and each counterpart shall be deemed to be an original document. All executed counterparts together shall constitute one and the same document, and any counterpart signature pages may be detached and assembled to form a single original document.

## (T)    Release of Information

Tenant acknowledges that this Lease is subject to the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Presidio Trust's implementing regulations, 36 C.F.R. Part 1007, and may be subject to other requirements relating to information in the possession of governmental entities. Immediately upon the execution of this Lease, Tenant shall provide Landlord with a photocopy of this Lease (including all exhibits), to be known as the "Public Copy," from which Tenant shall have permanently redacted, so that the document may be

released to the public without further review, all information which Tenant believes is exempt from disclosure to the public under FOIA (e.g., confidential commercial or financial information of the Tenant or any other individual or entity). Tenant acknowledges that Landlord may redact additional information at its discretion. Tenant agrees that information appearing in the Public Copy may be treated by Landlord, at Landlord's option, as a waiver of any claim to exemption from FOIA with respect to such information. Tenant shall indemnify, defend and hold harmless Landlord from and against any claims, actions, demands, costs, losses, and liabilities incurred by Landlord, including attorneys' fees and court costs, relating to any claim for wrongful disclosure of information appearing in the Public Copy. Tenant acknowledges and agrees that Landlord shall have the right to review the information that does not appear in the Public Copy and to disclose such information in accordance with the requirements of FOIA and other requirements relating to information in the possession of governmental entities, including, but not limited to, Executive Order 12600.

      (U)    **Landlord's Web Site**

      Landlord may put Tenant's name, address, e-mail address and telephone number on Landlord's Web site and other directories available to the general public.

      (V)    **Confidentiality**

      Tenant shall, and shall cause its agents and representatives to, keep the terms of this Lease strictly confidential and shall not disclose the terms of this Lease to any third party other than to Tenant's agents and representatives, potential lenders, investors and their agents and representatives with a bona fide need to know such Lease terms and only if such persons are advised of and agree to maintain the confidential nature of such Lease terms. Tenant shall refrain from, and shall use diligent efforts to cause its potential lenders, investors and their agents and representatives to refrain from, in any way using any information it has obtained relating to the terms of this Lease to the detriment of Landlord. Tenant, its agents, representatives, potential lenders, investors and their agents and representatives, may disclose the terms of this Lease if, and only to the extent that, such disclosure is required by court order.

      (W)    **Keys**

      In no case shall Tenant re-key the Premises without first obtaining Landlord's written approval. After any such re-keying, Tenant shall provide Landlord with copies of all keys at Tenant's cost.

      (X)    **False Certifications**

      Landlord currently makes available to certain employees of Presidio-based tenants certain housing at below-market rates depending on employee income and other factors. In administering this program, Landlord requires employees participating in this program to obtain a certificate confirming such person's employment by a Presidio-based tenant. If Tenant provides false information on such certificate and such falsely certified person becomes a tenant of a residential unit, then such tenant shall be subject to all remedies provided in its lease (including termination of the lease) and Tenant shall reimburse Landlord on demand for the

aggregate amount of any rental discount or subsidy such person receives during their occupancy (i.e., until such person vacates).

## ARTICLE 35
### Definitions

For the purposes hereof, the following terms shall have the meanings set forth below:

"Building" is defined in Article 1.

"Business Days" shall mean all days other than Saturdays, Sundays and federally observed holidays.

"Certificate of Occupancy" is the issuance by the Presidio Trust of authorization for the tenant to occupy the Premises, whether it is a temporary or a permanent certificate.

"Commencement Date" is defined in Article 2.

"Costs of Reletting" is defined in Article 22.

"Default" is defined in Article 22.

"Default Rate" shall mean eighteen percent (18%) per annum, or the highest rate permitted by applicable law, whichever shall be less.

"District Services" are defined in Article 7.

"Expiration Date" is defined in Article 2.

"FOIA" is defined in Article 34(T).

"Force Majeure" shall mean fire or other casualty, strikes, lockouts or other labor disturbances, power shortages or outages, embargo, extraordinary unavailability of materials or supplies, act of terrorism, riot or war.

"Hazardous Materials" is defined in Article 13.

"Hazardous Materials Activities" is defined in Article 13.

"Impositions" mean all taxes, assessments, rates, charges, license fees, municipal liens, levies, excises or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, imposed by any public agency, or other authority or entity, that may be levied, assessed, charged or imposed or may be or become a lien or charge upon all or any part of the Premises; or upon the Rent; or upon the use or occupancy of the Premises; or upon any tenant improvements, alterations, other improvements on the Premises or personal property. Impositions also include without limitation the payment of any bonds or charges imposed or required by any public agency, or other authority or entity, by reason of the proposed or Hazardous Materials Activities on or from the Premises by Tenant or Tenant's agents, subtenants or licensees; provided, however, that nothing contained in this Paragraph shall

be deemed to permit Tenant to engage in or permit any Hazardous Materials Activities on any portion of the Premises or the Presidio.

"Landlord" and "Tenant" shall be applicable to one or more persons as the case may be, and the singular shall include the plural, and the neuter shall include the masculine and feminine; and if there be more than one, the obligations thereof shall be joint and several. For purposes of any provisions indemnifying or limiting the liability of Landlord, the term "Landlord" shall include Landlord's present and future partners, beneficiaries, trustees, officers, directors, employees, principals, agents, affiliates, successors and assigns, and the word "Tenant" shall include Tenant's, its officer, directors, employees, agents, assignees, subtenants, concessionaires, licensees and other Transferees or as the context may require.

"Landlord's Work" is defined in Article 2(B) and in **Exhibit B**.

"Lease Year" means each twelve month period during the Term, beginning with the Commencement Date, and each anniversary date.

"Line Problems" is defined in Article 14.

"Lines" is defined in Article 14.

"NEPA" is defined in Article 5.

"NHPA" is defined in Article 5.

"Parking Allotment" is defined in Article 32.

"Permitted Use" is defined in Basic Lease Information.

"Preferred Rental Program" means the program by which Landlord permits the employees of Presidio-based businesses with annual earnings of less than a specified maximum to rent residential units in the Presidio at annual rental rates not greater than a specified percentage of such employee's annual income. Such income limit and subsidized rental rates are subject to increase by Landlord from time to time.

"Presidio" means the property known as The Presidio of San Francisco, California.

"Presidio Rehabilitation Standards" mean the Guidelines for Rehabilitating Buildings at the Presidio of San Francisco, which may be modified from time to time by Landlord in its sole and absolute discretion.

"Presidio Rules for Use and Occupancy" means the Presidio Rules for Use and Occupancy for Non-Residential Buildings to be prescribed by Landlord for the use and occupancy of Presidio property, applicable to all non-residential tenants, licensees, concessionaires and other occupants, which requirements may be modified from time to time by Landlord in its sole and absolute discretion.

W02-SF:5JS\61463460.5

Building 5
San Francisco Aesthetics and Laser Medicine

"Pro Rata Share" is defined in Article 3(B).

"Public Copy" is defined in Article 34(T).

"Reimbursable Expense Pro Rata Share" is defined in the Basic Lease Information.

"Rent" has the meaning given in Article 3.

"Replacement Tenants" is defined in Article 22.

"Service District Charge" is defined in Article 3(B).

"Systems and Equipment" means any plant, machinery, transformers, duct work, cable, wires, and other equipment, facilities, and systems designed to supply heat, ventilation, and humidity or any other services or utilities, or comprising or serving as any component or portion of the electrical, gas, steam, plumbing, sprinkler, communications, alarm, security, or fire/life/safety systems or equipment, or any other mechanical, electrical, electronic, computer or other systems or equipment for the Premises, the Building, or the Presidio.

"Tenant Handbook" means the Presidio Tenant Handbook, as the same may be amended from time to time by Landlord in its sole and absolute discretion.

"Term" is defined in Article 2.

"Transfer" is defined in Article 19.

"Transfer Premium" is defined in Article 19.

"Transferee" is defined in Article 19.

"Trust Act" is defined in Article 5.

"Utility Services" means utility services, including, without limitation, gas, electricity, other power, water, telephone and other communications services, and sewage; and any and all utility hook-ups, utility service connections or changes in connection with such service.

## ARTICLE 36
## Option to Extend Term

(A)     Tenant shall have two (2) separate options (each an "Option") to extend the Term of the Lease for the additional period of one (1) year each, beginning on the second (2nd) anniversary of the Commencement Date (the "Extended Term"), subject to the terms, covenants and conditions contained in the Lease, except for adjustment of the Base Rent as provided below.

(B)     The Options granted herein are with respect to, and must be exercised by Tenant with respect to, all of the Premises then subject to the Lease (the "Option Premises").

(C)    Tenant shall exercise an Option, if at all, by giving written notice of its exercise thereof (the "Exercise Notice") to Landlord not more than two hundred seventy (270) days nor less than one hundred eighty (180) days prior to the expiration of the initial or first extended Term. Tenant's delivery of an Exercise Notice shall be deemed irrevocable.

(D)    The Base Rent during the Extended Term shall be the greater of (i) the then fair market value of the Option Premises in Landlord's reasonable opinion or (ii) the Base Rent in effect immediately prior to the Extended Term plus a CPI Escalation Amount made in accordance with Section 3(A) above. Landlord and Tenant shall reach a mutual written agreement on the Base Rent for the Extended Term within ninety (90) days after Landlord's receipt of an Exercise Notice, and if unable to do so, the Exercise Notice shall be deemed null and void, and all rights of Tenant under this Article 36 to extend the Term of the Lease shall terminate.

(E)    If Tenant through no fault of Landlord fails to give Landlord the required Exercise Notice within the time period and in the manner herein provided, all rights of Tenant under this Article 36 to extend the Term of the Lease shall terminate. It shall be a condition to the effective exercise of this Option that Tenant has completed the initial Lease Term, and, if applicable, the first Extended Term, and that there exists no Default under the Lease or event or circumstance which, with notice or the passing of time, would constitute such Default, and that the Lease be in full force and effect both on the date Landlord receives the Exercise Notice and on the date the Extended Term is to commence.

## ARTICLE 37
## Guaranty of Tenant's Obligations

Tenant's obligations under this Lease are guaranteed by the party indicated in the Basic Lease Information (the "Guarantor") pursuant to a Guaranty in the form of **Exhibit D** hereto executed concurrently with this Lease. Tenant hereby represents and warrants that Guarantor has taken all necessary action to authorize the execution, delivery and performance of the Guaranty and the Guaranty constitutes the legal, valid and binding obligation of the Guarantor.

*Remainder of page intentionally left blank; signatures on following page*

Building 5
San Francisco Aesthetics and Laser Medicine

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

LANDLORD:

THE PRESIDIO TRUST,
a wholly-owned corporation of the
United States of America

By: _____
Name: Craig R. Middleton
Title: Executive Director
Date:

Approved as to form:

_____

_____

_____

TENANT:

**SAN FRANCISCO AESTHETICS AND LASER
MEDICINE, INC.,**
a California corporation

By: _____
Name: Dr. Jeannie Tsai
Title: _____
Date: _____11/7/05_____

**Attachments**

| | |
|---|---|
| Exhibit A | Premises Description |
| Exhibit B | Work Letter |
| Exhibit C | Transportation Demand Management Plan |
| Exhibit D | Guaranty |

## EXHIBIT A

## PREMISES



5 Funston – First Floor

TOTAL BUILDING RSF 4,072

Suite B –
1,903 RSF

Suite A –
2,169 RSF

DISCLAIMER.

Area calculations are estimates based upon BOMA methodology. Use of these floor plans constitutes the recipient's (i) acknowledgement that the drawings are provided without representation or warranty as to accuracy or completeness and (ii) waiver of any related claim.



5 Funston – Second Floor

Suite B

Suite A

Disclaimer:

Area calculations are estimates based upon BOMA methodology. Use of these floor plans constitutes the recipient's (i) acknowledgement that the drawings are provided without representation or warranty as to accuracy or completeness and (ii) waiver of any related claims.

## EXHIBIT B

## WORK LETTER

This Work Letter is hereby incorporated into the Lease as **Exhibit B** thereto. Unless otherwise specified, the capitalized terms contained in this Work Letter shall have the meanings specified in the Lease. Prior to the Commencement Date, Landlord shall perform, at Landlord's expense, the work described on **Schedule 1** as Base Building Work and Building Standard Tenant Improvement Work Paid by Landlord. Such work is collectively referred to herein as "Landlord's Work." Notwithstanding the foregoing or anything in the Lease to the contrary, Landlord's total cost for performing all of the Landlord's Work shall not exceed $457,000, and Landlord shall not be required to perform any Landlord's Work in excess of such costs unless and until it receives from Tenant funds sufficient to cover all of Landlord's costs in excess of such amount.

## Schedule 1 to Exhibit B

Division 2 – Sitework & Demolition
- Reseeding.
- Tree Removal.
- Exterior lead base paint abatement/stabilization (includes Industrial hygienist monitoring, testing & certification).
- Install telecom wiring within Premises to include approximately two (2) telephone and two (2) data jacks per room, with the exception of the bathrooms, kitchen, closets, halls and entry areas on the first and second floors.
- Install laterals to building (including fire, water, gas and electrical).
- Lead soil remediation around perimeter of the Premises.

Division 6 – Wood & Plastics
- Structural strengthening of foundation
- Repair damaged siding
- Repair damaged exterior trim
- Repair damaged skirting
- Repair rear roof vent
- Repair gable vents
- Repair foundation vents
- Repair kitchen porch & stair
- Repair damaged front porch boards
- Rebuild front entry stairs

Division 7 – Thermal & Moisture Protection
- Exterior sealant

Division 8 – Doors & Windows
- Replace or repair exterior and interior doors as needed

Division 9 – Finishes
- Exterior preparation & painting
- Repair water damaged plaster walls & ceilings
- Repair water damaged oak flooring
- Refinish (screen & wax) hardwood flooring
- Refinish second floor Douglas Fir flooring
- Clean and wax linoleum flooring, replace as needed
- Interior preparation and painting

Division 10 – Specialties
- Knox box
- Final cleaning

Division 15 – Mechanical
- Repair or remove damaged/abandoned DWV piping
- Repair or remove damaged/abandoned CW & HW lines
- Basement sump pump
- Repair or replace heating system, as Landlord may elect in its sole discretion
- Install domestic and fire service lines to building

### MISC. INTERIOR IMPROVEMENTS

- Interior lead based paint abatement
- Interior asbestos abatement – plaster
- Remove kitchen hood
- Install irrigation – drip hose
- New kitchen cabinets & countertop
- Landlord will construct an ADA compliant restroom on the first floor of Suite B
- Refurbish exterior doors
- Maintenance to interior wood doors & hardware
- Plaster repairs – general
- Board sheathed wall repairs; prep & re-paper
- Plaster crack repair
- Plaster repairs @ wire mold removal/installation
- Plaster repairs @ kitchen hood
- Install carpet (stair runners only)
- Install fire extinguishers
- Replace or repair 30-gallon water heater
- Install main distribution panel
- Install new wire mold raceway and wiring
- Repair or replace switches
- Repair or replace receptacles
- Install emergency lights and exit signs
- Install new interior lighting – school house pendant fixtures
- Install new interior lighting – ceiling fixtures
- Install new interior lighting – wall fixtures
- Install new interior lighting – closet lights
- Replace exterior lights

### FIRE/LIFE SAFETY IMPROVEMENTS

- Replace or repair fire water service line & backflow preventor to POC
- Install fully automatic sprinkler system
- Install complete "Radionics" fire alarm system
- Connect notifier, flow & tamper switches

## EXHIBIT C

## TRANSPORTATION DEMAND MANAGEMENT PLAN

"Transportation Standard" means that the average number of cars at the Premises per day (as measured over a one-week period that is representative of typical usage at the Premises) does not exceed the number ("Vehicle Cap") that would result if (i) no more than seventy percent (70%) of employees and visitors making trips to the Premises that originate outside the Presidio travel by automobile, (ii) no more than fifty percent (50%) of employees and visitors making trips to the Premises that originate inside the Presidio travel by automobile, and (iii) the average occupancy of all vehicles is at least 1.4 persons. It is not necessary that each of clauses (i)-(iii) be satisfied to achieve the Transportation Standard, provided that the Vehicle Cap is not exceeded.

Prior to Lease Execution, Tenant shall develop for Landlord's written approval a transportation demand management plan (TDM). Tenant's TDM Plan shall achieve required vehicle trip reductions to meet or exceed the Transportation Standard.

Automobile mode split will be monitored by the Presidio Trust by annual employee transportation surveys and/or traffic/parking lot counts. If Tenant fails to meet the Transportation Standard, Landlord will require Tenant to revise Tenant's TDM Plan to incorporate an increased level of TDM effort until the Transportation Standard is achieved. Tenant shall comply with the approved TDM Plan and shall participate actively in all Presidio-wide TDM strategy provided by the Trust, as either may be amended from time to time. The Tenant's TDM Plan may not be amended without the written approval of the Landlord, such approval not to be unreasonably withheld. Tenant will initiate the TDM strategies outlined in the TDM Plan prior to occupancy. Tenant will identify an individual who will coordinate TDM issues with the Trust on behalf of Tenant.

Any sublease entered into by Tenant shall require each subtenant to provide its own TDM Plan to Landlord.

Exhibit C-1

## EXHIBIT D

## GUARANTY OF LEASE

A.      The Presidio Trust, a wholly owned corporation of the United States of America ("Landlord") and San Francisco Aesthetics and Laser Medicine, Inc., a California corporation ("Tenant") entered into that certain Lease for premises located in a portion of the building ("Building") located at 5 Funston Avenue in The Presidio of San Francisco, San Francisco, California dated_____, 2005 (the "Lease").

B.      Landlord requires as a condition to its execution of the Lease that the undersigned ("Guarantor") guarantee the performance of Tenant's obligations under the Lease.

C.      The undersigned has a financial interest in Tenant and desires that Landlord execute the Lease.

D.      Terms used in this Guaranty without definitions have the same meaning as in the Lease.

NOW THEREFORE, in consideration for the execution of the Lease by Landlord, and as a material inducement to Landlord to execute the Lease, Guarantor hereby guarantees and agrees as follows:

1.      Guaranty. Guarantor unconditionally and irrevocably guarantees the prompt payment by Tenant of all Rent and all other monetary obligations payable by Tenant under the Lease, and the prompt performance by Tenant of each and every term, condition, and covenant of the Lease to be performed by Tenant.

2.      Independent Obligation. This Guaranty is separate, independent of, and in addition to the obligations of Tenant under the Lease. A separate action may be brought and prosecuted against Guarantor whether or not action is brought against Tenant, whether or not Tenant is joined in any such action and independent of any action brought against Tenant.

3.      Alteration or Assignment of Lease and Certain Other Rights of Landlord. Guarantor authorizes Landlord, without giving notice to Guarantor or obtaining Guarantor's consent, and without affecting the liability of Guarantor, from time to time, to (a) alter the terms of the Lease and any security and guarantees therefor, (b) accept new or additional instruments, documents, agreements, security or guaranty in connection with the Lease, (c) accept partial payment of any obligation arising under the Lease, and (d) assign the Lease and this Guaranty in whole or in part.

4.      No Waiver. This Guaranty shall not be released, modified or affected by Landlord's failure or delay in enforcing any of its rights or remedies under the Lease, at law or in equity.

5.      Bankruptcy, Etc. This Guaranty will continue unchanged by any bankruptcy, reorganization, or insolvency of Tenant or by any disaffirmance of the Lease or abandonment of the Premises by a trustee of Tenant.

6.      Continuing Guaranty. This is a continuing guaranty under which Landlord may proceed immediately against Tenant or against Guarantor following any Default by Tenant or for the enforcement of any rights which Landlord may have against Tenant under the Lease, at law or in equity. No notice of Tenant's Default need be given to Guarantor.

W02-SF:5JS\61463460.5

Building 5
San Francisco Aesthetics and Laser Medicine

7.    Remedies. If Guarantor shall fail to perform or otherwise breach any obligations hereunder, in addition to all other rights and remedies Landlord may have at law or in equity, Landlord may, from time to time and without first requiring performance on the part of Tenant, and without being required to exhaust or proceed against any or all security held by Landlord, require performance by Guarantor under this Guaranty by action at law or in equity. Landlord may also collect from Guarantor in any such action compensation for, and Guarantor hereby indemnifies and holds Landlord harmless from, all losses incurred by Landlord proximately caused by Guarantor's failure to perform any of its obligations under this Guaranty.

8.    Waivers. Guarantor hereby waives: (a) notice of acceptance of this Guaranty; (b) demand of payment, notice of nonperformance, notice of dishonor, presentation, protest, and indulgences and notices of any kind whatsoever; (c) all right to assert or plead any statute of limitations relating to this Guaranty and the Lease (and Guarantor agrees that any act which shall toll any statute of limitations applicable to the Lease shall similarly operate to toll the statute of limitations applicable to Guarantor's liability hereunder); (d) any right to require Landlord to proceed against Tenant or any other person or entity liable to Landlord; (e) any right to require Landlord to pursue any other remedy Landlord may have before proceeding against Guarantor; (f) any right to require Landlord to apply to any Default any Deposit or other security it may hold under the Lease; (g) any right of subrogation and any right to enforce any remedy which Landlord now has or may later have against Tenant; (h) any and all right to participate in any Deposit or other security now or later held by Landlord; and (i) any defense that may arise by the reason of (1) the incapacity, lack of authority, death, disability or other defense of Tenant or any other guarantor, (2) the revocation or repudiation of this Guaranty by Guarantor, (3) failure of Landlord to file or enforce a claim against the estate (either in administration, bankruptcy or any other proceeding) of Tenant or any others, (4) any election by Landlord in any proceeding instituted under the federal Bankruptcy Code, (5) any borrowing or granting of a security interest under Section 364 of the federal Bankruptcy Code, (6) Landlord's election of any remedy against Guarantor or Tenant or both, (7) Landlord's taking, modification, or release of any collateral or guaranties, or any failure to perfect any security interest in, or the taking of or failure to take any other action with respect to any collateral securing performance of Tenant's obligations under the Lease, or (8) any offset by Guarantor against any obligation now or later owed to Guarantor by Tenant, it being the intention of this Guaranty that Guarantor remain liable to the full extent set forth in this Guaranty until the full performance by Tenant of each and every term, condition and covenant of the Lease to be performed by Tenant, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor. Without limiting the generality of the foregoing, and without any implication that California law applies to this Guaranty, Guarantor expressly waives any and all benefits under California Civil Code Sections 2787 through 2855, inclusive, 2899, and 3433, to the extent the same may be applicable.

9.    Subordination. Guarantor hereby subordinates all existing and future indebtedness of Tenant to Guarantor to the obligations owed to Landlord under the Lease and this Guaranty. All indebtedness of Tenant to Guarantor, if Landlord so requests, shall be collected, enforced, and received by Guarantor as trustee for Landlord and shall be paid over to Landlord on account of the Lease but without reducing or affecting in any manner Guarantor's liability under the other provisions of this Guaranty; provided that, so long as no default by Tenant shall occur under the Lease, any indebtedness of Tenant to Guarantor incurred in the ordinary course of business which will not in Landlord's judgment cause a default of Tenant's obligations under the Lease may be repaid in accordance with the terms of such indebtedness.

10.    Attorneys' Fees and Costs. Guarantor shall pay Landlord all costs incurred by Landlord, including without limitation attorneys' fees (including charges of in-house counsel) and incidental costs, in any collection or attempted collection, negotiation, or any action brought by Landlord to enforce (a) Guarantor's obligations hereunder and (b) the payment and performance of Tenant's obligations under the Lease.

11.    Guarantor's Investigation of Tenant's Financial Condition. Guarantor has made an independent investigation of Tenant's financial condition and Tenant's ability to perform the obligations hereby guaranteed prior to making this Guaranty. Guarantor hereby waives any defense that Guarantor may have by reason of Landlord's failure to provide Guarantor with any information respecting Tenant's financial condition or Tenant's ability to perform any of Tenant's obligations hereby guaranteed. In addition, Guarantor hereby waives any duty on Landlord's part to disclose to Guarantor any facts Landlord may now or later know about Tenant regardless of whether Landlord (a) has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, (b) has reason to believe that such facts are unknown to Guarantor, or (c) has a reasonable opportunity to communicate such facts to Guarantor. Guarantor is fully responsible for being and keeping informed of Tenant's financial condition and of all circumstances bearing on the risk of nonperformance of any obligations hereby guaranteed.

12.    Notices. All notices, consents, requests, demands or other communications to or upon the respective parties shall be in writing and shall be effective for all purposes upon receipt on any Work Day before 5:00 PM local time and on the next Work Day if received after 5:00 PM or on other than a Work Day, including without limitation, in the case of (a) personal delivery, (b) delivery by messenger, express or air courier or similar courier and (c) delivery by United States, first class certified or registered mail, postage prepaid addressed as follows:

|  |  |
|---|---|
| To Landlord: | The Presidio Trust<br>The Presidio<br>34 Graham Street<br>P.O. Box 29052<br>San Francisco, CA 94129-0052<br>Attn:   Deputy Director for Real Estate<br>Attn:   General Counsel |
| To Tenant: | San Francisco Aesthetics and Laser<br>Medicine, Inc.<br>The Presidio of San Francisco<br>Building 5, Suite B<br>San Francisco, CA  94129<br>Attn: Dr. Jeannie Tsai |
| To Guarantor: | Dr. Jeannie Tsai<br><br>_____<br>_____<br>_____ |

"Work Day" means every day other than Saturdays, Sundays and federal or California legal holidays. Either party may change its address by written notice to the other in the manner set forth above. Receipt of communications by United States first class or registered mail shall be sufficiently evidenced by return receipt. Receipt of communication by facsimile shall be sufficiently evidenced by a machine generated confirmation of transmission without notation of error. In the case of illegible or otherwise unreadable facsimile transmissions, the receiving party shall promptly notify the transmitting party of any transmission problem and the transmitting party shall promptly resend any affected pages.

13.    Miscellaneous.

(a)    Any married person who signs this Guaranty expressly agrees that recourse may be had against his or her separate property (together with the community property of such Guarantor and his or her spouse) for all of his or her obligations hereunder.

(b)    The term "Landlord" whenever used in this Guaranty refers to and means Landlord in the Lease and also any assignee of Landlord whether by outright assignment and also any successor to Landlord's interest or of any assignee of Landlord in the Lease or any part of it, whether by assignment or otherwise.

(c)    The term "Tenant" whenever used in this Guaranty refers to and means the Tenant in the Lease, any assignee or subtenant of the Lease or any part thereof and any successors to Tenants interest, whether by assignment, sublease, or otherwise.

(d)    In case any one or more of the provisions of this Guaranty shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Guaranty, and this Guaranty shall be construed as if such invalid, illegal or unenforceable provisions had not been contained in it.

(e)    Time is hereby expressly declared to be of the essence of this Guaranty and of each and every term, covenant, agreement, condition and provision of it. Unless Work Days are specified, references to days in this Guaranty refer to calendar days.

(f)    The language in all parts of this Guaranty shall be construed as a whole according to its fair meaning and not strictly for or against either Landlord or Guarantor. The parties acknowledge that each party and its counsel have reviewed this Guaranty and participated in its drafting and therefore any rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in interpreting this Guaranty.

(g)    The applicable laws of the United States shall govern the validity, construction and effect of this Guaranty. Guarantor consents to exclusive personal jurisdiction in the United States District Court for the Northern District of California and waives any claim that such court is not a convenient forum. Guarantor voluntarily, knowingly, and irrevocably consents, in accordance with the provisions of 28 U.S.C. Section 636(c), to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of a final judgment, in accordance with the rules of the United States District Court for the Northern District of California, San Francisco Division, as the same may be amended from time to time, and Guarantor voluntarily waives the right to proceed before a United States District Judge.

Guarantor shall execute such forms and other statements signifying such consent as may be required at any time by the United States District Court for the Northern District of California, San Francisco Division.

    IN WITNESS WHEREOF, the undersigned has caused this Guaranty to be executed as of the date of execution of the Lease.

GUARANTOR: _____
        Dr. Jeannie Tsai
        Date: _11/7/05_

Exhibit D-5

THE PRESIDIO

NET LEASE

by and between

THE PRESIDIO TRUST

and

SAN FRANCISCO AESTHETICS
AND LASER MEDICINE, INC.

BUILDING 5

Dec. 16 , 2005

# THE PRESIDIO
## SAN FRANCISCO, CALIFORNIA
## NET LEASE

## BASIC LEASE INFORMATION

| | |
|---|---|
| **Date:** | _Dec 16_____, 2005 |
| **Landlord:** | THE PRESIDIO TRUST, a wholly owned corporation of the United States of America |
| **Tenant:** | SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC., a California corporation |
| **Tenant's Address for Notices:** | *Before Commencement Date:*<br><br>32 Lupine Avenue<br>San Francisco, California 94118<br>Attn: Dr. Jeannie Tsai<br><br>*After Commencement Date:*<br><br>The Presidio of San Francisco<br>Building 5, Suite B<br>San Francisco, CA 94129<br>Attn: Dr. Jeannie Tsai |
| **Landlord's Address for Notices:** | The Presidio Trust<br>The Presidio of San Francisco<br>34 Graham Street<br>P.O. Box 29052<br>San Francisco, CA 94129-0052<br>Attn: Director of Real Estate<br>Attn: General Counsel |
| **Leased Premises:** | A portion of Building 5, Suite B, as indicated on **Exhibit A** |
| **Premises Delivery Date:** | The earlier of January 15, 2006 or the issuance of a Temporary Certificate of Occupancy |
| **Rentable Square Footage:** | Approximately 1,903 rentable square feet |
| **Permitted Use:** | Office and Medical Spa |

Commencement Date:                    The earlier of January 15, 2006 or the issuance of a
                                      Certificate of Occupancy.

Expiration Date:                      Two (2) years after the Commencement Date.

Option Term:                          Two (2) separate options to extend the Term for one
                                      (1) year each.

Rent Commencement Date:               The earlier of the Commencement Date or the
                                      issuance of a Temporary Certificate of Occupancy

SDC Commencement Date:                The earlier of January 15, 2006 or the issuance of a
                                      Temporary Certificate of Occupancy

Monthly Base Rent:                    $3,806 per month ($24 per rentable square foot per
                                      year); subject to annual CPI increases

Parking Allotment:                    Three (3) non-exclusive spaces

Monthly Service District Charge:      One-twelfth of Tenant's Pro Rata Share of annual
                                      Service District Costs, estimated for fiscal 2005 at
                                      one-twelfth of $3.61 per year per rentable square
                                      foot of the Premises

Tenant's SDC Pro Rata Share:          .034%

Tenant's Reimbursable Expense
Pro Rata Share:                       46.73%

Security Deposit:                     $10,000 ($2,000 already held by the Landlord and
                                      $8,000 to be deposited upon full execution of the
                                      Lease.)

Guarantor:                            Dr. Jeannie Tsai

**EXHIBITS:**
Exhibit A  -  Description of Premises
Exhibit B  -  Work Letter
Exhibit C  -  Transportation Demand Management Plan
Exhibit D  -  Guaranty

Each reference to Basic Lease Information in the provisions of the Lease shall incorporate the applicable Basic Lease Information specified herein. In the event of any conflict between any Basic Lease Information and the Lease, the Lease shall control.

**LANDLORD:**

THE PRESIDIO TRUST,
a wholly-owned corporation of the
United States of America

By: _____

Name: Craig R. Middleton

Its: Executive Director

Date:

**TENANT:**

SAN FRANCISCO AESTHETICS AND LASER
MEDICINE, INC.,
a California corporation

By: _____

Name: Dr. Jeannie Tsai

Title: _____

Date: _____
11/7/05

## NET LEASE

THIS NET LEASE ("Lease") is made as of ___Dec. 16___, 2005, between **THE PRESIDIO TRUST**, a wholly owned corporation of the United States of America ("Landlord"), and **SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC.**, a California corporation ("Tenant").

### ARTICLE 1
### Premises

Subject to the provisions herein contained, Landlord leases to Tenant and Tenant leases from Landlord that portion of Building 5 Funston Avenue (the "Building") shown on **Exhibit A** attached (the "Premises") in The Presidio of San Francisco, San Francisco, California (the "Presidio"). Tenant shall also have the nonexclusive right, in common with other tenants of the Building, to use the common areas, if any, for the benefit of the tenants of the Building (the "Common Area").

### ARTICLE 2
### Term and Delivery of Premises

#### (A)    Term

The term ("Term") of this Lease begins on the Commencement Date set forth in the Basic Lease Information ("Commencement Date"), and ends on the Expiration Date set forth in the Basic Lease Information ("Expiration Date"), unless extended or sooner terminated as provided herein.

#### (B)    Delivery of Premises; Early Entry

Landlord shall complete the work described in **Schedule 1** to **Exhibit B** as the "Base Building Work" and the "Building Standard Tenant Improvement Work Paid by Landlord" ("Building Standard Work") and deliver the Premises to Tenant on the Commencement Date specified in the Basic Lease Information. (The Base Building Work and the Building Standard Work are collectively referred to herein as "Landlord's Work".) Landlord's Work shall be completed in an acceptable workmanlike manner.

If Landlord shall, for any reason, fail to substantially complete the Landlord's Work and deliver the Premises to Tenant on or before the Commencement Date, then this Lease shall not be void or voidable. Landlord shall have no liability for such delayed delivery, but in such case the Commencement Date, and the Expiration Date shall be postponed on a day-for-day basis for each day after the Commencement Date set forth in the Basic Lease Information that Landlord delivers the Premises the Tenant. If the Commencement Date and Expiration Date are extended, Landlord and Tenant shall execute a Memorandum of Commencement and Expiration Date promptly upon request by Landlord. Notwithstanding the above, the Commencement Date shall not be postponed for Tenant Delay. For purposes hereof, "Tenant Delay" shall mean any delay in completion of the Landlord Work that results in whole or in part from (i) any additional time required to complete the Landlord's Work due to any upgrades from building standard requested by Tenant; (ii) any delay in the completion of the Landlord's Work caused by Tenant, its

"Pro Rata Share" is defined in Article 3(B).

"Public Copy" is defined in Article 34(T).

"Reimbursable Expense Pro Rata Share" is defined in the Basic Lease Information.

"Rent" has the meaning given in Article 3.

"Replacement Tenants" is defined in Article 22.

"Service District Charge" is defined in Article 3(B).

"Systems and Equipment" means any plant, machinery, transformers, duct work, cable, wires, and other equipment, facilities, and systems designed to supply heat, ventilation, and humidity or any other services or utilities, or comprising or serving as any component or portion of the electrical, gas, steam, plumbing, sprinkler, communications, alarm, security, or fire/life/safety systems or equipment, or any other mechanical, electrical, electronic, computer or other systems or equipment for the Premises, the Building, or the Presidio.

"Tenant Handbook" means the Presidio Tenant Handbook, as the same may be amended from time to time by Landlord in its sole and absolute discretion.

"Term" is defined in Article 2.

"Transfer" is defined in Article 19.

"Transfer Premium" is defined in Article 19.

"Transferee" is defined in Article 19.

"Trust Act" is defined in Article 5.

"Utility Services" means utility services, including, without limitation, gas, electricity, other power, water, telephone and other communications services, and sewage; and any and all utility hook-ups, utility service connections or changes in connection with such service.

## ARTICLE 36
### Option to Extend Term

(A)    Tenant shall have two (2) separate options (each an "Option") to extend the Term of the Lease for the additional period of one (1) year each, beginning on the second (2nd) anniversary of the Commencement Date (the "Extended Term"), subject to the terms, covenants and conditions contained in the Lease, except for adjustment of the Base Rent as provided below.

(B)    The Options granted herein are with respect to, and must be exercised by Tenant with respect to, all of the Premises then subject to the Lease (the "Option Premises").

(C)    Tenant shall exercise an Option, if at all, by giving written notice of its exercise thereof (the "Exercise Notice") to Landlord not more than two hundred seventy (270) days nor less than one hundred eighty (180) days prior to the expiration of the initial or first extended Term.  Tenant's delivery of an Exercise Notice shall be deemed irrevocable.

(D)    The Base Rent during the Extended Term shall be the greater of (i) the then fair market value of the Option Premises in Landlord's reasonable opinion or (ii) the Base Rent in effect immediately prior to the Extended Term plus a CPI Escalation Amount made in accordance with Section 3(A) above.  Landlord and Tenant shall reach a mutual written agreement on the Base Rent for the Extended Term within ninety (90) days after Landlord's receipt of an Exercise Notice, and if unable to do so, the Exercise Notice shall be deemed null and void, and all rights of Tenant under this Article 36 to extend the Term of the Lease shall terminate.

(E)    If Tenant through no fault of Landlord fails to give Landlord the required Exercise Notice within the time period and in the manner herein provided, all rights of Tenant under this Article 36 to extend the Term of the Lease shall terminate.  It shall be a condition to the effective exercise of this Option that Tenant has completed the initial Lease Term, and, if applicable, the first Extended Term, and that there exists no Default under the Lease or event or circumstance which, with notice or the passing of time, would constitute such Default, and that the Lease be in full force and effect both on the date Landlord receives the Exercise Notice and on the date the Extended Term is to commence.

### ARTICLE 37
### Guaranty of Tenant's Obligations

Tenant's obligations under this Lease are guaranteed by the party indicated in the Basic Lease Information (the "Guarantor") pursuant to a Guaranty in the form of **Exhibit D** hereto executed concurrently with this Lease.  Tenant hereby represents and warrants that Guarantor has taken all necessary action to authorize the execution, delivery and performance of the Guaranty and the Guaranty constitutes the legal, valid and binding obligation of the Guarantor.

*Remainder of page intentionally left blank; signatures on following page*