SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
CHARLES M. O'CONNOR (SBN 56320)
Assistant United States Attorney

  450 Golden Gate Avenue, 9th Floor
  San Francisco, California 94102-3495
  Telephone: (415) 436-7180
  Facsimile: (415) 436-6748
  Email: charles.oconnor@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC. <br><br> Plaintiff, <br><br> v. <br><br> THE PRESIDIO TRUST, <br><br> Defendant. | No. C 07-5170 EDL <br><br> **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: December 18, 2007 <br> Time: 9:00 a.m. <br> Ctrm: E, 15th Floor |

The Presidio Trust, defendant (hereafter "Trust" or "Defendant"), submits the following points and authorities in opposition to the motion for preliminary injunction filed by San Francisco Aesthetics and Laser Medicine, Inc., (hereafter, "SFALMI" or "Plaintiff"). Plaintiff has failed to meet its burden and is not entitled to emergency relief in the form of a preliminary injunction.

**ISSUES TO BE DECIDED**

Plaintiff is seeking specific performance of an option to extend the term of its commercial lease with the Trust. Plaintiff's complaint raises three primary issues: did exercise its option in a timely manner; is the Trust equitably estopped from asserting that SFALMI failed to exercise its option in the manner prescribed in the lease; and did the Trust's property manager act in bad faith with respect to SFALMI's attempt at exercising its option so as to render forfeiture of the option unconscionable? The ultimate issue before the Court at this time is whether the Plaintiff has carried its burden and demonstrated entitlement to a preliminary injunction.

## STATEMENT OF RELEVANT FACTS

A detailed chronology of the facts which form the background for Plaintiff's action can be found in the Declaration of Erin Magagna in Support of Presidio Trust's Opposition to Motion for Preliminary Injunction ("Magagna Decl." or "Magagna"), filed herewith. Those facts are summarized in the following paragraph.

Plaintiff entered into a one-year lease agreement with Defendant Trust on January 15, 2006. Article 36(A) of Plaintiff's lease provides that Plaintiff had two separate options to extend the term of the lease, for the additional period of one year each, beginning on the second anniversary of the commencement date, January 15, 2006. Article 36(C) provides further that Plaintiff needed to exercise an option, if at all, by giving written notice to Defendant "not less than one hundred eighty days *prior to* the expiration of the initial term." (Emphasis added.) After a series of correspondence exchanges with the Trust's property manager, CB Richard Ellis ("CBRE"), which broached the subject of renewal, Plaintiff ultimately delivered written notice of its intent to exercise its option to CBRE on July 19, 2006. Defendant notified Plaintiff that such notice was inadequate as a matter of law, however, since it was not delivered to the Trust's office, as required, and it was received one day after the option period expired. Plaintiff maintains the notice was timely and that Defendant, through the conduct of its agent, CBRE, is estopped from claiming it failed to follow the delivery requirements specified in the lease.

## STANDARD FOR PRELIMINARY INJUNCTION

A plaintiff seeking equitable relief in the form of a temporary restraining order or a preliminary injunction must show "irreparable injury" and that legal remedies are "inadequate." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935,937 (9th Cir. 1987).

This Circuit has articulated and summarized the pertinent factors that a district court must consider in determining whether to grant or deny interim relief. Those factors are:

(1) the likelihood of plaintiff's success on the merits;
(2) the threat of irreparable harm to the plaintiff if the injunction is not imposed;
(3) the relative balance of this harm to the plaintiff and the harm to the defendant if the injunction is imposed; and
(4) the public interest.

*State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1388 (9th Cir.1988); *Metro*

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL         2

*Publishing, Ltd. V. San Jose Mercury News*, 987 F.2d 637, 639 (9th Cir. 1993); *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994). These four factors can be condensed into two: the likelihood of success on the merits and the relative balance of potential hardships to the plaintiffs, the defendant and the public. *Native Village of Venetie*, 856 F.2d at 1389. These two primary factors have been employed in a test framed in the alternative, although the alternatives are really to be treated by the district court, for analytical purposes, as "extremes of a single continuum." Id. The alternative test has been framed as entitling plaintiffs to interim relief by demonstrating

> either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tip sharply in [plaintiff's] favor.

*Landi v. Phelps*, 740 F.2d 710, 712 (9th Cir. 1984).

The public interest must be considered where the public may be affected. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "If the public interest is involved, the district court must also determine whether the public interest favors [the plaintiff]." *Westlands Water District v. Natural Resources Defense Council*, 43 F.3d 457, 459 (9th Cir. 1994) (citing Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992). *See, also, American Motorcyclist Assn. v. Watt*, 714 F.2d 962, 967 (9th Cir. 1983).

Interim relief is not granted "except in the most extraordinary circumstances[.]" *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 117 S. Ct. 1865, 1867 (1997) (emphasis in original).

## ARGUMENT

The Presidio, ceded by California to the United States in 1897, is a federal enclave and is therefore subject to the exclusive jurisdiction of the United States. *See Swords to Plowshares v. Kemp*, 423 F. Supp.2d 1031, 1034 (N.D. Cal. 2005). However, former state law – as it existed at the time the land was ceded – remains in effect unless the United States expressly provides otherwise. *See id.* at 1037-38; *James Stewart & Co., v. Sadrakula,* 309 U.S. 94, 99-100 (1940) (the rationale being that "this assures that no area however small will be left without a developed

legal system for private rights."). Furthermore, this rule applies to property disputes. *See Chicago, R.I. & P.R. Co, v. McGlinn*, 114 U.S. 542, 546-47 (1885) ("with respect to…laws affecting the possession, use and transfer of property…the rule is general, that a change of government leaves them in force until, by direct action of the new [federal] government, they are altered or repealed."). Because the federal government is vested with exclusive jurisdiction over federal enclaves, the assimilated state law at the time of cession becomes federal in nature. *See James Stewart & Co.*, 309 U.S. at 100.

Conversely, only state laws in effect at the time of cession or transfer of jurisdiction of a federal enclave continue in operation (the 'federal enclave doctrine'). *See James Stewart & Co.,* 309 U.S. at 100. Laws subsequently enacted by the state are inapplicable, therefore, unless they come within a reservation of jurisdiction or are adopted by Congress. *See id.; Paul v. United States,* 371 U.S. 245, 268 (1963). Likewise, the federal enclave doctrine bars a plaintiff from bringing present common law causes of action that were not recognized by the state when it ceded jurisdiction to the United States. *See, e.g., Stiefel v. Bechtel Corp.**,** 497 F.* Supp.2d 1138 (S.D. Cal. 2007) (dismissing, *inter alia*, plaintiff's state law claim for wrongful termination because it was not recognized in California as a viable common law claim until 17 years after the date of cession). Moreover, a contract between a private party and the federal government does not bar the application of the federal enclave doctrine. *See Mersnick v. U.S. Protect Corp.*, WL 3734396, *6 (N.D. Cal. Dec. 18, 2006).

In 1996, Congress passed and the President signed the Presidio Trust Act, 16 U.S. C. § 460bb, and created the Presidio Trust as a wholly-owned Government corporation and charged it to manage the leasing maintenance, rehabilitation, repair, and improvement of property within the Presidio of San Francisco. *Id*. §§ 103(c)(10) and 104(a). The Trust was charged with profitably managing the property with the goal of achieving financial self-sufficiency by the year 2013. *Id*. §§ 105(a) and (b). In short, the Trust must operate the Presidio properties much the same as a private entity, so that it profits from the revenues obtained for use of the properties in order to become self-sufficient, rather than dependant on federal tax revenues for support.

//

//

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL        4

I. PLAINTIFF FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

**A. Plaintiff Did Not Exercise the Option in Accordance with the Lease Requirements.**

SFALMI failed in two ways to follow the requirements of the Lease in attempting to exercise the option to renew the term of the Lease.  First, Plaintiff did not deliver the Lease to the Presidio Trust office at 34 Graham Street, San Francisco.  See Magagna Decl., at ¶¶ 2, 10.  Second, SFALMI failed to exercise the option to extend the term of its lease in a timely manner. *Id*., ¶¶ 3, 8, 10.

Section 12 of the California Code of Civil Procedure, enacted in 1872, provides that "the time in which any act provided by law is to be done is computed by excluding the first day and including the last unless the last day is a holiday, and then it is also excluded." CCP § 12(a)[1]; *see also* Fed.R.Civ.Pro. 6(a) ("In computing any period of time prescribed or allowed by these rules…the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday…").  Because CCP Section 12(a) is limited to "acts provided by law", however, it does not apply to acts governed solely by contractual provisions. *See Gans v. Smull*, 4 Cal.Rptr.3d 353 (Cal. Ct. App. 2003) (holding CCP § 12(a) did not apply to extend the time in which plaintiffs could exercise their option to extend their lease).  Rather, in computing lease terms in yearly divisions, California case law establishes that the term expires at midnight on the day preceding the date on which the lease commenced the previous year.  *See Robertson v. Drew*, 34 Cal. App. 143, 146 (Cal. Ct. App. 1917); *Bekins Moving & Storage Co. v. Prudential Ins. Co. of America,* 176 Cal.App.3d 245, 249 (Cal. Ct. App. 1985).

In *Robertson v. Drew*, the first district held that a defendant lessee failed to exercise an option to renew the term of his lease in part because he notified the plaintiff lessor of his intention after the original term had expired.  34 Cal. App. at 146.  The plaintiff had leased certain premises to the defendant for the term of one year commencing on August 11, 1913 with the option to renew the lease for a further term of from one to five years.  On August 11, 1914,

---

[1] Defendant does not concede the applicability of any provisions of the California Code of Civil Procedure to the procedures of this Court, for any purpose.  See Rule 1, Fed.R.Civ.P.

the defendant wrote a letter to the plaintiff stating in part that he had elected to take the premises for a further period of two years. The court found, however, that the lease had expired at midnight on August 10, 1914, and thus held that the defendant had failed to exercise his option prior to the termination of the original period. *Id.* In support of its conclusion, the court relied on a landlord-tenant treatise from 1875 which notes:

> "A lease which by its terms extends for one year 'from the date thereof,' the lessee going into possession on the day of its execution, will be deemed by practical construction of the parties to include the day of its execution, and the term will expire at midnight on the day preceding that date in the following year."

1 David McAdam, *Rights, Remedies and Liabilities of Landlord and Tenant* 178 (1876). Likewise, although not addressed explicitly, the second district in *Bekins Moving & Storage Co.* held that Bekins, the lessee, failed to properly exercise an option to renew a lease in part for failing to provide written notice *before* the date on which the option period expired. 176 Cal. App. 3d at 249 (emphasis added).

Applying the terms of the lease to the facts and the preceding discussion demonstrates that Plaintiff did not exercise the option to renew the term of its lease in a timely manner under ether pre-1897 or post-1897 California law. Under the computation format outlined in *Robertson*, and implicitly followed in *Bekins*, Plaintiff's Lease commenced on January 15, 2006 and terminates "at midnight on the day preceding that date in the (second) following year," i.e. January 14, 2008. *See* 34 Cal. App. at 146; 176 Cal. App. 3d at 249. Under Article 36(C), Plaintiff needed to have exercised its option "not less than one hundred eighty days prior to the expiration of the initial term." (Emphasis added.) Since the term expires on January 14, 2008, even in light of the general rule for computing time that the first day is excluded and the last day is included, the one hundred and eightieth day prior to January 14, 2008 (that date included), was July 18, 2007. *See, e.g.,* CCP § 12; Fed.R.Civ.Proc. 6(a). Plaintiff did not attempt to exercise its option until July 19, 2007, however. Consequently, SFALMI failed to comply with the provisions contained in the lease for extending the term in a timely manner.

**B. Trust is Not Estopped From Citing SFALMI's Failure to Properly Exercise the Option**

Under either assimilated pre-1897 California state law, modern California law or modern federal law, Trust is not equitably estopped from asserting that SFALMI failed to exercise its option in the manner specifically prescribed in the Lease.

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL                                               -6-

It is appropriate and more efficient to consider the referenced potential sources of law in reverse order. First, and most significant in this instance, federal law bars application of estoppel against the United States. The U.S. Supreme Court has repeatedly ruled that estoppel is not permitted against the United States. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 2468-69, 110 L.Ed.2d 387 (1990) ( *OPM* ); *INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) (per curiam); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *see also* David K. Thompson, Note, *Equitable Estoppel of the Government,* 79 Colum.L.Rev. 551, 551 (1979) ( *Equitable Estoppel* ).

To the extent estoppel against the United States is available, if ever, it is only in the rarest of instances where the government official has affirmatively sought to deceive the plaintiff and the plaintiff has acted in reliance on the deception to her detriment. Affirmative misconduct is "more than mere negligence, delay, inaction, or failure to follow internal agency guideline." *REW Enterprises, Inc. v. Premier Bank, N.A.,* 49 F.3d 163, 169 (5th Cir. 1995) (citations omitted).

The Ninth Circuit is in accord with the other Circuits on this issue. *Carrillo v. United States*, 5 F.3d 1302 (9th Cir. 1993)(even though hospital staff failed to inform plaintiff of contractor's status, no affirmative misconduct because there was no evidence that the U.S. affirmatively concealed or misrepresented the contractor's status). See also, *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)(affirmative misconduct must be more than negligence). Here, there was no affirmative misconduct and SFALMI has not even alleged affirmative misconduct on the part of anyone at the Trust, much less proved such conduct. Therefore, under controlling federal precedents, estoppel cannot be found or applied in against the Trust in this case.

SFALMI does not contest that it failed to strictly comply with the specific provisions in the lease for exercising its option to renew the term. Under modern California law, this admission divests the district court of any authority by which to afford SFALMI a remedy at law. *See Bekins Moving & Storage Co.*, 176 Cal. App. 3d at 250-51 ("in order to avail himself of the right to renew a lease as provided for by a lease option, a tenant must apprise the lessor in unequivocal terms of his unqualified intention to exercise his option within the time, in the manner and on the terms stated in the lease"); *Simons v. Young*, 93 Cal.App.3d 170, 179 (Cal. Ct. App. 1979); *but see Kaliterna v.*

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL                                                                                            -7-

*Wright,* 212 P.2d 32 (Cal. 1949) (noting a court may exercise its equitable jurisdiction and permit a tenant to renew a lease even though he or she is in violation of immaterial terms for exercising the option.). Furthermore, although uncertainties in the terms of the option are ordinarily construed against the landlord on the theory that he or she is the party who caused the ambiguity, *see Streicher v. Heimburge,* 272 P 290 (Cal. 1928), SFALMI does not contest the parties' mutual understanding of the terms of the lease. Rather, SFALMI argues that the Trust is equitably estopped from establishing that Plaintiff did not comply with the specific provisions of the lease in exercising its option.

The principle of equitable estoppel was recognized as a part of California common law before the cession of the Presidio to the United States in 1897. *See, e.g., Wood v. Blaney,* 40 P. 428 (1895). At the time, an equitable estoppel was found only upon the convergence of the following five elements: (1) there must have been a false representation or a concealment of material facts; (2) the representation must have been made with knowledge, actual or virtual, of the facts; (3) the party to whom it was made must have been ignorant, actually and permissibly, of the truth of the matter; (4) it must have been made with the intention, actual or virtual, that the other party should act upon it; and (5) the other party must have been induced to act upon it. *See id.* Likewise, although the issue was a "new one," equitable estoppel was recognized as applying against the public sector prior to 1897. *See City of Los Angeles v. Cohn, 35 P. 1002* (Cal. 1894); *City of Fresno v. Fresno Canal & Irr. Co.,* 32 P. 943 (Cal. 1893). Unlike in the case of private parties, however, the California Supreme Court held in *Cohn* that estoppel may apply against the public only "in certain exceptional cases" and as a result did not "promulgate any general rule by which every case invoking this doctrine may be weighed and measure," but rather observed that the equities of the case deserved "a law unto itself." *See Cohn,* 35 P. at 1004. As a government owned corporation, the Presidio Trust may be sued in its own name to the same extent as the Federal Government. *See* § 104(h); *Swords to Plowshares*, 423 F. Supp.2d at 1032. Thus, the Trust enjoys the same status and immunities as other governmental organizations, under applicable laws.

Modern federal law recognizes four elements of ordinary estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must either intend that its conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL                                    **-8-**

(3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely to its detriment on the conduct of the party to be estopped. *See, e.g., United States v. Hemmen,* 51 F.3d 883, 892 (9th Cir. 1995).

Federal law also recognizes that estoppel may be applied against the public in limited situations. *See United States v. Ruby Co.*, 588 F.2d 697, 703-04 (9th Cir. 1978), and see discussion, above. However, in addition to satisfying the elements of ordinary estoppel, a party seeking to estop the public must establish two additional factors: (1) the public actor must have engaged in affirmative misconduct going beyond mere negligence; and (2) the action must cause a serious injustice and the imposition of estoppel must not unduly harm the public interest. *See Pauly v. U.S. Dep't of Agric.,* 348 F.3d 1143, 1149 (9th Cir. 2003).

Under either the pre-cession California state law formulation or the modern federal law formulation, SFALMI cannot carry its burden in establishing the elements of equitable estoppel against the Trust.

Applying former state law, Plaintiff cannot satisfy the burden, under *Cohn*, that this is an "exceptional" case that warrants application of equitable estoppel against the public. *See* 35 P. at 1004. Unlike in *Cohn*, where denial of estoppel would have resulted in the defendants' building – erected twenty years prior on the faith of an agreement with the city – being torn down, denial of estoppel here would result at worst in Plaintiff having to relocate its place of business. *Id.* Moreover, whereas the plaintiffs in *Cohn* were entirely without redress save through estoppel, had SFALMI simply complied with the clear and specific provisions of the lease for timely exercise of the option to extend, resort to estoppel would be unnecessary. *Id.* Given the stark difference in the equities of *Cohn* and the case at bar, and the reluctance the *Cohn* court nonetheless expressed in applying estoppel against the public, the Plaintiff cannot establish that this is an "exceptional case" deserving of disposition by way of reference to "a law unto itself." *See id.*

In addition, SFALMI cannot meet either the first or third elements of ordinary estoppel under former state law. As to the first, that "there must have been a false representation or a concealment of material facts," the record is absent of any occasion on which the Trust or its agents intentionally misled Plaintiff as to the terms of its option to extend the term of the lease. The fact that Plaintiff may have mistakenly interpreted its correspondences with CBRE as signifying that it could deliver

notice of its intent to their office rather than to Defendant, in violation of the clear provisions of the lease, in no way indicates a "false representation" or "concealment" of material facts on the part of Defendant or its agents. Moreover, Plaintiff was consistently directed to the Presidio Trust Office for all purposes connected with exercise of the option to extend the lease, which was also consistent with the Lease. See Magagna Decl. ¶¶ 2, 5, 6.

As to the third element, that "the party to whom [a false representation or concealment of material facts] was made must have been ignorant, actually and permissibly, of the truth of the matter," the record demonstrates that not only was Plaintiff's President aware of the specific provisions in the lease which governed the exercise of its option, Plaintiff's President actively engaged in communications with employees of Defendant's leasing agent, CBRE, to correct their alleged misunderstanding of the terms of the Lease. See, Magagna Decl., Exhibits C, F. In praying for equitable relief, Plaintiff's President cannot heard to first instruct Defendant's agent as to the correctness of her position and truth of the matter, and then later plead ignorance of the facts when it proves convenient.

Similarly, under modern federal law, SFALMI has not and cannot show that the Trust or its agents engaged in "affirmative misconduct going beyond mere negligence" (see discussion of first element of former state law equitable estoppel *supra*) and that denying SFALMI prayer for specific performance of the option clause will cause a "serious injustice" (see *Cohn* discussion supra). Therefore, Defendant is not be estopped from demonstrating that Plaintiff failed to exercise its option in accordance with the specific provisions contained in the lease.

**C. The Trust Did Not Violate the Covenant of Good Faith and Fair Dealing.**

The Trust did not violate the covenant of good faith and fair dealing because no possible omission on the part of the Trust's property manager would have helped SFALMI avoid it's own failures in complying with the Lease's notice requirements for exercising its option.

Under state and federal law, every contract imposes upon each party a duty of good faith and fair dealing in the performance of its contract. See *Marsu, B.V. v. The Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999) (applying California law). However, as with any implied covenant, this obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties. See, e.g., *Lippman v. Sears, Roebuck & Co.*, 280 P.2d 775, 779 (Cal. 1955)

Furthermore, the covenant cannot override an express provision in the contract, and no covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties. See generally 23 Richard A. Lord, Williston on Contracts § 63:22 (4th ed. 2007); see also *April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 816 (Cal. Ct. App. 1983) (noting "[t]he traditional rule" that "a covenant of fair dealing will not be implied to vary the terms of an unambiguous contract."); *Foley v. Interactive Data Corp.*, 765 P.2d 373 (Cal. 1988) ("[t]he covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."). Moreover, since there is a presumption that all parties act in good faith, the burden of proving a breach of the covenant of good faith and fair dealing is on the party asserting the absence of good faith. See Lord, supra § 63:22.

Plaintiff contends that Defendant's property manager, Ms. McKinney, breached the covenant of good faith and fair dealing by neglecting to timely deliver Plaintiff's tardy notice of exercise of the option to the Trust's office and by failing to advise Plaintiff of its mistake in incorrectly delivering the option notice to CBRE's office. As Dr. Jeanne Tsai, President of SFALMI, readily admits her Declaration ("Tsai Decl."), however, the Plaintiff initially faxed a notice of its intention to exercise its option to Ms. McKinney's office "late on the evening of July 18, 2007." Indeed, the faxed notice to Ms. McKinney's office was delivered, but not until 12:28 a.m. on July 19, 2007. See Declaration of Danielle McKinney (hereafter, "McKinney Decl.").

Given that the Lease required Plaintiff to deliver it's written notice of exercise of the option to the Presidio Trust Offices not later than July 18, 2007 (see part A, supra), and Dr. Tsai's faxed notice was not delivered until the early morning of July 19, 2007, after the option period expired, Ms. McKinney had no opportunity, whatsoever, to timely deliver Plaintiff's notice, in accordance with the terms of the Lease. Moreover, even if she had been provided an opportunity to do so, a covenant of fair dealing could not be implied to vary those unambiguous terms of the Lease. See Lord, supra § 63:22.

Likewise, beyond the fact that the terms of the lease do not in any way support the proposition that Defendant owed Plaintiff a duty of advice in connection with the option term, see *Lippman*, 280 P.2d at 779, Plaintiff's belated attempt to exercise its option would have rendered

moot any subsequent effort on the part of Ms. McKinney to correct the Plaintiff's mistake. Thus, Defendant's property manager, Ms. McKinney, did not violate the covenant of good faith and fair dealing, and forfeiture of Plaintiff's option is not unconscionable under these circumstances.

II. PLAINTIFF HAS NOT PROVED A THREAT OF IRREPARABLE HARM.

In her declaration, Dr. Tsai merely alleges her belief that she "will suffer irreparable harm that can not be adequately compensated with money damages," if she is not allowed to remain as holdover tenant during the pendency of this case, i.e., her action to undo the effects of her own failure to comply with the Lease's requirements for exercising an option to extend the Lease. Tsai Decl. ¶ 18. Dr. Tsai goes on to describe her feelings about the "special and unique" location provided by the Presidio for her "nearly" two-year old business, including the accessibility of the location to both Marin County and San Francisco, and if forced out she will loose "this uniquely beautiful and accessible setting." *Id.* ¶ 19.

Dr. Tsai goes on to state that, if forced "to leave the Presidio on 15 January 2008 I will suffer large but incalculable financial losses," including finding, securing, moving, etc., to a new location, and disruption of patient care during the interval. It should be noted that Dr. Tsai does not allege the patient care disruption will cause any physical threat to the health or life of any patient. She alleges only that they "are likely to take their business elsewhere." *Id*. 20.

With the possible exception of Dr. Tsai's feelings of the lost beauty of her current location, none of the losses she cites amount to irreparable harm that cannot be adequately compensated by money damages. Dr. Tsai does not need to be able to quantify her alleged potential financial losses, prospectively, in order to be in a position to eventually develop a set of numbers that reasonably approximate her alleged money damages, should she experience any such losses and win a judgment for same. She has a two year history of profit and loss experience which could serve as a good basis on which to calculate any potential financial losses. That is, after her relocation, she could develop damage numbers based upon how much time and expense was actually required to re-locate, how many current patients went elsewhere in the meantime, and how much goodwill was lost (e.g., a qualified expert can estimate the value of any

//
//

loss of goodwill that occurs).  Thus, she will be reasonably able to calculate the total of any alleged damages.[2]

It should be noted that Dr. Tsai does not even allege that other, equally accessible office space is unavailable in the immediate vicinity of the Presidio.  Defendant asks the Court to take judicial notice of the numerous medical-related suites in and around the Pacific Heights region of San Francisco, especially those in those areas surrounding the two large hospital campuses.  Thus, the accessibility of the office space at 5B Funston Avenue is reasonably capable of being duplicated in the vicinity of the Presidio.

Also, although it's unclear just what Dr. Tsai alleges as a basis for any potential loss of goodwill, to the extent she implies a loss of the name of her business, i.e., San Francisco Aesthetics etc., she makes no showing that the current name of her business cannot continue to be used at another location, without limitation.

Considering the factors cited by Dr. Tsai and the potential source of financial losses to her, it becomes apparent that many, if not all, of her potential losses are self-inflicted.   That is, given her failure to timely exercise her option to extend her lease at the Presidio, she could have easily started her planning and preparations to move her business to another nearby location and build out the space in the six month period between July 19, 2007, and the end of her current Lease, January 14,2008.  It is Dr. Tsai's refusal to mitigate her damages by taking those prudent steps that has forced her to confront the unpleasant and potentially costly tasks now before her.  Defendant should not be held financially responsible or be subject to an emergency equitable order because of Dr. Tsai's lack of foresight.

In addition, given the apparent affection and attachment Dr. Tsai feels for her current location at the Presidio, one must question why there has been such a long and extensive trail of letters of complaint authored by Dr. Tsai during the term of her occupancy at 5B Funston Avenue.   Moreover, given her strong desire to remain in place amidst the uniqueness and beauty of the Presidio, it is equally curious just why Dr. Tsai went to sleep on her rights to extend her occupancy and failed to see to it that she timely filed her notice of exercise of that option.

---

[2] The United States does not concede liability for any financial losses that may occur as a result of SFALMI's holding over at 5B Funston and failure to timely plan for and make arrangements to leave and move its business elsewhere.

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL                                                                **-13-**

These matters are more than mere passing curiosities in the context of this suit and the emergency motion now being requested of the Court by Dr. Tsai and SFALMI. When a party is seeking an emergency order from a court of equity, a legitimate inquiry can and should be made as to whether that party has been sleeping on its rights, and why it should now expect the court to fix the problems caused by that party's own inaction. Based on this and all the reasons cited above, the Plaintiff has failed to establish a threat of irreparable injury, and the Court should deny the extraordinary remedy of a preliminary injunction.

III. THE BALANCE OF HARM COMPONENT FAVORS THE TRUST.

As more fully set forth in Part II, above, the Plaintiff has not established the threat of any irreparable harm. At most, the Plaintiff has established threat of a financial harm or loss because it failed to honor the terms of its Lease and make plans to leave 5B Funston Avenue on the expiration date of the Lease, January 14, 2008.

However, because of the current ongoing occupancy and threat to holdover by the Plaintiff, the Trust will definitely suffer real financial losses, as more fully set forth in the Declaration of Michael Fassler, filed in support of this opposition to the motion for preliminary injunction (hereafter "Fassler Decl."). For example, as a holdover tenant after the expiration of the Lease on January 14, 2008, SFAMLI will enjoy a monthly rental payment well-below the market rental rate that the Trust would be able to obtain from a market rate Lease to a new tenant In addition, the Trust has been prevented from showing the premises to potential new lessees since July 19, 2007, and so long as the Defendant continues to occupy the premises as a holdover tenant, the Trust will not be able to show the premises or begin the process of preparing 5B Funston Avenue for occupancy by a new tenant. Fassler Decl. ¶4-5.

Because of the foregoing circumstances, the Trust will remain vulnerable to downturns in the real estate rental market as well as potentially lower rental rates in the future. *Id*. ¶ 6.

The harms to both parties in this matter are the potential financial losses caused by the lawsuit and continued occupancy by Plaintiff. However, the amount and inevitability of the potential losses to the Defendant are larger and more long lasting. Accordingly, the balance of harm component of the test for preliminary injunction favors the Trust, not the Plaintiff, and the motion should be denied.

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL                                                                             **-14-**

IV. <u>THE PUBLIC INTEREST CALLS FOR DENIAL OF PRELIMINARY INJUNCTION</u>

As more fully set forth above, Congress created the Presidio Trust as a wholly-owned Government corporation and charged it to manage the leasing maintenance, rehabilitation, repair, and improvement of property within the historic Presidio of San Francisco. The Trust is charged with profitably managing the property with the goal of achieving financial self-sufficiency by the year 2013. In short, the Trust must operate the Presidio properties much the same as a private entity, so that it maximizes returns on the real estate assets and obtains sufficient revenues for use of the properties, in order to become self-sufficient, rather than dependant on federal tax revenues for support. Without doubt, then, the public interest in this matter favors the mission of the Trust and, consequently, the public interest calls for denial of the motion for preliminary injunction.

**CONCLUSION**

For all the foregoing reasons, the Presidio Trust respectfully asks this Court to deny the Plaintiff's motion for preliminary injunction.

          Respectfully submitted,

          SCOTT N. SCHOOLS
          United States Attorney

Dated: November 27, 2007          /s/

          CHARLES M. O'CONNOR
          Assistant United States Attorney

          Attorneys for the Presidio Trust

Of Counsel:

Karen Cook
General Counsel
Presidio Trust

**DEFENDANT'S MEMO IN OPPOSITION TO PRELIMINARY INJUNCTION**
*SFALMI v. PRESIDIO TRUST* C 07-5170 EDL     **-15-**