UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO AESTHETICS AND LASER MEDICINE, INC.,

        Plaintiff,

   v.

THE PRESIDIO TRUST,

        Defendant.
_____/

No.   C 07-05170   (EDL)

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

## I.   INTRODUCTION

Plaintiff San Francisco Aesthetics and Laser Medicine, Inc. ("Plaintiff") leases a medical suite from Defendant Presidio Trust ("Defendant"). The lease commenced on January 15, 2006. The parties dispute whether Plaintiff gave Defendant notice to exercise its option to renew its lease within the time and manner prescribed in the lease agreement. Because Plaintiff may have to vacate the premises on January 14, 2008, Plaintiff has moved for a preliminary injunction enjoining Defendant from interfering with Plaintiff's occupancy of the premises. That motion came on for hearing on December 18, 2007. For the following reason, and for the reasons stated at the hearing, Plaintiff's motion is DENIED.

## II.   ANALYSIS

### A.   Legal Standard

The legal standard governing issuance of a preliminary injunction requires the moving party to show either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips in its favor. These

two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Dep't of Parks & Rec. for State of Calif. v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1123 (9th Cir. 2006); Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998). In addition, courts must consider the public interest as a factor in balancing the hardships when the public interest may be affected. Dep't of Parks & Rec., 448 F.3d at 1124.

**B.    Plaintiff's Motion**

1.    Success on the Merits

As for the likelihood of success on the merits, there are two key questions before the Court: 1) whether Plaintiff exercised the option in a timely manner; and 2) whether Defendant is equitably estopped from complaining that Plaintiff delivered notice of the exercise of the option to the wrong party (i.e., to Defendant's real estate manager across the street instead of directly to Defendant).

As for the first inquiry, the relevant facts are as follows. Article 36(A) of Plaintiff's lease states: "Tenant shall have two (2) separate options (each an "Option") to extend the Term of the Lease for the additional period of one (1) year each, beginning on the second (2nd) anniversary of the Commencement Date (the "Extended Term"), subject to the terms, covenants and conditions contained in the Lease, except for adjustment of the Base Rent as provided below." Article 36(C) provides that "[t]enant shall exercise an Option, if at all, by giving written notice of its exercise thereof . . . to Landlord not more than two hundred seventy (270) days nor less than one hundred eighty (180) days prior to the expiration of the initial or first Extended Term." Lease Ex. at 42-43. The Commencement Date was January 15, 2006. The expiration date was defined as "two (2) years after the Commencement Date." Id. at ii.

On April 19, 2007, Dr. Tsai, the Plaintiff's President, wrote to Danielle McKinney of Coldwell Banker Real Estate ("CBRE"), the private company hired by the Trust to manage commercial leases, noting that "the lease spells out a clearly defined timeframe of between 270 days and 180 days prior to the expiration of the initial term (January 15, 2008) that spans the time period April 20, 2007 to July 19, 2007 in which such activity is to occur and that time frame has not yet been reached." Tsai Decl., Ex. 6. On May 6, 2007, Erin Magagna of the Presidio Trust wrote back to Dr. Tsai stating "as you stated in your letter, you may trigger this option anytime between 270 days before your lease expiration, but not less than 180 days prior to the lease expiration." That

2

letter also instructed Plaintiff to "forward a letter to my attention prior to the end of the notice period." Id. Ex. 7.  However, Ms. McKinney had previously written a letter to Dr. Tsai on August 28, 2006 stating explicitly that the lease expiration date is January 14, 2008.  Magagna Decl., Ex. B.

Plaintiff did not fax its notice of exercise of its option to Ms. McKinney until late in the evening on July 18, 2007, and it hand delivered the notice on July 19, 2007.  Tsai Decl. ¶ 15.  The fax, however, was not received until 12:28 a.m. on July 19, 2007.  McKinney Decl. ¶ 5.

The parties agree that state laws in effect at the time of cession or transfer of jurisdiction of a federal enclave continue to apply to the enclave.  See Opp. at 4; Reply at 2:11-2.  See also James Steward & Co. v. Dadrakula, 309 U.S. 94, 99-100 (1940).  Here, the Presidio was ceded by California to the United States in 1897.

The first point of disagreement is whether the option was timely exercised, which depends on the date of the lease expiration.  Plaintiff argues that the lease expired on January 15, 2008, whereas Defendant argues that the lease expired at midnight on January 14, 2008.  Plaintiff, therefore, argues that it had until July 19, 2007 to deliver notice exercising the option, while Defendant maintains that Plaintiff had to do so by July 18, 2007.

Under the plain language of the lease, the option term, or the extended term, if exercised, was set to begin on the second anniversary of the commencement date.  No one disputes that "anniversary" means the same date each year.  Here, the commencement date was January 15, 2006, so the extended term would begin on January 15, 2008.  Under the plain language of the lease, therefore, it would seem to follow that the original lease term would expire at midnight the day before, or on January 14, 2008 as Defendant argues.  The Court therefore finds that Plaintiff is not likely to succeed on the merits based on timely exercise of the lease, since under the lease Plaintiff needed to have exercised its option "not less than one hundred eighty days prior to the expiration of the initial term."  The 180th day prior to January 14, 2008 was July 18, 2007, and as discussed above, CBRE did not receive the fax until July 19, 2007.

However, there is some ambiguity in the lease, and Plaintiff has arguably raised a serious question as to whether it timely exercised its option.  The lease defines the expiration date as "two years after the commencement date."  "After" means "following in time or place" or  "later in time", among other things, see Merriam-Webster Online Dictionary, available at http://m-w.com, lending

3

some support to Plaintiff's argument for the later date. While Defendant argues that "California caselaw establishes that the term expires at midnight on the day preceding the date on which the lease commenced the previous year," Defendant relies on two cases that are not exactly on point. Opp. at 5:24-25.[1] In Bekins Moving & Storage Co. v. Prudential Ins. Co., 176 Cal. App. 3d 245 (1985), the plaintiff conceded that it failed to exercise its option in a timely manner, and the court merely noted that a lessee must exercise its option according to the time and manner stated in the lease. Id. at 253. In Robertson v. Drew, 34 Cal. App. 143, 145 (1917), the Court held that a lease which by its terms extends for one year "from the date thereof" includes the day of its execution and expires at midnight on the day preceding that date in the following year. Id. Here, however, Plaintiff's expiration date is defined as "two years *after* the commencement date" (emphasis added).

Finally, the extrinsic evidence is also inconclusive as to the lease expiration date. When Plaintiff confirmed her understanding that the lease expired on January 15, 2008, Defendant never bothered to correct her. However, Defendant did explicitly notify her prior to that date that the lease expired on January 14, 2008. In sum, neither the language of the lease nor the course of conduct evidence are extremely clear as to the lease expiration date and the option period. Plaintiff, therefore, has arguably raised serious questions as to whether it exercised its option in a timely manner, but has not demonstrated the likelihood of success on the merits on this issue.

In order to succeed on its claim, however, Plaintiff must also show that it delivered its notice to exercise the option in the manner required by the lease or that the government is estopped from arguing that Plaintiff's delivery was insufficient. However, Plaintiff has not neither demonstrated that it is likely to prevail nor raised serious questions as to this issue.

Plaintiff did not deliver its lease to the proper entity as defined in the lease. The lease

---

[1] Plaintiff argues that California Code of Civil Procedure § 12, enacted in 1872, applies to the terms of the contract. Under that section, "[t]he time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." Cal Code Civ. Pro. § 12. The Court does not find this argument persuasive. In Gans v. Smull, 111 Cal. App. 4th 985 (2003), the Court held that California Code of Civil Procedure § 12a was inapplicable to contracts, because it was only applicable to any act "provided or required by law" as opposed to acts "appointed by law or contract" as was used in other sections of the code. Id. at 989-90 (contrasting prior cases that applied California Code of Civil Procedure § 12a on the grounds that issues in those cases were governed by statute, but there is "no statute governing the exercise of an option to extend a lease"). Because California Code of Civil Procedure § 12 also contains the phrase "provided by law," under Gans, California Code of Civil Procedure § 12 does not seem applicable to lease options.

4

provides that Plaintiff must give written notice of its exercise of the option "to Landlord." See Lease Ex. at 43. Landlord is defined as "the Presidio Trust" and defines "Landlord's Address for Notices" as the Presidio Trust's address at 34 Graham Street. Id. at i. Plaintiff, however, delivered notice of its exercise of the option to CBRE.

Plaintiff argues that Defendant is estopped from complaining that Plaintiff delivered the exercise of its option to CBRE. Plaintiff contends that Defendant misled Dr. Tsai into believing that notice should be delivered to Defendant's property manager, not directly to the Trust itself. Defendant told Plaintiff that she should "address [her] concerns regarding [her] lease to CBRE [Defendants' commercial lease manager]." Tsai Decl. ¶ 4. She then had numerous exchanges with Danielle McKinney of CBRE regarding posting banners at her office, a fire alarm incident, and other complaints about the administration of her lease term. Id. ¶¶ 5-9. However, when Dr. Tsai inquired about the option to extend, Ms. McKinney notified her that she forwarded the information to the Presidio Trust Leasing Department. Id., Ex. 4. Then, on April 10, 2007, Ms. M. Elena Anaya of the Presidio Trust sent a letter to Plaintiff on Presidio Trust stationary inviting Dr. Tsai to call her to discuss her interest in the option to extend. Ms. Anaya left Dr. Tsai two voice messages, but did not hear back from Dr. Tsai. Magagna Decl. ¶ 6. Plaintiff again wrote to Ms. McKinney of CBRE instead of the Presidio Trust, telling her that she was inquiring about the option, not exercising it. On May 16, 2007, Erin Magagna of the Presidio Trust wrote a letter to Dr. Tsai from the 34 Graham Street address and told her that "If you choose to exercise your option, please forward a letter to my attention prior to the end of the notice period. This will then be forwarded to our leasing to department to commence lease negotiations." Pl. Ex. 7. Plaintiff faxed and hand delivered the notice of its exercise of the lease option to Defendant's real estate manager's office across the street from 34 Graham Street.

The parties agree that the elements of federal common law equitable estoppel are: "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. . . . When a party seeks to invoke equitable estoppel against the government, we additionally require a showing that the agency engaged in 'affirmative conduct going beyond mere

5

negligence' and that 'the public's interest will not suffer undue damage' as a result of the application of this doctrine." <u>United States v. Hemmen,</u> 51 F.3d 883, 892 (9th Cir. 1995). Plaintiff must also show that the "government's act will cause a serious injustice." <u>Pauly v. United States Dep't of Agric.</u>, 348 F.3d 1143, 1149 (9th Cir. 2003). In addition, the heightened standard for governmental entities applies, even if Defendant was acting in a proprietary rather than a governmental role.[2] <u>See Rider v. United States Postal Serv.</u>, 862 F.2d 239, 242 (9th Cir. 1988) (rejecting distinction between sovereign and proprietary functions in deciding whether estoppel should apply).

California state law prior to the cession of the Presidio to the United States in 1897 also had a high standard for proving equitable estoppel: "1. There must have been a false representation or a concealment of material facts; 2. The representation must have been made with knowledge, actual or virtual, of the facts; 3. The party to whom it was made must have been ignorant, actually and permissibly, of the truth of the matter; 4. It must have been made with the intention, actual or virtual, that the other party should act upon it; 5. The other party must have been induced to act upon it." <u>Wood v. Blaney</u>, 107 Cal. 291, 295 (1895). California law also applied heightened standards for estoppel against government entities. <u>See Los Angeles v. Cohn</u>, 101 Cal. 373, 377 (1894) (finding that estoppel applied against the city for asserting ownership over land in the "exceptional case" before it).

Here, while the Court certainly understands Plaintiff's confusion about where to deliver its notice given the course of conduct between the parties, there is insufficient evidence of the affirmative misconduct required to succeed on an estoppel claim against the government to raise serious questions as to this issue. While it is true that Plaintiff dealt with Ms. McKinney on a variety of lease-related matters, Defendant notified Plaintiff that it should correspond with Defendant regarding the option and renegotiation of the lease. While Ms. McKinney did forward Plaintiff's initial inquiry about the option to the Trust, Ms. McKinney did not state that she would forward all future inquiries regarding the option to the Trust on the same day she received them. Plaintiff argues that because Ms. McKinney told her in her March 23, 2007 letter that she forwarded her option inquiry to the Trust, that she concluded that the correct procedure was for her to deliver

---

[2] Here, Defendant is a wholly-owned U.S. Government corporation. <u>See</u> 16 U.S.C. § 460bb, sections 103(c)(10) and 104(a).

her notice to Ms. McKinney, who would then forward it on to the trust. Tsai Reply Decl. ¶ 5. Further, because Ms. Magagna advised Dr. Tsai to "forward" a letter to her attention, which she would then forward to the leasing department, Dr. Tsai claims that "Ms. Magnana thus affirmatively misled me to believe that forwarding my notice through Ms. McKinney, as I had done before, was the correct procedure." Id. ¶ 6. However, the more straightforward reading of Defendant's correspondence is that Defendant meant that Plaintiff should forward notice to it directly when it informed Dr. Tsai to forward Plaintiff's exercise of the option to Ms. Magagna. Similarly, there is no serious question that Defendant intended Plaintiff to act in reliance to do otherwise or that Plaintiff had a right to believe that Defendant intended it to rely on Defendant's acts.

While Plaintiff argues that Watkins v. United States Army, 875 F.2d 699 (9th Cir. 1989), supports a finding of estoppel here, this case is distinguishable. In Watkins, the Army, with full knowledge of the sergeant plaintiff's homosexuality, repeatedly allowed him to reenlist in the army over a fourteen year period, and made "active misrepresentations" in the form of repeated findings of the plaintiff's eligibility. Id. at 708. In contrast, there is no similar course of affirmative misconduct here, as Defendant, while perhaps ambiguous about who Plaintiff should contact about certain aspects of the lease, never told Plaintiff to deal with CBRE about the option, and in fact, instructed Plaintiff to contact it about the option. Nor has Plaintiff shown that "exceptional circumstances" exist like those present in Los Angeles v. Cohn, 101 Cal. at 377, where the city had asked its agent to investigate its rights in the land at issue, the agent reported and recorded that the city had no claim to the land, nothing more was done for a period of 20 years, and the possessor subsequently erected a building on the land.

In sum, Plaintiff has not shown that it is likely to prevail or has even raised serious questions as to its estoppel argument because the evidence does not show that Defendant made any affirmative representations or concealment of material facts to Plaintiff. Accordingly, Plaintiff has not shown that Defendant's act "will cause a serious injustice." Pauly, 348 F.3d at 1149. For the same reason, Plaintiff is not likely to show that Defendant acted in bad faith. See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 690 (1988) ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."). In light of this, even though the Court is sympathetic to

7

the Plaintiff's plight, Plaintiff has not raised serious questions as to whether it will succeed on the merits. The Court expresses no opinion on Plaintiff's claim that Defendant retaliated against Dr. Tsai for exercising her contractual and First Amendment rights, since this issue is not now before the Court.

### 2. Irreparable Harm

Even assuming that Plaintiff had raised serious questions going to the merits, Plaintiff has not shown that it will suffer irreparable harm without an injunction. Plaintiff argues that a legal remedy would be inadequate in this case because its business will be seriously disrupted, it will use the unique location of the Presidio, and its business may lose goodwill (attached to the name Presidio Laser Medicine). See Reply Tsai Decl. ¶ 3 (business name Presidio Laser Medicine is registered with medical board, used in promotional materials and website URL, used on business card, and leaving Presidio will devalue goodwill accrued with business name; she also notes that Presidio approved use of Presidio in business name); Tsai Decl. ¶ 20 (if forced to leave the Presidio, "I will suffer a large but incalculable financial losses [sic]. It will take me several months to find a new location, negotiate a new lease, and build out the new premises. During that interval I will have no place to treat my established patients. . . . Some of my patients are likely to take their business elsewhere. Although I will have some evidence of my financial loss my business is relatively new and it will be difficult to establish the trajectory of my profits and growing patient base.").

As Defendant notes, Plaintiff does not maintain that patient care disruption will cause any physical threat to the health of any patient. As for financial loss, Plaintiff has a two year history of profit and loss which could serve as a basis to calculate financial losses, and monetary injury is not normally considered irreparable. Los Angeles Memorial Coliseum Com. v. National Football League, 634 F.2d 1197, 1202 (9th Cir. 1980). While loss of goodwill may support a finding of irreparable injury, see Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991), Plaintiff's claim is based on losing goodwill associated with its business name. However, there is no evidence in the record that Plaintiff would have to change its business name. Indeed, at the hearing, Defendant represented that Plaintiff need not change its name if it relocates and pointed out that many businesses near but not within the Presidio use "Presidio" in their name. Accordingly, Plaintiff has not demonstrated irreparable injury.

8

3. Balance of Hardships

As noted above, a preliminary injunction is available to a party who demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions going to the merits were raised and the balance of the hardships tips sharply in the moving party's favor. Here, as discussed above, Plaintiff has shown neither probable success on the merits or serious questions going to the merits, in light of the high burden Plaintiff has to show estoppel. See Republic of Philipipines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988) (serious questions means questions that involve a fair chance of success on the merits that cannot be resolved one way or the other at the hearing and as to which the court sees the need to preserve the status quo). Even assuming Plaintiff had raised serious questions as to the merits, however, Plaintiff has not shown that the balance of hardships tips sharply in its favor. Even though Plaintiff will likely face monetary harm without an injunction, Defendant has demonstrated that it will likely lose rental revenue if an injunction is granted.

## III.  CONCLUSION

In accordance with the foregoing, Plaintiff's motion for a preliminary injunction is DENIED. As discussed at the hearing, the parties shall meet and confer to attempt to agree upon a rental rate for Plaintiff to remain at the Presidio during the pendency of the case.

Dated: December 20, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge