United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO AESTHETICS AND LASER MEDICINE INC, *et al.*,<br><br>   Plaintiffs,<br><br>   v.<br><br>THE PRESIDIO TRUST, *et al.*,<br><br>   Defendants._____/ | No. C 07-05170 EDL (MEJ)<br><br>**REPORT AND RECOMMENDATION RE MOTION AND CROSS MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

**I. INTRODUCTION**

Pending before the Court is Defendants United States, The Presidio Trust, and Erin Magagna's (collectively, "the Federal Defendants") Motion to Enforce Settlement Agreement (Dkt. #91). Also pending is Plaintiffs San Francisco Aesthetics and Laser Medicine, Inc. and Jeannie Tsai's (collectively, "Plaintiffs") Cross-Motion to Enforce Settlement Agreement. (Dkt. #93.) On March 25, 2009, the presiding judge in this matter, the Honorable Elizabeth D. Laporte, referred the Motions to the undersigned for preparation of a report and recommendation. (Dkt. #89.) For the reasons set forth below, the undersigned RECOMMENDS that the Court GRANT the Federal Defendants' Motion to Enforce consistent with the modifications described herein, and DENY Plaintiffs' Cross-Motion.

## II.  BACKGROUND

Plaintiffs initiated this action on October 9, 2007, by filing a Complaint for Declaratory Relief and Preliminary Injunction against the Federal Defendants.  (Dkt. #1.)  On December 20, 2007, Judge Laporte denied Plaintiffs' Motion for Preliminary Injunction.  (Dkt. #24.)  Thereafter, on May 14, June 12, and July 1, 2008, the undersigned held settlement conferences with the parties.  (Dkt. ##45, 51, 66.)  At the July 1 settlement conference, the parties reached an agreement and orally entered the terms of the agreement on the Court's audio recording system.  As part of that agreement, the parties were to prepare a proposed stipulated judgment setting forth the terms of the settlement agreement, which they would submit to the Court for signature.

In light of the settlement agreement, on August 4, 2008, Judge Laporte entered an Order of Conditional Dismissal.  (Dkt. #70.)  Two months later, on October 22, 2008, Plaintiffs filed a Request to Reinstate Case, notifying the Court that the parties had not executed the stipulated judgment pursuant to the oral settlement.  (Dkt. #71.)  In response, the Federal Defendants filed a Notice of Non-Opposition to the reinstatement of the case, wherein they indicated that they would continue to work with Plaintiffs to reduce the settlement agreement to writing.  (Dkt. #72.)  On October 30, 2008, the Court issued an Order Regarding Conditional Dismissal, wherein it denied Plaintiffs' request to reinstate the case and amended its prior Order of Conditional Dismissal to grant leave to reinstate the case on or before December 1, 2008.  (Dkt. #73.)  Thereafter, on January 15, 2009, the Court issued an order extending the conditional dismissal of the case until February 27, 2009, and referring the parties to the undersigned to assist them with reducing the terms of their verbal agreement to a written stipulated judgment.  (Dkt. #77.)

Subsequently, on February 18, 2009, Magistrate Judge Nandor J. Vadas held a settlement conference with the parties.  (Dkt. #79.)  Still unable to agree to the terms of the stipulated judgment, the Federal Defendants filed a Joint Request to Reinstate Case, which Plaintiffs opposed.  (Dkt. ##82, 86.)  On March 24, 2009, the undersigned held another settlement conference with the parties.  (Dkt. #88.)  After the parties were unable to work out their disagreements over the terms of their agreement, the Court issued an order reinstating this case and granting the parties leave to file

2

motions to enforce the settlement agreement. The Court further referred any motions filed to the undersigned for preparation of a report and recommendation. (Dkt. #89.)

Following the referral, both Plaintiffs and the Federal Defendants filed motions, along with proposed stipulated judgments and transcripts of the July 1 hearing. (*See* Dkt. ##90, 95, 96.) Both parties urge the undersigned to recommend that the Court enforce their respective proposed stipulated judgment. Having carefully considered the parties' arguments and supporting materials, the undersigned now recommends as follows.

### III. LEGAL STANDARD

In the Ninth Circuit, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *see In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie*, 829 F.2d at 890. Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

In considering a party's request to enforce the terms of a settlement agreement, courts treat the settlement agreement like any other contract for purposes of interpretation. *See United Commercial Ins. Serv., Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective' - that is, the intent manifested in the agreement and by surrounding conduct - rather than the subjective beliefs of the parties." *Id*. (citations omitted). If the material facts concerning the existence or terms of the settlement agreement are in dispute, the court must hold an evidentiary hearing. *Callie*, 829 F.2d at 890.

### IV. DISCUSSION

**A.  Overview of the Parties' Positions**

As indicated above, both the Federal Defendants and Plaintiffs urge the Court to enforce their proposed stipulated judgment. Both parties argue that their respective version accurately sets

3

forth the terms of the settlement agreement placed on the record at the July 1 hearing and effectuates the intent of the parties in entering into that agreement.

At the same time, each party attacks the opposing party's proposed judgment. Plaintiffs contend that the Federal Defendants' proposed stipulated judgment contains terms that the parties neither mentioned nor contemplated at the time of the settlement hearing, particularly with respect to those terms referring to and incorporating the parties' prior written Lease Agreement. Plaintiffs thus maintain that their version of the judgment, which contains the terms put on the record and nothing more, should be entered as the Court's judgment. (X-Mot. at 3-4.)

The Federal Defendants, however, argue that Plaintiffs' proposed judgment is overly simplistic and unworkable. They assert that "the oral record was intended to articulate the basic terms covering the disputed issues to be settled, but was never intended to be a straitjacket, limiting the written expression of the settlement agreement." (D. Reply. at 3.) They also criticize the Plaintiffs' proposed judgment on the ground that it fails to take into account the details and complications of the landlord-tenant relationship in a commercial lease, such as the one that was at issue in this matter. Accordingly, the Federal Defendants assert that their comparatively more detailed proposed judgment should be entered.

**B. Disputed Terms**

    1. <u>Applicability of the Lease Agreement</u>

The first issue in dispute involves the applicability of the parties' prior Lease Agreement to the settlement agreement. Plaintiffs take the position that "all parties assiduously avoided stating that the new agreement was a continuation, renewal, extension, or in any other respect incorporated any provision of the parties' former written lease agreement." (X-Mot. at 2.) They assert that, "Defendant Presidio Trust previously refused to renew or extend the term of that lease when Plaintiffs sought to exercise an option to extend its term, and had rigorously opposed Plaintiff's Motion for a Preliminary Injunction seeking to enforce certain provisions of the lease." (X-Mot. at 3.) Plaintiffs therefore argue that paragraph 15 of the Federal Defendants proposed judgement, which states that, "[e]xcept as expressly provided to the contrary in this Stipulated Judgment, the

4

provisions, conditions, and terms of the Lease remain unchanged and in full force and effect," was never part of the settlement agreement.

In response, the Federal Defendants contend that the dispute over the continued validity of the lease agreement did not arise until the last stages of the parties' negotiations over the contents of the proposed stipulated judgment. (D. Reply at 3.) They point out that Plaintiffs never challenged the ongoing validity of the lease as a whole in their pleadings, but only challenged a few specific provisions, such as the timing and procedure for exercising the option to extend the term of the Lease. (D. Reply at 4.) The Federal Defendants also argue that Plaintiffs never challenged the validity of the Lease during any of the court-supervised settlement conferences or when counsel recorded the terms of the settlement agreement. Additionally, the Federal Defendants contend that incorporating the terms of the Lease "provides a context and structure for successfully implementing the settlement agreement." (D. Reply at 6.)

Considering the foregoing arguments, the Court agrees with the Federal Defendants. Reviewing the transcripts of the settlement hearing, neither party indicated that the Lease Agreement was invalidated or otherwise superceded by the settlement agreement. Thus, the objective terms in the oral settlement agreement support the Federal Defendants' argument. Had Plaintiffs intended that the settlement agreement would relieve them of all responsibilities and conditions under their Lease Agreement with Defendant Presidio Trust, Plaintiffs should have included language to that effect when putting the terms of their agreement on the record. Further, the terms of the parties' settlement agreement directly affects their rights and obligations vis-a-vis the Lease Agreement, including the return of Plaintiffs' security deposit, Plaintiffs' payment of back rent, and Defendant Presidio Trust's access to the unit for repair and maintenance. Without the Lease Agreement as a backdrop, the terms of the parties' settlement agreement would have little meaning and lack the context necessary to understand how they are to be performed. Accordingly, to the extent that paragraph 15 of the Federal Defendants' proposed stipulated judgment provides that the terms of the Lease Agreement remain unchanged and in effect, except as modified by the settlement agreement, the Court finds such provision consistent with the parties' oral agreement.

5

2.      The $35 per square foot provision and Plaintiff's Credit

Second, the parties dispute the amount of back rent Plaintiffs must pay and what restrictions, if any, were placed on the credit given to Plaintiffs pursuant to their agreement. Pursuant to the settlement agreement, Plaintiffs are to pay $35 per square foot in back rent retroactive to January 15, 2008, until the date Plaintiffs vacate the unit. The parties also agreed that Plaintiffs would have a $34,000 credit. The parties now disagree over (1) whether the $35 per square feet multiplier represented the total amount of rent Plaintiffs had to pay during the specified period; and (2) whether Plaintiffs could apply the credit toward any payments owing under the Lease or just the Base Rent.

The Federal Defendants contend that the $35 per square foot rate is the "Base Rent" that Plaintiffs must pay - it is not the *total* amount that Plaintiffs must pay to the Presidio Trust each month. (D. Reply at 6.) The Federal Defendants indicate that the Plaintiffs have not made any payments to the Presidio Trust since September 5, 2008, apparently on the basis that the $34,000 credit negotiated in the settlement could be applied to all payments under the Lease, not just to Base Rent.[1] As to the $34,000 credit, the Federal Defendants argue that, "the credit negotiated by the parties was intended, like the retroactive rent increase in the settlement terms, to be applied to Base Rent only, and not to any additional amounts due and owing from the Tenant for the relevant period[.]" (D. Reply at 6.) They therefore contend that their proposed stipulated judgment clears up these ambiguities by specifying "Base Rent" where appropriate.

Plaintiffs, on the other hand, argue that there was no discussion of "Base Rent" when the parties put the settlement on the record. Thus, the language in paragraph 1 of their proposed stipulated judgment states that Plaintiffs must pay $35 per square foot retroactive to January 15, 2008, but does not indicate that Plaintiffs are responsible for any other fees or charges, particularly any arising under the Lease Agreement. (*See* Dkt. #95 at 2.) Plaintiffs further argue that, while the parties agreed that the $34,000 credit would not be refundable if Plaintiffs vacated before using it all, there was no other limitations placed on the use of the credit. (*Id.*) Accordingly, Plaintiffs

---

[1] Specifically, the Federal Defendants explain that, under the terms of the Lease, the Plaintiffs are liable each month for Base Rent (i.e., $35 per square foot), plus the Service District Charge ("SDC") and other costs and expenses applicable to their particular leased unit. (D. Reply at 6.)

6

explain that, since October 1, 2008, they have been applying that credit toward their total rent payment to Defendant Presidio Trust. (*See* Dkt. #102 "Declaration of Stephen Kent Rose," at ¶4.)

With respect to the issue of whether the $35 per square foot rate represents only the Base Rent Plaintiffs must pay or the total payment Plaintiffs owe Presidio Trust, the Court agrees with the Federal Defendants. Reviewing the July 1 transcript, Defense counsel stated that the parties had agreed Plaintiffs would pay $35 per square foot in back-rent retroactive to January 15, 2008. At no point did either party indicate that the $35 per square foot rate was inclusive of any other fees or charges Plaintiffs would incur under the Lease or as a tenant. The Court therefore agrees with the Federal Defendants that the $35 corresponds to the Base Rent Plaintiffs were obligated to pay as that term is explained in the Lease Agreement. To the extent that the Federal Defendants' proposed stipulated judgment makes this clear, it is consistent with the oral settlement agreement.

With respect to the $34,000 credit, the Court agrees with Plaintiffs' position. Reviewing the record transcript, Mr. O'Connor, counsel for the Federal Defendants, stated that, "beginning October 1, 2008, [Plaintiff] can elect to take up to $34,000 credit **from her lease payment** to the end of the term." Thus, as Plaintiffs correctly point out, there is no language appearing in the record transcript limiting the use of the credit strictly to Base Rent. Rather, defense counsel stated that Plaintiffs could use the credit toward the "lease payment." The Federal Defendants' use of the generalized phrase "lease payment" left open the possibility that Plaintiffs could use the credit for any payments due under the Lease - including Service District Charges. As a result, the undersigned finds that paragraph 4 of the Federal Defendants is inconsistent with the parties' settlement agreement. Reviewing paragraph 2 of Plaintiffs' proposed stipulated judgment, it comports with the agreement regarding the credit as placed on the record. Accordingly, the undersigned recommends that paragraph 4 of the Federal Defendants' proposed stipulated judgment be amended to Plaintiffs' proposed language as follows:

> **Beginning October 1, 2008, San Francisco Aesthetics is entitled to a $34,000 credit against payments to be made pursuant to the Lease.** If San Francisco Aesthetics does not avail itself of the total amount of the credit on or before the Final Vacation Date, or, if applicable, the Early Vacation Date, the remainder of the credit will be forfeited.

7

3.      Security Deposit

Third, the parties dispute the proper language with respect to their agreement concerning the return of Plaintiffs' security deposit. The Federal Defendants contend that the parties agreed that, "if San Francisco Aesthetics did not fully vacate the premises either on June 30, 2009, or on such earlier date provided it gave two weeks notice, Presidio Trust could retain the security deposit; however, all other terms in the Lease regarding the security deposit remain unchanged. Thus, Presidio Trust is only obligated to return the portion of the security deposit remaining after crediting against all of the various items permitted by the Lease." By way of example, the Federal Defendants explain that, if San Francisco Aesthetics fails to timely vacate the premises, thereby forfeiting its security deposit, it would be still be liable for any damages to the premises.

Plaintiffs, however, maintain that the agreement with respect to the security deposit was simply that if Plaintiffs did not vacate the premises before July 1, 2009, Plaintiffs would forfeit their $10,000 security deposit. If, on the other hand, Plaintiffs vacated the premises before that date, the Presidio Trust would return their deposit. Thus, Plaintiffs assert that they never agreed that Defendant Presidio Trust could withhold their security deposit to satisfy any other obligations Plaintiffs had under the Lease.

The Court has carefully considered the parties' competing constructions of this settlement term, and agrees with the Federal Defendants' version. Reviewing the transcript, the parties agreed that if Plaintiffs did not vacate the premises by June 30, 2009, Plaintiffs would forfeit the security deposit. The parties also agreed that if Plaintiff vacated by June 30, 2009, Defendant Presidio Trust would return the security deposit. However, there is no language indicating that the parties' agreement regarding the security deposit otherwise modified Defendant Presidio Trust's rights under the Lease to apply some or all of the security deposit to satisfy any outstanding payments or obligations that Plaintiffs are responsible at the time they vacate the unit, including sums necessary to repair damages or clean the unit. (*See* Dkt. #100, "Declaration of Theresa Taylor," Ex. A at 33-34, Art. 30.) The undersigned therefore finds the language in paragraph 1 of the Federal Defendants' proposed stipulated judgment consistent with the parties' recorded settlement agreement.

8

4.      General Releases of Liability

Fourth, the parties dispute the appropriate language regarding the Federal Defendants' release of claims against Plaintiffs. Specifically, the Federal Defendants oppose paragraph 10 of Plaintiffs' proposed stipulated judgment on the ground that the Department of Justice will not authorize either the United States or the Presidio Trust to sign a general release. (*See* Dkt. #99, "Second Declaration of Charles M. O'Connor," at 4, ¶7.) Instead, the Federal Defendants urge the Court to approve the language in their proposed stipulated judgment regarding release of Plaintiffs.

Plaintiffs do not object to the language the Federal Defendants have included in their proposed stipulated judgment regarding the United States' release of claims against Plaintiffs. As to the Presidio Trust, however, Plaintiffs contend that it is an independent corporate entity that is not bound by the dictates of the U.S. Department of Justice. They therefore argue that the Presidio Trust's release of Plaintiffs should include all claims, known and unknown, as set forth in Plaintiffs' proposed stipulated judgment. The undersigned disagrees.

While Plaintiffs challenge the scope of release that they believe The Presidio Trust is able to execute, the fact remains that the Department of Justice will not authorize The Presidio Trust to sign a general release. As a result, the general release in paragraph 10 of Plaintiff's proposed stipulated judgment is simply not feasible. Plaintiffs have not set forth any other challenge to the release language in the Federal Defendants' proposed stipulated judgment. The undersigned therefore finds it comports with the parties' settlement agreement.

5.      Confidentiality of Stipulated Judgment

Finally, the parties dispute whether the stipulated judgment should be sealed or otherwise remain confidential. The Federal Defendants indicate that, while they first requested that the stipulated judgment be sealed, because United States Department of Justice would not approve or authorize sealing the settlement document, they have withdrawn their request and deleted such language from their proposed stipulated judgment. In response, Plaintiffs proffer some discussion on why they previously wanted the stipulated judgment to be confidential, but fail to set forth any persuasive justification for sealing the stipulated judgment at this point. As both parties acknowledge, given the fact that the parties have set forth the details of their settlement at length in

9

their briefs and have filed copies of the July 1, 2008 transcript, the information is now public. Consequently, the Court finds no reason to justify sealing any stipulated judgment entered in this matter.

### V.  CONCLUSION

As the foregoing discussion indicates, with the exception of paragraph 4, the Court finds that the Federal Defendants' proposed stipulated judgment accurately reflects the substance of the parties settlement agreement as orally recorded on July 1, 2008.  Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** the Federal Defendants' Motion to Enforce Settlement Agreement (Dkt. #91) consistent with the modification to paragraph 4 of the Federal Defendants' proposed stipulated judgment as set forth above.  The Court further **RECOMMENDS** that Plaintiffs' Cross-Motion to Enforce (Dkt. #93) be **DENIED**.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, a party may serve and file objections to this Report and Recommendation within 10 days after being served with a copy of said Report.

**IT IS SO ORDERED.**

Dated:  June 3, 2009

MARIA-ELENA JAMES
United States Magistrate Judge