UNITED STATES DISTRICT COURT

Northern District of California

SAN FRANCISCO AESTHETICS AND
LASER MEDICINE INC, *et al.*,

    Plaintiffs,

v.

THE PRESIDIO TRUST, *et al.*

    Defendants.
_____/

No. C 07-5170 EDL (MEJ)

**REPORT & RECOMMENDATION RE AMOUNT DUE UNDER AMENDED STIPULATED JUDGMENT**

## I. INTRODUCTION

Before the Court is Defendant and Counter-Claimant United States of America and Defendant Erin Magagna (collectively, "Defendants") brief regarding the amounts they claim are owed by Plaintiffs San Francisco Aesthetics and Laser Medicine, Inc. and Jeannie Tsai (collectively, "Plaintiffs"). (Dkt. #133.) After careful consideration of the parties' papers, the undersigned RECOMMENDS as follows.

## II. BACKGROUND

Plaintiffs initiated this action on October 9, 2007, by filing a Complaint for Declaratory Relief and Preliminary Injunction against Defendants. (Dkt. #1.) In light of an oral settlement agreement reached before the undersigned on July 1, 2008, Magistrate Judge Elizabeth D. Laporte, the presiding judge in this matter, entered an Order of Conditional Dismissal. (Dkt. #70.) Unable to adequately reduce the terms of the agreement to writing, the Court issued an order reinstating this case, granting the parties leave to file motions to enforce the settlement agreement, and referring any such motions to the undersigned for preparation of a report and recommendation. (Dkt. #89.) On June 2, 2009, the undersigned issued a Report and Recommendation Re Motion and Cross Motion to Enforce Settlement Agreement, recommending that the Court grant Defendants' Motion to Enforce

the Settlement Agreement, (Dkt. #91), consistent with certain modifications. (Dkt. #104.) On August 13, Magistrate Judge Laporte issued an order adopting the undersigned's Report and Recommendation, (Dkt. # 121), and entered judgment on August 14 in accordance with the Amended Stipulated Judgment. (Dkt. #122.) It was therein stipulated that the undersigned would resolve any dispute as to the computation of the amount of back rent owed. (Judgement, Ex. A ¶3, Dkt. #122.)

On September 4, 2009, Defendants filed a document entitled, "Request for Assistance of Magistrate Judge to Resolve Parties Dispute Re Computation of Amount Due Per Amended Stipulated Judgement." (Dkt. #123.) On September 18, 2009, Magistrate Judge Laporte issued an Order referring the Request to the undersigned for preparation of a report and recommendation. (Dkt. #128.) On December 1, 2009, the undersigned ordered Defendants to file a brief setting forth in detail their arguments regarding amounts they claim are due from Plaintiffs, and precisely how they calculated those amounts. (Dkt. #132.)

On December 10, 2009, Defendants filed their brief regarding the amounts they claim are due under the Amended Stipulated Judgment ("ASJ"). (Dkt. #133.) On December 24, 2009, Plaintiffs filed an opposition. (Dkt. #135.) On January 21, 2010, Defendants sought leave of court to file a reply and did so on that same day. (Dkt. ## 137, 138.) On May 14, 2010, the undersigned granted Defendants' request to file a reply brief. (Dkt. #143.) On July 8, 2010 the undersigned ordered Defendants to submit further briefing, (Dkt. #145), and on July 13, 2010, Defendants filed a response (Dkt. #146).

**III. DISCUSSION**

In their motion, Defendants request that the undersigned resolve the dispute regarding the amount due under the ASJ. Specifically, Defendants invoiced Plaintiffs for $32,781.97, but received a check from Plaintiffs for only $2,318.14. (O'Connor Decl. ¶¶2-3, Dkt. #134.) Defendants claim that $20,463.56[1] is the total amount still outstanding. (Defs.' Errata 13:12, Dkt. #140.) In their

---

[1] The difference between the amount invoiced and the amount Defendants now claim is due takes into account a security deposit credit, which is explained below.

2

brief, Defendants state that the calculations for the amounts they claim are due appear in an invoice which contains a spreadsheet. (Defs.' Br. 2:17, Dkt. #133.) In response to the undersigned's Order for further briefing regarding that spreadsheet, Defendants have submitted two additional spreadsheets ("Supplemental Spreadsheet" or "Supplemental Spreadsheets"). (Defs.' Response Br., Dkt #164-1.) These Supplemental Spreadsheets, in addition to reiterating the amounts from their original spreadsheet, list check numbers, payment dates, amounts, and include memos for payments remitted to Defendants, for which they credit Plaintiffs accordingly.[2]

Defendants contend that Paragraph 3 of the ASJ helps to explain their computation of the amounts they claim are owed by Plaintiffs. (Defs.' Br. 3:15-16, Dkt. #133.) Paragraph 3 of the ASJ provides, in pertinent part:

> Plaintiffs shall make a lump sum payment to [Defendants] of the difference between the Base Rent at the rate of $35/sq. ft. per annum and all other charges due and payable under the Lease, retroactive to January 15, 2008 to the Effective Date of this Stipulated Judgment, and the total amount of Base Rent and all other charges actually paid under the terms of the Lease by [Plaintiffs] from January 15, 2008 to the Effective Date of this Stipulated Judgment, within 10 days after the Effective Date of this Stipulated Judgment.

(J., Ex. A ¶3, Dkt. #122.)[3] Defendants divide this language into two sections for purposes of the Spreadsheet, explaining that Plaintiffs owe the difference between Part A and Part B. Part A, which pertains to the amounts due, reads "the Base Rent at the rate of $35/sq. ft. per annum and all other charges due and payable under the Lease, retroactive to January 15, 2008 to the Effective Date of this Stipulated Judgment[.]" Part B, which pertains to the total amounts paid by Plaintiffs, reads "the total amount of Base Rent and all other charges actually paid under the terms of the Lease by

---

[2] Defendants' Supplemental Spreadsheets appear to have a miscalculation in the row titled "Utilities." The total amount of that row equals $3,355.41 although Defendants listed the total as $3,210.52. However, the last column of totals is properly calculated on the Spreadsheet, leading the undersigned to believe it was merely a typo. In addition, this amount is $0.02 less than the undersigned's own calculations from the original spreadsheet. Since the sums on the Supplemental Spreadsheets are more favorable to Plaintiffs, the undersigned will use the numbers from that spreadsheet and will use the properly calculated amount of $3,355.41.

[3] This citation refers to Judge Laporte's Order entering judgment in accordance with the ASJ.

brief

[Plaintiffs] from January 15, 2008 to the Effective Date of this Stipulated Judgment, within 10 days after the Effective Date of this Stipulated Judgment." (Defs.' Br. 4:1-13, Dkt. #133.) Defendants Supplemental Spreadsheets then consolidate the totals from the original spreadsheet into totals for two categories: amounts due and amounts credited. (Defs.' Response Br., Dkt. #146-1). Defendants' brief, as discussed below, details the amounts they claim are still due.

In response, Plaintiffs offer no argument in support of any competing calculations; rather, Plaintiffs cite to a portion of the ASJ and contend that the settlement agreement entered into by the parties released Plaintiffs from all claims related to Defendants' counterclaims[4] in the action except for any liability based upon obligations created by the settlement agreement. (Pls.' Opp'n 1:18-20, Dkt. #135.) Plaintiffs contend that Defendants are attempting to collect on claims waived by the "release," which Plaintiffs construe to include late fees, default interest, service district charges ("SDC"), utilities, and insurance.[5] *Id.* at 1:22-25. Plaintiffs argue that none of these obligations were created by the settlement agreement and are thus waived. *Id.* at 1:25-27. Plaintiffs do not explicitly dispute Defendants' calculation of rent due; however, they argue that they have already paid Defendants the full amount to which they are entitled, and claim that Plaintiffs' Exhibit Z supports this accounting. *Id.* at 2:1-4.

The undersigned will consider each disputed item in turn.

**A.     Base Rent for January 2008 through June 2009**

Defendants contend that the proper calculation of base rent should be $35/sq.ft., retroactive to January 15, 2008, and that the first 16 days of rent for that month should be charged according to the original Lease Agreement's pro rata rent charge. (Defs.' Br. 4:19-21, Dkt. #133; Defs.' Reply

---

[4] Defendants' counterclaims were for breach of lease, trespass, ejectment, injunctive relief, damages, restoration and breach of lease guaranty against Plaintiffs collectively. (Dkt.#43.)

[5] Plaintiffs arguments regarding any waiver contained in the mutual releases, although omnipresent in their opposition, will not be addressed by the undersigned as it is the subject of Plaintiffs' appeal pending before the Ninth Circuit. The only issue now before the undersigned is the amount due under the ASJ, as remanded to the Court by the Ninth Circuit.

4

12:23-13:2, Dkt. #137.)[6] Defendants then concede Plaintiffs should be credited for a 1887 square-foot closet space that was closed off and unusable from January 20, 2007 through June 2009 pursuant to Paragraphs 2 and 7 of the ASJ. (Defs.' Br. 4:24-5:3, Dkt. #133.)

In response, Plaintiffs offer an alternate calculation. Plaintiffs contend that rent for January 2008 should be calculated by dividing the monthly rent of $5,503.75 in half. (Rose Decl., Ex. Z, Dkt. #136.) Plaintiffs do not include any cost for the first 16 days of January and thus arrive at a total base rent of $2,751.88 due for the month of January 2008. *Id.*

The undersigned finds persuasive Defendants' accounting of the amount outstanding for base rent for January 2008. The ASJ specifically preserves the effectiveness of the provisions, conditions and terms of the Lease Agreement except as expressly provided to the contrary in the ASJ. (J., Ex. A ¶15, Dkt. #122.) Article 3, subsection A of the Lease Agreement authorizes the Landlord to collect rent during the tenant's occupancy. (Defs.' Reply, Ex. 3, Dkt. #137.) Plaintiffs do not dispute that they occupied the premises during the month of January 2008. Defendants' original spreadsheet represents, and Plaintiffs do not dispute, that the full base rent for January 2008 equals $4,797.48.[7] (O'Connor Decl., Ex. A p. 2, Dkt. #134.) Defendants then credit Plaintiffs $40.34, representing a .21% decrease in the pro rata share of the premises because of the closed closet space, leaving $4,757.14 due for base rent for January 2008. *Id.* Defendants' original spreadsheet and Supplemental Spreadsheets also list base rent of $5,503.75 for the remainder of the months under the lease (February 2008 through June 2009), which is a total of $93,563.75. Thus, from January 2008 through June 2009, Plaintiffs owed $98,320.89 in rent. Defendants then credit Plaintiffs' account for

---

[6] Plaintiffs argue that Defendants should not be able to rely on a reply brief to explain the legal and factual bases for their calculations. (Pls.' Opp'n 6:20-21, Dkt. #135.) Where necessary, the undersigned will rely upon Defendants' Reply Brief (Dkt. #137) because even though all of the pertinent information was included in Defendants' Brief and its supporting documents, Defendants' Reply further explains Defendants' original calculations and answers many of the questions only posed by Plaintiffs in their Opposition.

[7] The undersigned's own calculations equal an amount slightly higher ($4,841.68); however, the Defendants' calculations, being more favorable to Plaintiff, will be used for purposes of determining the final amount owed.

5

a series of payments in the amount of $47,459.05. *Id.*; Defs.' Response Br., Dkt. #146-1. The amount of base rent due and paid by Plaintiffs each month is corroborated by Plaintiffs' Exhibit Z.[8] (Rose Decl., Ex. Z, Dkt. #136.) Thus, the Court RECOMMENDS that the Defendants' calculation of back rent for January 2008, $4,757.14, be added to the total amount of base rent due, for a total of $98,320.89. The Court further RECOMMENDS that, deducting the $47,459.05 credit, the Court order Plaintiffs to remit $50,861.84 for unpaid base rent.

**B.    Service District Charge ("SDC")**

Next, Defendants claim they are entitled to the full amount of the SDC – $12,060.20 – as contemplated in the original Lease Agreement, minus the credit due on the unused closet space for the period beginning January 2008 and ending June 2009. (Defs.' Br. 4:21-5:3, Dkt. #133.) In response, Plaintiffs counter that this is not an obligation imposed by the ASJ or, alternatively, that the obligation was waived in the mutual releases contained in the ASJ. (Pls.' Opp'n 1:22-27, Dkt. #135.) Accordingly, Plaintiffs offer no competing calculation for the amount of SDC.

The undersigned finds Defendants' calculations to be in accord with the ASJ. The ASJ specifically preserves the effectiveness of the provisions, conditions and terms of the Lease Agreement except as expressly provided to the contrary in the Stipulated Judgment. (J., Ex.A ¶15, Dkt. #122.) Article 3, subsection B of the Lease Agreement enumerates the SDC as a payment due under the lease. (Defs.' Reply Br., Ex. 3, at 3 Dkt. #137.) That amount is to be comprised of Tenant's Pro Rata Share of the Service District Costs for each fiscal year. *Id.* Defendants' Spreadsheet credits Plaintiffs $101.40,[9] representing a .21% decrease in the pro rata share of the premises because of the closed closet space, leaving $11,958.80 in SDC due for the time period beginning January 2008 and ending June 2009. (O'Connor Decl., Ex. A p. 2, Dkt. #134.)

---

[8] "Rent of $35.00 per square foot per year for 1887 square feet is $5,503.75 per month." (Rose Decl., Ex. Z, n.1, Dkt. #136.)

[9] Nominal differences appear between the undersigned's's own calculations the Defendants' columns. The amounts range from $.01 to $.06; however, the Defendants' calculations are more favorable to Plaintiffs in any case and thus the undersigned will use the numbers from the spreadsheet.

6

Defendants' Supplemental Spreadsheets further show that Defendants credited Plaintiffs' account for a series of payments made toward the SDC - a total amount of $2,556.36. (Defs.' Response Br., Dkt. #146-1.) The amount of SDC paid by Plaintiffs each month ($639.09) is corroborated by Plaintiffs' Exhibit Z. (Rose Decl., Ex. Z, Dkt. #136.) Therefore, the undersigned RECOMMENDS that Plaintiffs be ordered to remit to Defendants the difference between the payments already made and the unpaid SDC, for a total amount of $9,402.44.

**C.     Electric, Gas, Refuse, Sewer and Water ("Utilities")**

Defendants claim they are entitled to the full amount of Utilities – $3364.66 – as contemplated in the original Lease Agreement, minus credits for the amount already paid and the closet space deduction, for the period beginning January 2008 and ending June 2009. (Defs.' Br. 5:4-9, Dkt. #133.) Defendants claim that $1,509.96 remains due. In response, Plaintiffs contend that this is not an obligation imposed by the ASJ or, alternatively, that the obligation was waived in the mutual releases contained in the ASJ. (Pls.' Opp'n 1:22-27, Dkt. #135.) Accordingly, Plaintiffs offer no competing calculation for the amount of utilities.[10]

The undersigned finds Defendants' calculations to be in accord with the ASJ. The ASJ specifically preserves the effectiveness of the provisions, conditions and terms of the Lease Agreement except as expressly provided to the contrary in the Stipulated Judgment. (J., Ex. A ¶15, Dkt. #122.) Article 7, of the Lease Agreement enumerates utilities as a payment due under the lease. (Defs.' Reply Br., Ex. 3 at 10, Dkt. #137.) That amount is to be comprised of Tenant's Pro Rata Share of the utilities. *Id.* Defendants' Spreadsheet credits Plaintiffs $9.25, representing a .21% decrease in the pro rata share of the premises because of the closed closet space, leaving $3,355.41 in utilities due for the time period beginning January 2008 and ending June 2009. (O'Connor Decl.,

---

[10] Plaintiffs question Defendants' charges for gas, claiming that their radiators were never connected to the heating system. (Pls.' Opp'n 6:12-14, Dkt. #135.) However, Plaintiffs do not offer any competing calculation for the utilities, such as a deduction for this claim. Furthermore, Defendants' Reply Brief adequately addresses this concern when it states that the radiators are only one of the functions powered by gas and that their obligation to reconnect them never arose since the ASJ was not entered until after Plaintiffs surrendered the premises. (Defs.' Reply, n. 3, Dkt. #137.)

7

Ex. A p. 2, Dkt. #134.) Defendants' Supplemental Spreadsheets further show that Defendants credited Plaintiffs' account for a series of payments made toward the utilities in the amount of $1,845.45. (Defs.' Response Br., Dkt. #146-1.) The amounts that Defendants credit to Plaintiffs, although varying from month to month, are identical to Plaintiffs' Exhibit Z. (Rose Decl., Ex. Z, Dkt. #136.) Therefore, the Court RECOMMENDS that Plaintiffs be ordered to remit to Defendants $1,509.96, which is the difference between the payments already made and the unpaid utilities.

**D.     Insurance**

Defendants claim they are entitled to the full amount of insurance – $1,158.77 – as contemplated in the original Lease Agreement for the period beginning January 2008 and ending June 2009. (Defs.' Br. 5:11-13, Dkt. #133.) In response, Plaintiffs argue that this is not an obligation imposed by the ASJ or, alternatively, that the obligation was waived in the mutual releases contained in the ASJ. (Pls.' Opp'n 1:22-27, Dkt. #135.) Accordingly, Plaintiffs offer no competing calculation for the amount of insurance due.

The undersigned finds Defendants' calculations to be in accord with the ASJ. The ASJ specifically preserves the effectiveness of the provisions, conditions and terms of the Lease Agreement except as expressly provided to the contrary in the Stipulated Judgment. (J., Ex. A ¶15, Dkt. #122.) Article 9, subsection A of the Lease Agreement specifically enumerates insurance as a payment due under the lease. (Defs.' Reply Br., Ex. 3 at p. 12, Dkt. #137.) That amount is to be comprised of Tenant's Pro Rata Share of the premiums. *Id.* Defendants state that the amount listed in the spreadsheet has already been calculated including the reduction for the unused closet space, 1887 square feet, for a total of $1,158.77.[11] (Defs.' Br. 5:11-13, Dkt. #133.) There being no dispute as to the calculation of the insurance costs, the undersigned RECOMMENDS that Plaintiffs be ordered to remit to Defendants the difference between the payments already made and the unpaid insurance, for a total amount of $1,158.77.

---

[11] Defendants have included a back up document to their spreadsheet which has a crude calculation totaling $1,159.00 for the insurance, however, the amount on the spreadsheet appearing more precise and more favorable to Plaintiffs, is the amount the undersigned is using to calculate the amount due.

8

### E. Closet Credit for 2007

Although not part of Defendants' request, the undersigned notes that there is a $5.04 difference in the calculation of the closed closet for January 2007. Defendants' Spreadsheet credits Plaintiffs $442.96, representing a .21% decrease in the pro rata share of the premises because of the closed closet space. (O'Connor Decl., Ex. A p. 2, Dkt. #134.) Plaintiffs' Exhibit Z calculates the amount by multiplying 16 square feet by the rent of $28/ sq. ft. for the time period, which totals $448. (Rose Decl., Ex. Z, n. 4, Dkt. #136.) However, as noted above, the undersigned agrees with Defendants' calculations of the closet credit. Article 7 of the ASJ requires "a credit...equal to the proportional rental value of the clothes closet located near the entry to the Premises, equal to sixteen (16) square feet . . . ." (J., Ex. A ¶15, Dkt. #122.) Plaintiffs calculations are based on straight multiplication of the square footage and not the proportional rental value. Therefore, the undersigned RECOMMENDS that Defendants be ordered to credit Plaintiffs an amount of $442.96 for the closed closet for 2007.

### F. Application of the $34,000 Rent Credit

The parties agree that Plaintiffs are entitled to a $34,000 rent credit. However, they dispute when it should be applied. Defendants claim that the rent credit has been applied to January 2008, which corresponds to the earliest unpaid amounts in their spreadsheet in an effort to mitigate the amount of late fees and interest that would be due. (O'Connor Decl., Ex. A p. 2, Item 2, Dkt. #134.)

In response, Plaintiffs claim that no payments were due after October 2008 until the $34,000 credit was exhausted. (*See* Rose Decl., Ex. Z, n.3, Dkt. #136.) Plaintiffs calculations are, in large part, due to the argument that the costs discussed above (SDC, utilities, and insurance) are not owed dating back to January 2008. Thus, Plaintiffs do not include January 2008 through September 2008, and simply multiply the rent for the months of October 2008 through June 2009, subtracting the rent credit and the security deposit to arrive at the conclusion that no money was due until June 2009. It is in this fashion that Plaintiffs conclude they owe only the $2,318.41 which they previously remitted. (Rose Decl., Ex. Z, n.6, Dkt. #136.) However, as discussed above, the undersigned finds that Plaintiffs are responsible for payments back to January 2008. Therefore, the undersigned

9

RECOMMENDS that Defendants be ordered to credit Plaintiffs in the amount of $34,000, to be applied retroactive to the unpaid amounts beginning in January 2008, consistent with Defendants' original Spreadsheet and Supplement Spreadsheet Option B. *Id.*

**G.     Late Fees and Interest**

Defendants claim they are entitled to charge default interest at 18% annum and late fees at 10% on delinquent amounts, as contemplated in the original Lease Agreement. (Defs.' Br. 6:12-16, Dkt. #133.) Plaintiffs counter that this is not an obligation imposed by the ASJ or, alternatively, that the obligation was waived in the mutual releases contained in the ASJ. (Pls.' Opp'n 1:22-27, Dkt. #135.) Accordingly, Plaintiffs offer no competing calculation for the amount of late fees and interest.

The undersigned finds Defendants' calculations to be in accord with the ASJ. The ASJ specifically preserves the effectiveness of the provisions, conditions and terms of the Lease Agreement except as expressly provided to the contrary in the Stipulated Judgment. (J., Ex. A ¶15, Dkt. #122.) Article 3, subsection C of the Lease Agreement authorizes the landlord to charge late fees and interest at the default rate on unpaid Rent and SDC. (Defs.' Reply Br., Ex. 3 at p. 4, Dkt. #137.) Defendants' original spreadsheet and Supplemental Spreadsheet Option B, represent that no late fees or default interest were charged until the $34,000 rent credit was exhausted in January 2009. (O'Connor Decl., Ex. A p. 2, Dkt. #134; Defs.' Response Br., Dkt. #146-1.) Because the next payment received was on June 4, 2009 for $5,085.75 (check #751), late fees and interest are calculated monthly up to that point for each of the unpaid amounts that became due. *Id.*

Defendants have charged a 10% late fee on the total delinquent amount of $28,849.01 and arrive at a total late fee of $2,849.01. (O'Connor Decl., Ex. A p. 6, Dkt. #134.) Defendants then charge an 18% annual default rate on unpaid Rent and SDC amounts which they calculate at .05% daily accruing from the first unpaid amount in January 2009, while at the same time applying a five day grace period to each month's unpaid amounts. *Id.* Plaintiffs' Exhibit Z reflects unpaid amounts for the entire time period beginning in October 2008 and continuing until receipt of payment made by Check #751. Furthermore, the amounts upon which the late fees and interest were charged are

10

not disputed by Plaintiffs' Exhibit Z.  (Rose Decl., Ex. Z, Dkt. #136.)  Therefore, the Court RECOMMENDS that Plaintiffs be ordered to remit to Defendants a 10% late fee on unpaid amounts and 18% annual default interest rate on unpaid Rent and SDC; total amounts of $2,849.01 for late fees and $1,442.83 for default interest.

**H.     Security Deposit**

There is no dispute that Plaintiffs are entitled to a credit equal to $10,000 for the security deposit held by Defendants.  (O'Connor Decl. ¶8, Dkt. #134.)  Thus, the undersigned RECOMMENDS that Defendants be ordered to credit Plaintiffs in the amount of $10,000.00.

**I.      Check #786**

Finally, the undersigned notes that Defendants still hold a check from Plaintiffs in the amount of $2,318.41, but refrained from cashing it during resolution of this dispute.  (Defs.' Reply 12:12, Dkt. # 137.)  Therefore, the undersigned RECOMMENDS that the Court order Defendants to deposit the check and credit Plaintiffs the amount of $2,318.41.  If the check is void, then the undersigned RECOMMENDS that the Court order Plaintiffs to remit the additional $2,318.41.

## IV. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that Plaintiffs be ordered to remit amounts due as represented in Defendants' Supplemental Spreadsheet Option B.  (Defs.' Response Br. Dkt. #146-1.)  Accordingly, the undersigned RECOMMENDS as follows:

1. That Plaintiffs be ordered to remit **$50,861.84** for Base Rent;
2. That Plaintiffs be ordered to remit **$9,402.44** for SDC pursuant to the Lease Agreement;
3. That Plaintiffs be ordered to remit **$1,509.96** for utilities pursuant to the Lease Agreement;
4. That Plaintiffs be ordered to remit **$1,158.77** for insurance pursuant to the Lease Agreement;
5. That Defendants be ordered to credit Plaintiffs account **$442.96** for the 2007 closet credit.

11

6.  That Defendants be ordered to apply the **$34,000.00** rent credit beginning in January 2008;

7.  That Plaintiffs be ordered to remit **$4,291.84** for late fees incurred and default interest accrued;

8.  That Defendants be ordered to credit Plaintiffs' account **$10,000.00** for security deposit;

9.  That Defendants be ordered to credit Plaintiffs' account **$2,318.41** for Check #786. If, however, Defendants are unable to deposit Check #786, they need not apply the credit.

Accordingly, the undersigned RECOMMENDS that Plaintiffs be ordered to remit an amount totaling either **$20,463.48** (if Defendants are able to deposit Check #786) or **$22,781.89** (if Defendants are unable to deposit Check #786). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: July 30, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge